IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| **Luis Gomez-Echeverria** and **Hervil Gomez-Echeverria,** on behalf of themselves and others similarly situated, | Case No. 1:22-cv-00314 |
| | Hon. |
| Plaintiffs; | |
| v. | |
| **Purpose Point Harvesting LLC, Emilto Moreno Gomez,** and **Lucille Jean Moreno,** | |
| Defendants. | |

Teresa Hendricks (P46500)
Benjamin O'Hearn (P79252)
Molly Spaak (P84730)
Migrant Legal Aid
Attorneys for Plaintiffs
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
Phone: (616) 454-5055
thendricks@migrantlegalaid.com
bohearn@migrantlegalaid.com
mspaak@migrantlegalaid.com

**Plaintiffs' Original Complaint**

1.      This is a class action complaint for human trafficking and labor exploitation brought by low-income migrant farmworkers who were brought to Michigan by Defendants to work on farms in Newaygo County and the surrounding

areas. Defendants acted together to charge plaintiffs illegal recruitment fees, confiscated travel documents when Plaintiffs arrived in the United States, and paid Plaintiffs less than the contract wage and, at times, the minimum wage.

2.      Plaintiffs bring this action against Defendants individually and jointly for violations of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1589, et seq., the civil RICO statute, 18 U.S.C. 1962(a) and 1962(c), the Fair Labor Standards Act (FLSA), 29 U.S.C. 8 §201 et seq., the Michigan Workforce Opportunity Wage Act, MCL 408.411 et seq., for compensation under the Michigan Human Trafficking Victims Compensation Act, MCL 752.981 et seq., and for compensation for breach of contract.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over the federal law claims under the TVPRA, 18 U.S.C § 1595(a), the RICO statute, and the FLSA.

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims are so interrelated to the federal claims as to constitute one constitutional case.

5.      Defendant Purpose Point Harvesting, LLC ("Purpose Point") is a Michigan company.

6.      Defendants Emilto Moreno Gomez ("Emilto") and Lucille Jean Moreno ("Lucille") are Michigan residents and resided in this district at all relevant times.

7.  Plaintiffs are migrant agricultural workers who were employed by Purpose Point to perform agricultural labor in Michigan through the H-2a program.

8.  Plaintiffs worked for Defendants in Newaygo County, Michigan, at a variety of farms.

9.  The venue is proper in this Court under 38 U.S.C. § 1391(b)(1) as Defendants reside in this district.

10.  The venue is proper in this Court under 38 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim happened in this district.

11.  Pursuant to the RICO, "the ends of justice" require that this Court have jurisdiction over all Defendants.  *See* 18 U.S.C. § 1965(b); *Lauren Gardens, LLC v. Mckenna*, 948 F.3d 105, 117-21 (3d Cir. 2020).

12.  At all times relevant to this action, Defendants employed the Plaintiffs.

13.  At all times relevant to this action, Defendants were "employers" of Plaintiffs, and Plaintiffs were "employees" of Defendants, within the meaning of the FLSA and the [Michigan labor law].

14.  Upon information and belief, Defendants were an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s) in that they had "employees engaged in commerce or in the production of goods for commerce, or … [had] employees handling, selling, or otherwise

working on goods or materials that have been moved in or produced for commerce

by any person," and they had "an annual  gross volume of sales made or business

done" of not less than $500,000.

15.     Upon information and belief, each of the Plaintiffs were individually

engaged in commerce or in the production of goods for commerce.


**Factual Allegations**


16.     Plaintiffs Luis Gomez-Echevarria and Hervil Gomez-Echevarria are

migrant workers from San Marcos, Guatemala.

17.     Plaintiffs come from an impoverished community in Guatemala.

There are few opportunities for paid, safe employment and no opportunities for

Plaintiffs that pay wages comparable to those promised by Defendants to work in

the United States.

18.     Defendant Purpose Point is a company owned and operated by

Defendants Emilto and Lucille.

19.     Defendant Emilto recruits workers and oversees day to day

operations of employees.

20.     Defendant Lucille submits applications to the Employment and

Training Administration so that Purpose Point can bring workers to Michigan from

Guatemala.

21.     Defendant Emilto is a citizen of Guatemala.

22.    Defendant Emilto is a relative of Plaintiffs.

23.    Defendant Purpose Point is a farm labor contractor that provides workers to farms in Michigan.

24.    Defendant Purpose Point uses the H-2A program to recruit workers in Guatemala.

25.     In 2017, Emilto recruited Luis to work for him in Michigan.

26.    Emilto charged Luis $2,500 for the opportunity to work in the United States.

27.    Upon arriving the in the United States, Emilto confiscated Luis's passport and social security card.

28.    Upon arriving in the United States, Defendants did not reimburse Luis for the $2,500 fee he paid to Defendant Emilto.

29.    For Luis to keep his job, Lucille required Luis to add her as a co-owner to his account. See Exhibit 1.

30.    Lucille wrote and signed checks from Luis's account.

31.    Luis worked such long hours for Defendants he had to purchase a headlamp so that he could work in the dark.

32.    On some days he would begin at 2:00 AM, and not finish until 10:00 PM.

33.    Despite these long hours, Defendants would not pay Luis for all hours worked.

34.     Defendants failed to pay Luis the required adverse effect wage rate of $12.75 for all hours worked in 2017.

35.     On at least some occasions, Defendants failed to pay Luis the Michigan minimum wage of $8.90 in 2017.

36.     On at least some occasions, Defendants failed to pay Luis the Federal minimum wage of $7.25 in 2017.

37.     After the 2017 season ended, Luis returned to Guatemala.

38.     In 2018, Emilto recruited Luis and Hervil to work for him in Michigan.

39.     Again, Emilto charged each of them $2,500 to work for him.

40.     Luis paid Hervil's fee through Luis's bank account.

41.     Lucille wrote two checks for herself from Luis's bank account. Copies of these checks are attached as Exhibit 2.

42.     These checks total $2,500.

43.     This $2,500 amount was to cover Hervil's recruitment fee.

44.     Again, Defendants failed to reimburse Plaintiffs for these fees.

45.     Emilto confiscated their passports and social security cards when they arrived in Michigan.

46.     Lucille required Hervil to add her to his bank account.

47.     Plaintiffs worked long hours similar to the hours worked in 2018.

48.     Defendants again failed to pay the adverse effect wage rates, state minimum wage, and/or federal minimum wage for all hours worked in 2018.

49.     Plaintiffs returned to Guatemala in 2018.

50.     In 2019, Emilto recruited Plaintiffs.

51.     In 2019, Emilto again charged Plaintiffs $2,500 to get their jobs.

52.     In 2019, Defendants failed to reimburse plaintiffs for these illegal fees.

53.     In 2019, Emilto again confiscated their passports and social security cards.

54.     During the 2019 season, Emilto returned their passports halfway during the season in response to an immigration enforcement action in the area. However, he continued to keep their social security cards.

## Human Trafficking Allegations

55.     Emilto recruited Plaintiffs to work for Purpose Point.

56.     Lucille arranged for Plaintiffs to enter the United States through the H-2A program.

57.     Emilto and Purpose Point transported Plaintiffs while in the United States.

58.     Emilto and Purpose Point provided Plaintiffs to farms in Michigan.

59.     Defendants had complete control over Plaintiffs and forced them to keep working.

a.  Emilto confiscated Plaintiffs' passports and social security cards to ensure that they could not travel or seek other employment.

b. Lucille controlled Plaintiffs' bank accounts to ensure they paid whatever debts they owed to Emilto.

c. Emilto repeatedly warned Plaintiffs that he was friends with Department of Labor Assistant District Director Amador Diaz, and that Amador would tell him if anyone complained about him.[1]

d. Emilto repeatedly threatened to put a "stain" on workers' passports that would prevent them from entering the H-2a program again.

e. Emilto threatened to block-list workers who complained.

f. To avoid scrutiny, Emilto would not take injured or sick workers to established medical clinics unless absolutely necessary. For example, when Hervil was injured on the job, Emilto took him to see a friend, Dr. Loren Reed, at Dr. Reed's personal residence.

g. Through charging the Plaintiffs recruitment fees, Emilto made Plaintiffs dependent on their jobs to make the money back.

h. By underpaying Plaintiffs, Emilto ensured that they couldn't afford to quit.

i. When Plaintiff Luis fled Defendants' operation, Emilto filed a missing person's report in an attempt to use the Michigan State Police's resources to force him to return to work.

---

[1] To be clear, this was a claim made by Emilto to control his employees. Plaintiffs do not know if this statement is actually true or not.

      j.   Through an intermediary, Emilto posted on Facebook the photos of workers who had fled.

60.    The facts in the paragraph above amounts to coercion.

61.    Plaintiffs feared serious harm through loss of income and permanent loss of economic opportunity if they did not continue working for Emilto and paying him.

62.    Plaintiffs' fears were reasonable.

63.    Defendants took the above actions to force Plaintiffs to work.

### RICO allegations

64.    Defendant Purpose Point is a Michigan Corporation.

65.    During all relevant times, Emilto was the owner of Purpose Point.

66.    In order to hire workers under the H-2A program, Purpose Point had to submit ETA Form 790 to the DOL-ETA.

67.    In these forms, Purpose Point certified that it would pay the greater of the adverse effect wage rate, the state minimum wage, the federal minimum wage, and the rate on the Form 790.

68.    In these forms, Purpose Point certified that it had not "sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification".

69.    Lucille signed the Form 790.

70.    Emilto knew that he was charging the workers for opportunity to work.

71.    Lucille wrote checks to "cash" from Plaintiff Luis's bank account.

72.    These checks were written to further the scheme of collecting illegal recruitment fees.

73.    Upon information and belief, Lucille knew that Emilto charged the workers for the opportunity to work.

74.    Defendants' actions amount to fraud in foreign labor contracting.

75.    This fraud was repeated each year the Defendants submitted the Form 790.

76.    Both Lucille and Emilto profited from operating Purpose Point Harvest.

**Class and Collective Action Allegations**

77.    Plaintiffs Luis and Hervil ("Representative Plaintiffs") bring Count III of this complaint as a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all other workers similarly situated who file a written consent to sue. Plaintiffs' written consent forms are attached to this complaint in Exhibit 3.

78.    Representative Plaintiffs bring the claims set forth in Counts I, II, IV, V, and VI of this complaint on behalf of themselves and all workers similarly

situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

79.    Plaintiffs seek to represent three classes of workers, the "Human Trafficking and RICO Class", and the "Minimum Wage class", and the "Breach of Contract class."

80.    Throughout this complaint, Plaintiffs intend the "Human Trafficking and RICO class" to refer to the putative class of "all H-2A workers employed by Defendant Purpose Point from 2017 to 2019."

81.    The Human Trafficking and RICO class has three sub-classes, each representing a season of work.

   a.  All H-2A workers employed by Defendant Purpose Point in 2017 are members of the 2017 Human Trafficking and RICO sub-class.

   b.  All H-2A workers employed by Defendant Purpose Point in 2018 are members of the 2018 Human Trafficking and RICO sub-class.

   c.  All H-2A workers employed by Defendant Purpose Point in 2019 are members of the 2019 Human Trafficking and RICO sub-class.

   d.  Class members may be part of more than one sub-class if they worked for more than one year.

82.    Throughout this complaint, Plaintiffs intend the "Wage Theft Class" to refer to the putative class of "all H-2A workers employed by Defendant Purpose Point in 2019."

83. Throughout this complaint, Plaintiffs intend "the Breach of Contract Class" to refer to the putative class of "all H-2A workers employed by Defendant Purpose Point from 2017 to 2019."

84. The Breach of Contract Class has three sub-classes, each representing a season of work.

      a. All H-2A workers employed by Defendant Purpose Point in 2017 are members of the 2017 Breach of Contract Class sub-class.

      b. All H-2A workers employed by Defendant Purpose Point in 2018 are members of the 2018 Breach of Contract Class sub-class.

      c. All H-2A workers employed by Defendant Purpose Point in 2019 are members of the 2019 Breach of Contract Class sub-class.

      d. Class members may be part of more than one sub-class if they worked for more than one year.

85. Class members should be readily identifiable from Defendants' records.

86. Upon information and belief, Defendants used the same time keeping system for all class members.

87. Plaintiff Luis seeks to represent all three classes.

88. Plaintiff Hervil seeks to represent all three classes except the 2017 Human Trafficking and RICO sub-class and the 2017 Breach of Contract sub-class.

89. Representative Plaintiffs are members of the classes they seek to represent.

90.     Based on Defendants' 2019 Form 790 application, there are at least 70 class members.

91.     The number of members of the Classes are so numerous that joinder of all members is impracticable. In addition, many class members speak only limited English, migrate for work away from their permanent residences, and have limited access to legal counsel. The relatively small size of the individual claims, the geographical dispersion of the class, and the indigency of the class members would make the maintenance of separate actions by each class member economically infeasible and impracticable.

92.     There are questions of fact and law common to the Human Trafficking and RICO Class. These common questions include:

    a.  Whether Defendants' actions, as alleged, amount to coercion under the Michigan and federal human trafficking statutes; and

    b.  Whether Defendants' actions, as alleged, such as fraudulent representations to the ETA/DOL, forced labor, and human trafficking, amount to racketeering activity.

93.     Whether Defendants paid class members the Michigan minimum wage is a question of fact and law common to the Wage Theft Class

94.     Whether Defendants paid class members appropriately under their contracts is a question of fact and law common to the Breach of Contract Class.

95.     The claims of the Representative Plaintiffs are typical of the claims of the class.

96.     These typical, common claims predominate over any questions affecting only individual class members.

97.     The Representative Plaintiffs have the same interests as other class members and will vigorously prosecute these interests on behalf of the class.

98.     The Representative Plaintiffs will fairly and adequately represent the interests of all class members.

99.     Counsel hired by Representative Plaintiffs have the resources, expertise, and experience to prosecute this action on behalf of the class.

100.    The class action further satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) in that:

a.  the common issues identified above predominate over any issues individual to Representative Plaintiffs or class members, and

b.  a class action is superior to other available methods of adjudicating this controversy, because

i.  common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

ii.  many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

iii.  as of today, the members of the class have not filed a lawsuit to determine the questions presented; and

iv.  a class action can be managed without undue difficulty since Defendant is required by law to maintain records concerning each member of the class, and any individualized damages determinations would be based on common mathematical formulas avoiding any manageability issue.

### CLAIMS FOR RELIEF

### Count I

### The William Wilberforce Trafficking Victims Protection Reauthorization Act Of 2008

101.  Plaintiffs reallege and incorporate the allegations set forth above.

102.  The TVPRA allows victims to 'bring a civil action against... whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]. 18. U.S.C. § 1595(a).

103.  Purpose Point constitutes a 'venture' within the meaning of the term in 18 U.S.C. § 1595(a).

104.  Defendants Lucille and Emilto profited financially from operating Purpose Point.

105.  Defendants, either by themselves or through their agents, recruited, harbored, and transported Plaintiffs.

106.   Defendants, either by themselves or through their agents, did so to obtain labor and services from Plaintiffs.

107.   Defendants accomplished this by means of force, fraud, and coercion, including through threatening immigration detention and deportation, reputational harm, misrepresentation of terms of employment, illegal wage withholdings, and deductions and intimidation in violation of 18 U.S.C. § 1589(a).

108.   Plaintiffs suffered substantial physical, emotional, mental, and financial harm as a result of this conduct.

109.   Defendants operated a scheme, plan or patten intended to cause the H-2A workers in the program to believe that any non-performance or disobedience would result in serious financial, psychological and/or reputational harm in order to exert pressure on the workers to continue working for Purpose Point and refrain from seeking employment elsewhere 18 USCS § 1589(a)(4).

110.   Through their actions, Defendants obtained plaintiffs' labor and services by means of the abuse or threated abuse of law and the legal process 18 USCS § 1589(a)(3).

111.   Plaintiffs are therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. § 1595(a).

## Count II
### MI Human Trafficking Victims Compensation Act

112.   Plaintiffs reallege and incorporate the allegations set forth above.

113.    When a defendant violates the forced labor and human trafficking

sections of the Michigan Penal Code (Sections 750.462a-750.462h), they are liable

to their victims under the Human Trafficking Victims Compensation Act

(MIHTVC).

114.    Section 750.462a defines forced labor as "labor or services that are

obtained or maintained by fraud, force, or coercion."

115.    That same section defines coercion to include threats, abuse (or

threatened abuse) of the legal system, and confiscating passports or other

documents.

116.    Defendants' representations to the Department of labor regarding the

working conditions were fraudulent when made.

117.    Defendants used these fraudulent representations to recruit

Plaintiffs.

118.    Defendant Emilto's confiscation of Plaintiffs' passports amount to

coercion.

119.    Defendant Emilto's threats to block-list Plaintiffs from the H-2A

program amounts to coercion.

120.    Therefore, Defendant Emilto knowingly recruited, enticed, harbored,

transported, and provided Plaintiffs for forced labor, in violation of MCL

750.462b.

121.    Defendants are liable to Plaintiffs for economic and noneconomic

damages under MCL 752.983.

## Count III

## Fair Labor Standards Act

122.    Plaintiffs reallege and incorporate the allegations set forth above

123.    Defendant Purpose Point is an employer under 29 U.S.C § 203(d)

124.    Defendant Emilto is an employer under 29 U.S.C § 203(d).

125.    Defendant Lucille is an employer under 29 U.S.C § 203(d).

126.    Defendants failed to keep and maintain accurate time records are required by 29 U.S.C §211 (c); 29 CFR Part 516.

127.    The recruitment fees charged by Defendant Emilto were for the benefit of Defendants.

128.    Therefore, Defendants were required to reimburse Plaintiffs in the first week of their employment if the fees brought Plaintiffs' compensation under the minimum wage. Arriaga v Fla Pacific Farms, LLC, 305 F3d 1228, 1237 (CA 11, 2002) ("Workers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage.")

129.    Defendants did not reimburse Plaintiffs during the first week of work, and this brough Plaintiffs total wages below the federal minimum wage.

130.    Defendants failed to pay Plaintiffs and class members the federal minimum wage for at least some weeks in 2019.

131.    Plaintiffs bring this as a collective action under 29 USC §216(b).

132.    Plaintiffs consent to bring suit in this action. Copies of their written consent is attached as Exhibit 3.

## Count IV

### Michigan Workforce Opportunity Wage Act

133.    Plaintiffs reallege and incorporate the allegations set forth above

134.    Under WOWA, the minimum wage in Michigan was $9.45 per hour after March 29, 2019.

135.    Defendant Purpose Point is an employer under MCL 408.412.

136.    Defendant Emilto is an employer under MCL 408.412.

137.    Defendant Lucille is an employer under MCL 408.412.

138.    Defendants failed to pay Plaintiffs and class members the state minimum wage in 2019.

## Count V

### Racketeer Influenced and Corrupt Organizations Act

139.    Plaintiffs reallege and incorporate the allegations set forth above.

140.    Defendant Purpose Point, its owner Defendant Emilto, and his wife Defendant Lucille formed an association in fact.

141.    Defendants violated the civil RICO statute by engaging in a pattern and practice of human trafficking, forced labor, and fraud in foreign labor contracting.

142.    These violations harmed Plaintiffs and class members.

143.    Defendants have profited from these violations.

144.    As a result, named plaintiffs and class members are entitled treble damages, fees, and costs under 18 USC §1964 (c).

**Count VI**

**Breach of Contract**

145.    Plaintiffs reallege and incorporate the allegations set forth above.

146.    The job orders, submitted and approved by the ETA, constitute legal contracts between Defendant Purpose Point and Plaintiffs and other class members.

147.    The job orders are attached as Exhibit 4.

148.    In 2017, Defendant Purpose Point promised to pay Plaintiffs $12.75 an hour.

149.    In 2018, Defendant Purpose Point promised to pay Plaintiffs $13.06 an hour.

150.    In 2019, Defendant Purpose Point promised to pay Plaintiffs $13.54 an hour.

151.    By taking the actions described above, Defendant Purpose Point breached its contracts with Plaintiffs and class members.

152.    As a result of these breaches, plaintiffs and class members were not paid for all hours worked.

153.    Plaintiffs and class members are entitled to damages for all time worked for which they were not paid the appropriate rate.

**PRAYER FOR RELIEF**

Plaintiffs on behalf of themselves and those they seek to represent, ask this for the following relief:

a.  Declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing for notice to be provided to Purpose Point employees who worked in 2019, and allowing Purpose Point employees to opt into the action;

b.  Certifying this case a class action under Fed. R. Civ. P. 23, finding Plaintiffs as adequate Class Representatives, and finding their attorneys as adequate Class Counsel;

c.  Declaring Defendants violated federal and state human trafficking laws, federal and state minimum wage laws, and the civil RICO statute,

d.  Declaring Defendant Purpose Point breached its contracts with its seasonal workers,

e.  Permanently enjoining Defendants from further violations of human trafficking and minimum wage laws,

f.  An award of compensatory and punitive damages caused by Defendants'

    violations of the William Wilberforce Trafficking Victims Protection

    Reauthorization Act of 2008,

g.  An award of economic and noneconomic damages as permitted by the

    Michigan Human Trafficking Compensation Act,

h.  An award of actual and liquidated damages caused by Defendants' violations

    of the federal and state minimum wage laws,

i.  An award of actual and treble damages for violations of the civil RICO

    statute,

j.  An award of actual damages for the breach of contract against Defendant

    Purpose Point, and

k.  other relief as is just and proper.

Respectfully submitted,

/s/ Benjamin O'Hearn
Teresa Hendricks (P46500)
Benjamin O'Hearn (P79252)
Molly Spaak (P84730)
Migrant Legal Aid
Attorneys for Plaintiffs
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
Phone: (616) 454-5055
thendricks@migrantlegalaid.com
bohearn@migrantlegalaid.com
mspaak@migrantlegalaid.com
