## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

LUIS GOMEZ-ECHEVERRIA, ET AL.,

                                                          Case No. 22-CV-314

                        Plaintiffs,                       Hon. Jane M. Beckering

v.

PURPOSE POINT HARVESTING LLC,
ET AL.,

                        Defendants.

| **Migrant Legal Aid** | **Avanti Law Group, PLLC** |
|---|---|
| Teresa Hendricks (P46500) | Robert Anthony Alvarez (P66954) |
| Benjamin O'Hearn (P79252) | Attorney for Defendants |
| Molly Spaak (84730) | 600 28th St. SW |
| Attorneys for Plaintiffs | Wyoming, MI 49509 |
| 1140 Fuller Ave., Ne | 616-257-6807 |
| Grand Rapids MI 49503 | |
| 616-454-5055 | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

Pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(d)(1)(D), Defendants

Purpose Point Harvesting, LLC ("Purpose Point"), Emilton Moreno Gomez ("Emilto"), and

Lucille Jean Moreno ("Lucille") hereby submit this brief in support of their Motion to Dismiss

Plaintiffs' Amended Complaint or, in the Alternative, to Strike Plaintiffs' Class Allegations.

## PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs Luis Gomez‑Echevarria ("Luis") and Hervil Gomez‑Echevarria ("Hervil") are migrant workers from San Marcos, Guatemala, who were employed by Defendants Purpose Point Harvesting, LLC ("Purpose Point"), Emilto Moreno Gomez ("Emilto") and Lucille Jean Moreno ("Lucille"). Plaintiffs allege to have worked as agricultural workers in Newaygo County, Michigan at several farms during their employment with Purpose Point. They allege that Defendant Purpose Point is a company owned and operated by Defendants Emilto and Lucille, and admit that Plaintiffs Luis and Hervil, who are actually siblings, are related to Defendants - first cousins to Emilto, in fact. They further allege that Purpose Point used the H2A program to recruit and employ laborers from Guatemala.

In 2017, Emilto recruited his cousin Luis, to work for him in Michigan. Plaintiffs allege that Luis was coerced into working for Defendants through the 2017 season. At the end of the season, Luis returned to Guatemala. In 2018, according to Plaintiffs, Defendants recruited Luis, and this time his brother Hervil, to work for them again. Plaintiffs allege that once again, Defendants coerced Luis and this year, Hervil, to work once they arrived in Michigan. Luis and Hervil returned to Guatemala at the end of the 2018 season. In 2019, Defendants allegedly recruited Luis for a third time and Hervil a second time to work for them in Michigan. Plaintiffs agreed to return and allege that once again, Defendants coerced them into forced labor. Plaintiffs claim they were trafficked and defrauded of their wages, and that they suffered physical, mental, and financial harm from the ordeal.

# ARGUMENT

**1.  Plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(6) as it fails to sufficiently plead factual allegations and should be subject to a heightened standard under Rule 9(b) for averments to fraud.**

It is well established that a complaint must be dismissed pursuant to Rule 12(b)(6) if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs are obligated to lay out the grounds for relief, which requires more than labels and conclusions in order to rise above the speculative level. *Twombly*, 550 U.S. at 555. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

### A. Plaintiff's claims are factually deficient on their face.

In their pleading, Plaintiffs bring forward five counts alleging violations of the **1**) Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1589, et seq. - against All Defendants, **2**) he Michigan Human Trafficking Victims Compensation Act, MCL 752.981 et seq. - against All Defendants, **3**) the Fair Labor Standards Act (FLSA), 29 U.S.C. 8 §201 et seq. - against All Defendants, **4**) the Michigan Workforce Opportunity Wage Act, MCL 408.411 et seq. - against All Defendants, and **5**) compensation for breach of contract - against Defendant Purpose Point only.

Count One states that Defendants obtained forced labor from Plaintiffs "by means of fraud and coercion, including through threatening immigration detention and deportation, reputational harm, misrepresentation of terms of employment, illegal wage withholdings, and deductions and intimidation in violation of 18 U.S.C. § 1589(a)." (ECF 13 at PAGE ID 329).

Count Two repeats those allegations under the Michigan Human Trafficking Victims Compensation Act.

Plaintiffs allege that "Defendants exercised control over Plaintiffs and others similarly situated during the time they were employed at Purpose Point." (ECF 13 at PAGE ID 326). Plaintiffs continue that this was accomplished by Defendants confiscating their passports to prevent travel, controlling their bank accounts, and intimidating the Plaintiffs with threats about their H-2A status. *Id.* These assertions are severely undermined by Plaintiffs' admission that they returned to work for Defendants multiple times between 2017 and 2019. *Id.* Plaintiffs left the United States and returned of their own volition - Luis on three separate occasions and Hervil twice.[1] It is hard to reconcile Plaintiffs' claims of serious coercion or threats with their pattern of freely traveling back and forth between the United States and Guatemala. Other than the Plaintiffs alleging that Defendants confiscated their passports or made some remarks about Plaintiffs' H-2a status (claims which are undermined by Plaintiffs freely leaving the country over a period of years), there are no allegations presented that Defendants made a serious effort to *force* Plaintiffs to remain in Michigan and work year after year. Plaintiffs even admit that they "fled", thus abandoning their contractual obligations, in 2019 seemingly as simple an act as walking off the job and not returning.

Furthermore, the factual allegations about how Defendants obtained their forced labor from Plaintiffs are full of contradictions and highly implausible scenarios. Plaintiffs allege that Defendants would post photos of workers who had fled on Facebook through an intermediary, hoping that "private persons would return them to Defendants." (ECF 13 at PAGE ID 327). Plaintiffs attached an exhibit of a Facebook screenshot, allegedly depicting the Defendants'

---

[1] Very little information is provided as to Plaintiff Julio who is not even mentioned in the Amended Complaint until paragraphs 72 & 73.

intermediary making this request. *Id.* However, the Facebook status of the exhibit merely states that the men have been reported missing and it is unknown if they are in danger or at risk of being tracked down by immigration agents. At no point does this supposed intermediary ask in his Facebook status for help in searching for the men or requesting for "private persons" to return the men to Defendants. The more this allegation is examined, the stranger and more unlikely it becomes. That Defendants would seek out bounty hunters to return their workers to them via a social media intermediary, who never even makes a request for help in finding the workers, is questionable at best.

Plaintiffs also allege that Defendants filed a police report in an attempt to use Michigan State Police's resources to force Plaintiffs to return to work. *Id.* This allegation is strange on its face because it's unclear how Defendants hoped to accomplish that with the police. Plaintiffs attached the police report as an exhibit, and while officers attempted to follow up with Plaintiffs for the report, it states very early on that the Plaintiffs did not go missing under suspicious circumstances. (ECF 13-1 at PAGE ID 342). The idea that Defendants were somehow hoping that police would do their dirty work for them in trying to force Plaintiffs back to work seems to be more of a wild, farfetched theory than a well-pleaded factual allegation.

Count Three and Four state that Plaintiffs were not reimbursed for the fees in their first week of employment which allegedly brought them below the federal and state minimum wage. (ECF 13 PAGE ID 332 - 335). If Counts One and Two were thin on a factual basis, Counts Three and Four are clearly insufficient. Plaintiffs stated that they were not paid a minimum wage and did not elaborate beyond that or provide exhibits to support their claim, falling short under *Twombly* and *Iqbal*. Plaintiffs make brief statements such as Defendants

failed to keep accurate records, but don't offer any sort of elaboration beyond that. (ECF 13 at PAGE ID 333).

Plaintiffs mentioned that they were not reimbursed for the recruitment fees paid, which allegedly brought them below the minimum wage, but fail to provide anything beyond that conclusory statement. There are no facts about how much income Plaintiffs brought in as a total that first week of employment each year, how many hours were worked in that first week each year, or anything at all about how Plaintiffs arrived at this conclusion that they were not paid minimum wage during their first week of employment let alone throughout their entire employment each year. Plaintiffs attached two checks which Luis claims shows the payment of recruitment fees for the 2018 season for Hervil but do not provide any details concerning how Luis' account had that amount money in January of 2018 to begin with let alone an additional five hundred dollars a couple months later nor do they produce any evidence to support Luis' alleged payment of recruitment fees. (ECF 13-4 PAGE ID 357-358). One of the Plaintiffs, Julio Caesar Gomez Moreno, is **only** mentioned twice in the complaint. Plaintiffs allege that Julio was required to pay the $2,500 recruitment fee, but do not provide any information about Julio or his claims as a named Plaintiff beyond that statement.

Additionally, and most fatally, the Plaintiffs fail to provide any factual allegations to support a finding of willfulness necessary to overcome the two year statute of limitations of the FLSA. 29 USC § 255(a). Under the FLSA, "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued". Id. Though generally "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove", a defendant may bring raise this defense in their

motion to dismiss "if it appears on the face of the complaint." *Whiteside v. Hover-Davis, Inc.*,

995 F.3d 315, 319 (2nd Cir. 2021). Thus a court may dismiss a claim "'if [the] complaint

clearly shows the claim is out of time.'" *Id*. citing *Harris v. City of New York*, 186 F.3d 243,

250 (2d Cir. 1999). In Whiteside, the court held that "a plaintiff must allege facts at the

pleadings stage that give rise to a plausible inference that a defendant willfully violated the

FLSA for the three-year exception to apply." *Id*. at 320. The plaintiff in Whiteside filed their

complaint almost one year after the two year statute of limitations ran on the claim and when

challenged by the defendant in the motion to dismiss, argued that they "need only assert at the

pleadings stage that the defendant willfully violated the FLSA." *Id*. After noting a split in the

circuits as to what is required at the pleadings stage to show willfulness such that the three year

statute of limitations should apply, the court decided to follow the reasoning of the Sixth

Circuit decision in *Crugher v. Prelesnik* which held that "[a] plaintiff 'must do more than make

the conclusory assertion that a defendant acted willfully' " to invoke the three-year exception

under the structurally analogous Family and Medical Leave Act ("FMLA"). 761 F.3d 610, 617

(6th Cir. 2014) (quoting Katoula v. Detroit Entm't, LLC, 557 F. App'x 496, 498 (6th Cir.

2014)). The court then held that "FLSA plaintiffs must plausibly allege willfulness to secure

the benefit of the three-year exception at the pleadings stage." *Whiteside* at 320. The court also

said that it "need not accept as true a plaintiff's conclusory allegation that a defendant willfully

violated the FLSA" and that "[e]ven prior to Iqbal and Twombly, FLSA plaintiffs bore some

obligation to allege willfulness to obtain the benefit of the three-year exception at the pleadings

stage—that is, where an FLSA complaint did not aver willfulness, the two-year limitations

period applied by default." Id. at 321. Mere averments of willfully violating the statute are not

enough as the plaintiff is required to provide factual allegations to support that legal

conclusion. *Id*. The court noted that the standard of willfulness required for the third year of statute of limitations to apply was "an independent element of claims for willful violation of the FLSA—a subset of FLSA claims pursuant to which an employer is subject to heightened liability." *Id*. at 324. Thus, the burden of proof is on the plaintiff to prove that the third year of the statute of limitations applies. *Id*.

Per the amended complaint, Plaintiff's claim relates to the 2019 season which is more than two years from the date of the filing of the complaint. (ECF 1 & ECF 13 PAGEID 332). In order to prove willfulness, the Plaintiff must "establish[] that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute". *Parada v. Banco Industrial de Venezuela, C.A., 753 F.3d. 62, 71 (2d Cir. 2014).* While not exhaustive, "[c]ourts have have found employers willfully violated FLSA where they ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work." *Hantz v. Prospect Mortg., LLC*, 11 F.Supp.3d 612, 617  (E.D. Va. 2014) *see also*, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2nd Cir. 1988)(employer had earlier violations and received specific advice from DOL); *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40 (2nd Cir. 1995)(employer was acquainted with the general requirements and policy of the statute per prior DOL investigations); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1294 (3rd Cir. 1991)(employer knew adoption and use of commission based pay plan may violate FLSA but failed to investigate); *Heath v. Perdue Farms, Inc.*, 87 F.Supp. 2d 452 (D. Md. 2000)(willfulness established where employer knew IRS rulings concluded that chicken catchers misclassified as independent contractors, and industry was aware of DOL position that overtime was required to be paid to chicken catchers);

*Reich v. Bay, Inc.*, 23 F.3d 110 (5th Cir. 1994)(DOL informed employer that company practices violated FLSA and employer failed to investigate); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991)(employer had actual knowledge of FLSA requirements from earlier violations, previously agreed to pay back wages and promised future compliance). Here, Plaintiffs have not made any allegations that rise to the level of meeting the established standard of willfulness. There are no allegations that the Defendants had previously been investigated by the DOL and advised of being out of compliance with the FLSA. Nor are there any allegations of repeated violations of the FLSA, the destruction, or falsification or withholding of required records by the Defendants.  In fact, the word "willfulness" does not appear in the amended complaint at all. Nothing in the amended complaint supports the extension of the statute of limitations beyond the two years allowed under the FLSA and this claim should be dismissed.

It is plainly evident that Counts Three and Four are nowhere near the standard for plausibility with so much information lacking. Plaintiffs have not provided enough facts to allow for any favorable inferences for themselves, let alone to permit the Defendants to properly respond. Dismissal is appropriate when the claim is no more than a sheer possibility that Defendants acted unlawfully. *Bell Atlantic,* at 545.

Count Five is akin to Counts Three and Four, as Plaintiffs stated that Defendants breached their contracts by refusing to pay Plaintiffs and others the agreed upon wages in the job orders. Once again, this is a conclusion that Plaintiffs arrived at without any significant elaboration. Plaintiffs included the job orders as exhibits, but did not include any facts about the alleged breach beyond that. There is no information about how these supposedly agreed upon wages were not paid, no details about how Defendants refused to pay, and nothing to

support this Count beyond Plaintiffs' insufficient statements. One would think that Plaintiffs would have produced copies of their pay stubs or bank statements or at the very least could have provided enough detail in their complaint and verified it to add to its credibility.

Furthermore, Plaintiffs do not mention how they abandoned their employment of their own free will. They simply left Purpose Point and have provided no additional facts or context that would allow Defendants to respond in a meaningful way. Not only is Count Five suffering from these factual deficiencies, but Plaintiffs' actions could leave them vulnerable for counterclaims about their own breaches. Under the Department of Homeland Security guidelines for H-2A workers, a worker is deemed to have abandoned the job if they have unexcused absences for five consecutive days. 20 C.F.R. §655.122(n). This dereliction not only violated the contract Plaintiffs had with Defendants, but put Defendants in a vulnerable position as they had a duty to report Plaintiffs' absence to DHS two days after the abandonment. *Id.* In fact, this requirement is clearly present in the Clearance Order. (ECF 13-6 PAGEID 376)

Additionally, the third Plaintiff, Julio Ceasar Gomez Moreno, should be dismissed from the complaint, as there is virtually no information about his claims or standing against Defendants. There are merely two short statements about Plaintiff Julio at Paragraphs 72 and 73 of the complaint: Defendant Emilto required Julio to pay the $2,500 recruitment fee, and Julio paid the fee to Defendant Emilto. The only other allegation we have is that Julio, like Luis and Hervil, is related to Defendant Emilto. (ECF 13 PAGEID 320).  At the pleading stage, plaintiffs will often try to cure any deficiencies by adding more claims or other named plaintiffs, but these will often add needed facts and details about the case. Plaintiffs in the matter at hand already have a serious deficiency issue under *Iqbal* and *Twombly*, so it is

inexplicable why they would choose to add another party who does not add anything to the allegations, and in fact, undermines the original Plaintiffs by providing so little detail.

"[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *In re Packaged Ice Antitrust Litigation*, 2011 WL 6178891 at *7 (E.D. Mich. December 12, 2011) (quoting *Summit Office Park, Inc. v. United States Steel Corp.,* 639 F.2d 1278, 1282 (5th Cir.1981). Unlike *Packaged Ice* and *Summit Office Park*, Plaintiffs' addition of Julio as a party does not address the previous plausibility concerns, but instead emphasizes them given his familial relationship with Defendants. Given the severe lack of details for this Plaintiff in this Amended Complaint, this Court should dismiss him from the matter.

### B.  Plaintiffs should be subject to the heightened pleading standard under Rule 9(b) for averments to fraud.

Plaintiff alleges violations of the TVPRA and the Michigan Human Trafficking Victims Compensation Act, the FLSA, the Michigan Workforce Opportunity Wage Act, and common law breach of contract.  While these claims are not explicitly defined as fraudulent, in the amended complaint Plaintiffs outright state allegations of fraud in Count One and Count Two, and incorporate factual allegations of fraud into Count Three, Four, and Five. In Count One, Plaintiffs state that Defendants obtained forced labor from Plaintiffs "by means of fraud and coercion, including through threatening immigration detention and deportation, reputational harm, misrepresentation of terms of employment, illegal wage withholdings, and deductions and intimidation in violation of 18 U.S.C. § 1589(a)." (ECF13 at PAGE ID 329). In Count Two, Plaintiffs included the definition for forced labor in the Michigan Penal Code. "Section 750.462a defines forced labor as "labor or services that are obtained or maintained by fraud,

force, or coercion." (ECF 13 at PAGE ID 330). It is important to note that Plaintiffs' have to allege fraud and coercion, as there is no evidence whatsoever that Defendants used any physical force or the threat of physical force to secure labor from Plaintiffs.

The pleadings should be subject to a heightened standard under Rule 9(b) due to Plaintiffs outright alleging fraud in Count One and Two, and heavily incorporating those allegations into the rest of their complaint. "Rule 9(b) applies to "averments of fraud," not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations. *In re Daou Sys., Inc.,* 411 F.3d 1006, 1027–28 (9th Cir.2005); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.,*394 F.3d 126, 160–61 (3d Cir.2004). A claim that "sounds in fraud"—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements. *Rombach v. Chang,* 355 F.3d 164, 170–71 (2d Cir.2004); *see Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990)." *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502 (7th Cir.2007)

It is clear that Plaintiffs' entire complaint is "sounds in fraud," or premised upon fraudulent conduct. The factual allegations center around Defendants' scheme to lie to and intimidate their workers in order to extract their labor and obedience. Plaintiffs allege that Defendants lied about their contacts in the government, threatened to damage the workers' H-2A statuses, and deceived Plaintiffs into paying illegal recruitment fees. Plaintiffs attempt to paint an ongoing plot to defraud workers of their money and their liberty, but then fail to expound on those accusations.

As previously mentioned, Plaintiffs' factual allegations are brief, conclusory, and often contradictory. In addition to the bizarre claims that Plaintiffs tried to recover missing workers through social media or false police reports, Plaintiffs made conflicting statements about how

Defendants would cooperate with immigration enforcement actions, while simultaneously threatening to deport workers. (ECF 13 at PAGE ID 325, 327). It is also puzzling that while Plaintiffs are alleging human trafficking by means of fraud and coercion, it is undisputed that Plaintiffs and other workers were brought to Purpose Point legally through the H-2A program. While visa programs like the H-2A are sometimes abused by traffickers, that plausibility is weakened considerably when viewed within the context of Plaintiffs' ability to travel and their familial relationships to Defendants.

In *Borsellino v. Goldman Sachs Group, Inc.,* the Seventh Circuit affirmed the district court's ruling dismissing a claim for tortious interference with economic advantage, interference with fiduciary relationship and civil conspiracy, under the heightened pleading requirement of Rule 9(b). The plaintiff's claims revolved around his former business partners, who he alleged had conspired to form a new business without him. The Seventh Circuit held that the factual allegations "made neither economic nor common sense," thus the plaintiff's claims were not plausible and the conspiracy allegation was not stated with particularity to satisfy Rule 9(b). Similarly, in *Spadafore v. Gardner,* the Sixth Circuit held up a summary judgment in a 42 U.S.C. § 1983 claim because the plaintiffs had "submitted no evidence, circumstantial or otherwise, suggesting that the defendants had a single plan when they made the allegedly false statements." *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir.2003).

Plaintiffs' claims would fail if they were rightfully subjected to Rule 9(b), which states"[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). In order to meet that standard, Plaintiffs must "'allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the

fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993)). Plaintiffs' claims are deficient under Rule 9(b). Just like in *Borsellino*, the allegations do not make sense and so they are not plausible. Plaintiffs were unable to meet their burden under 12(b)(6), let alone a heightened standard. There is no time, place, and content for the alleged fraud and no coherent fraudulent scheme laid out in the pleading. Plaintiffs' claims cannot survive under either challenge.

### 2.   In the alternative, the Court should strike Plaintiffs' class allegations pursuant to Rule 12(f), as they have not met class certification requisites under Rule 23.

Plaintiff's allegations are too conclusory and vague to support a class action and should be dismissed in their entirety under Rule 12(b)(6) or struck under Rule 12(f) for failing to meet the class certification requirements. Courts may also "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). If it is obvious from the pleadings that it would be impossible for a proceeding to move forward on a classwide basis, district courts may dismiss the class allegations under Rule 12(f). See *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011). "When a defendant moves to strike class action allegations on the basis that class certification is precluded as a matter of law, the defendant bears the burden of establishing that the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record." *Jimenez v. Allstate Indem. Co.*, 2010 WL 3623176 at *3, (E.D. Mich. September 15, 2010).

**A. The Plaintiff has failed to satisfy the four prerequisites under Rule 23 and it is clear that no amount of discovery will cure the deficiencies in the pleading.**

The Sixth Circuit has held that "a district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.). Rule 23(a) sets four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). All four prerequisites must be met before a class can be certified. *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

The first prerequisite, numerosity, is that the proposed class is "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). Plaintiffs claim that the class is numerous enough to support a collective action and allege that there are at least 70 class members. (ECF 11 at PAGE ID 191). Beyond that dubious statement, Plaintiffs are unable to demonstrate numerosity or provide any basis to substantiate that number. "Reference to the total number of individuals conceivably harmed is insufficient to prove numerosity." *Castellanos v. Worldwide Distribution Systems USA, LLC*, 2015 WL 13862060 at *3, (E.D. Mich. August 19, 2015) (citing *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (explaining that identifying the "absolute maximum number of plaintiffs that could be in any class action" is not probative of the number reasonably likely to have suffered harm, and finding that "such an unrefined measure ... is too speculative for purposes of the numerosity requirement")).

Like *Castellanos*, Plaintiffs offer no factual allegations to support whether Defendants harmed the other class members in a similar manner other than purely conclusory statements. There is nothing to confirm or support the claim that the alleged members of the class exist let alone that there exists a class of similarly harmed individuals other than Plaintiffs' conclusory statements in their ***unverified*** amended complaint. Thus, Plaintiffs fail to rise above mere speculation and satisfy the numerosity requirement under Rule 23(a). Similarly in *Golden*, the court held "We have no reason to question this figure but we agree with the district court that merely referring to it does not suffice for purposes of proving numerosity under Rule 23(a)(1)." *Golden,* 404 F.3d at 966.

The second prerequisite, commonality, is that there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Plaintiffs have not pleaded facts that plausibly establish commonality. The Supreme Court has held that commonality means that "a class representative ... be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)). Plaintiffs have made vague, conclusory references to commonality in their unverified complaint,  but "[r]eciting these questions is not sufficient to obtain class certification. . . Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citing *General Telephone Co. of Southwest* v. *Falcon* , 457 U. S. 147, 157 (1982)).

It is impossible to determine whether Plaintiffs have suffered the same injuries as other members in the alleged class because Plaintiffs have failed to give any information about the type, nature and even extent of injuries shared by Plaintiffs and other class members. Either

those facts are lacking or simply non-existent. Furthermore, the very fact that these three

Plaintiffs are not just related to each other but related to the individual Defendants, complicates

any attempt at making a showing of commonality with the potential class. Even if the supposed

harm each of these named Plaintiffs was subjected to was the same, their familial relationship

with the Defendants cannot be said to make their claimed harm or perception of harm the same

as those members of the potential class that are not related to the Defendants. Other courts have

found commonality lacking because certification "would still require the court to engage in a

case-by-case analysis" of injury and damages." *Martin v. JTH Tax, Inc.*, No. 9:10-cv-3016,

2013 WL 442425, at *7 (D.S.C. Feb. 5, 2013). Such an analysis is precluded by the lack of

factual basis about any sort of common injury amongst the class.

The third prerequisite, typicality, is that "the claims ... of the representative parties are

typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). To establish typicality, 'part of the

class and possess[es] the same interest and suffer[s] the same injury as the class members.''

*Falcon,* 457 U.S. at 156. The nature of Plaintiffs' relationship to each other and to Defendants

destroys any semblance of typicality. Luis and Hervil are siblings who are related to Defendant

Emilto as first cousins, and Julio is a cousin to all three, which automatically dismantles any

argument that Plaintiffs might have a common interest with the other class members. Unless

Plaintiffs are planning to create a class composed entirely of other family members, it is

unclear how Plaintiffs would have the same interests and injuries as putative class members

who are **not** related to Defendants.

While the lack of a factual basis makes it difficult to ascertain whether Plaintiffs share

injuries with the class members, the familial bond makes it clear that Plaintiffs' interests will

always be highly distinguishable from the rest of the class. Even the level and/or impact of

alleged coercion, threats and intimidation will necessarily be distinguishable between the Plaintiffs and the other class members. Furthermore, Plaintiffs own actions point towards their claims being separate from that of any putative class. Plaintiffs alleged breach of contract in Count Five, but forgot to include that they abandoned their employment with Defendants. That alone would suggest that Plaintiffs' claims are almost certainly particular to themselves and unable to establish the commonality needed under Rule 23(a)(3) especially since they are at risk of a counterclaim for breach of the employment agreement themselves unlike the other members of the potential class who fulfilled their contractual obligations.

The fourth prerequisite, adequacy, requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Plaintiffs fail to satisfy this measure for the same reason as commonality and typicality. The fact that Plaintiffs are related to each other and Defendants means that they are poor representatives to protect the interests of the rest of class who may or may not be similarly related. On its face, that bias alone cannot be overcome to the level needed for Plaintiffs to represent the class without any material conflicts. However, "[t]his Court has considerable flexibility under Rule 23 to deal with conflicts if and when they arise." *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 337-338 ( E.D. Mich. 2001) (citing *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 512 (S.D.N.Y. 2006).

Courts have frequently ruled on the issue of whether a named plaintiff is an adequate representative when there is a conflict between the class representative and counsel. There is little precedent for Rule 23 adequacy issues concerning the familial relationship between the plaintiff and the defendant, but the issue has appeared more frequently when it involves counsel. This Court in *Cardizem* found that a "close familial relationship" between the class

representative and counsel is not enough to create a conflict. *Id.* at 337. "Rather, there must be some evidence that the relationship at issue is likely to create a conflict of interest or otherwise compromise the ability to vigorously prosecute the action on behalf of the class. The concern is that the financial interests of the class representative may conflict with those of the class; e.g., he may seek a settlement that is not good for the class as a whole." *Id.* (citing *Irvin E. Schermer Trust by Kline v. Sun Equities Corp.,* 116 F.R.D. 332, 337–38 (D.Minn.1987)).

The *Cardizem* court also mentioned the Michigan Supreme Court's ruling in *Grigg v. National Bank.* "In *Grigg,* the Michigan Supreme Court concluded that "the relationship between a class representative and the attorney or attorneys handling the case can be *a relevant consideration* in assessing the requirement of adequate representation. If that relationship would impair the representation of the absent class members, it *can be* the basis for a ruling that the requirement of adequate representation has not been met." *Grigg v. Michigan National Bank,* 274 N.W.2d 752, 765-66 (1979). This Court noted that while Defendants' were wrong to rely on *Grigg*, the plaintiff's relationship to counsel would merit examining the relationship, and "if such examination revealed that this relationship would interfere with her representation of the class, the class portion of the suit could be dismissed." *Id.* (citing *Grigg* at 766).

If the reasoning in *Cardizem* (and by extension, *Grigg*) is followed, then it becomes clear that there is serious conflict between the Plaintiffs as proposed class representatives and the rest of the putative members. Both *Cardizem* and *Griggs* examined the relationship between a class representative and counsel because the courts recognized that familial bonds could create significant issues for the other members. If those relationships have the potential to create a conflict, then Plaintiffs' familial relationship to Defendants is almost certainly a conflict that would put Plaintiffs at odds with the rest of the class. There is a significant risk

that Plaintiffs would have motives that could undermine prosecution or interfere with what is best for the class as a whole.

Plaintiffs, unlike the other members of the class, have a history with the Defendants. A familial bond that will have impacted their perspective as to the alleged actions taken by the Defendants, will have a unique influence on their pursuit of the claims perhaps making them unable to reasonably assess the strengths and weaknesses of the claims, and will most certainly put the Plaintiffs in a different category than the other class members in terms of not just the claims, but the defenses. These issues are not easily overcome as you cannot plead away that relationship. You cannot undo those familial bonds through artful wording or creative writing or even as is typically done in class actions where a conflict arises, by the creation of subclasses.

### B. The class allegations put forward by Plaintiffs are too vague and individualized to be maintainable under Rule 23.

In addition to the four prerequisites under Fed.R.Civ.P 23(a), Plaintiffs must show that a class is maintainable under Rule 23(b)(1), (2) or (3). If Plaintiffs are able to meet the four factors under subdivision (a) but are unable to establish subdivisions (b), the class allegations must be dismissed. *American Med. Sys., Inc.,* at 1079. Plaintiffs argue that their class action would satisfy Rule 23(b)(3). Rule 23(b)(3) states that a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the

findings include: (A) the interest of members of the class in

individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning

the controversy already commenced by or against members of

the class; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; (D) the

difficulties likely to be encountered in the management of a

class action.

Fed.R.Civ.P. 23(b)(3).

Plaintiffs state that there are "predominate questions for the class include whether

Defendants' actions amount to human trafficking, whether Defendant Emilto charged class

members illegal recruiting fees, and whether Defendant Purpose Point breached its contract

with class members. The predominate questions for the minimum wage subclass include

whether Defendants paid class members the minimum wage under state and federal law." (ECF

13 at PAGE ID 336).

"The predominance requirement of Rule 23(b)(3) is met if a single factual or legal

question is "at the heart of the litigation." *Calloway v. Caraco Pharmaceutical Laboratories,*

*Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. August 17, 2012) (citing *Powers v. Hamilton County*

*Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir.2007)). It is nearly impossible to evaluate

what would be at the heart of this case given the fact that Plaintiffs have not volunteered any

information about the class other than they supposedly exist. Plaintiffs have laid out what some

of those questions for the class could be, but without knowing any details about the class at all

it is impossible to determine whether there are "common questions" or if these are issues solely

pertaining to the Plaintiffs, and they are merely attempting to shoehorn a class into the predominance requirement. Additionally, while many allegations relating to the class are couched in the qualifier of "Upon information and belief", others are stated as direct statements of fact which directly contradict them. For example, in paragraphs 41, 42, and 68, Plaintiffs allege upon information and belief that the Defendants had a policy to charge and thus possibly charged each worker the recruitment fee. Yet, in paragraphs 45, 66, 91,92 and 93 Plaintiffs affirmatively state that each worker was charged the fee and was never reimbursed for that fee.

Plaintiffs do not even adequately lay out the details of their own injuries, leaving the complaint woefully unable to meet the predominance requirement. Plaintiffs allege they suffered emotional, mental, and financial harm. At a bare minimum, Plaintiffs allude to financial harm by alleging they were denied federal and state minimum wage and illegally charged a recruitment fee. Beyond that, the injuries Plaintiffs suffered are a mystery. There is no mention of how Plaintiffs were mentally harmed - facts that would no doubt raise individualized questions. Even if Plaintiffs were able to bring forward more information through discovery, that would not satisfy predominance with a factual or legal question due to the individualized nature of Plaintiffs' familial relationship with Defendants. There is nothing to suggest that any person in the alleged class is similarly positioned to Plaintiffs or even endured the same treatment or perceived any such treatment in the same way that Plaintiffs, relatives of Defendants, allegedly suffered.

Furthermore, other courts have ruled that forced labor and human-trafficking claims cannot be certified under Rule 23. In *Kurian David v. Signal International, LLC*, the Eastern District of Louisiana held that "individual issues with respect to coercion and consent will predominate Plaintiffs' § 1589 forced labor claims. . .. Plaintiffs cannot avoid the burden of

proof that each individual plaintiff faces, i.e., that it was conduct on the part of either Signal, Pol, or Dewan that was coercive so as to overcome his will and render his labor involuntary, by relying on the characteristics that apply broadly to the class as a whole. Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3) even though common issues are present in their forced labor claims." *Kurian David v. Signal International, LLC*, 2:08-cv-01220-JCZ-DEK (E.D.La. January 4, 2012).

The district court repeated its reasoning for the human-trafficking claims as well. *Id.* The court's reasoning is directly applicable to this case, especially with the added complication that Plaintiffs are related to Defendants. It stands to reason that if Plaintiffs were coerced into forced labor, the facts around said coercion would be noticeably different from other class members due to the individual relationships Plaintiffs and the putative class members had with Defendants. Similarly, these Plaintiffs' tolerance for said acts of coercion will necessarily be different than those of the potential class that are not relatives of Defendants.

"The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Id.* (citing *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006)). "A class action is superior particularly in those situations in which it "vindicat[es] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997)). It is also telling that though the Plaintiffs have been free of this supposed forced labor situation since 2019, and they are all from the same place in Guatemala and presumably have contact with any and all potential class members, that no other current or former workers have decided to join them in their claims against the Defendants.

Finally, Plaintiffs do not have any meaningful description of the class or subclass and how they are similarly situated beyond the fact that they all worked for Purpose Point. (ECF 13 PAGE ID 336). There is no mention of what this putative class would have in common with Plaintiffs or why it would be effective to vindicate the rights of a group who could not otherwise bring claims individually. Even if Plaintiffs could rectify the insufficient factual basis through discovery, it is highly implausible that such a class would be superior to individual claims given the varying and individual nature of human-trafficking abuse. There would be an immense burden on Plaintiffs to present evidence that their injuries, and even their perception of the actions alleged to have coerced them, were the same as those of the other class members and would make any class action a time-consuming ordeal with no significant advantages over individual litigation.

### C. The class allegations against the individual defendants Emilto and Lucille are improper because Plaintiffs have failed to establish privity between the class and the defendants.

In *Mazzei v. The Money Store*, the Second Circuit held that a class of mortgage borrowers was properly decertified for failing to prove that class members were in contractual privity with the defendants for a breach of contract claim. The Money Store denied that it was in privity with class members whose loans it serviced, but did not own. However, because The Money Store owned the plaintiff's loans, it did have a contractual relationship with the plaintiff. The Second Circuit ruled that the district court did not abuse its discretion when it held that the plaintiff could not establish typicality because his interests were not aligned with the other class members who did not have a contractual relationship with The Money Store. The district court also found that the plaintiff also could not meet the predominance requirement because any fact-finder would have to examine each class member's contractual

relationship with The Money Store. *Mazzei v. The Money Store*, 829 F.3d 260, 272 (2d. Cir. 2016).

Similarly, the human trafficking claims against the individual defendants are highly improper for comparable reasons. Plaintiffs have not established any sort of nexus between the putative members and the trafficking allegations. The complaint is devoid of any facts to support a narrative that the putative class was abused in the same manner as the Plaintiffs by the individual defendants. The only fact that Plaintiffs included about Defendants' actions towards members of the putative class is the inclusion of the Facebook status exhibit and the claim that Defendants would try to recover missing workers over social media. However, even this strange allegation does not mention Emilto and Lucille in their individual capacity in any way, and Plaintiffs admit it was posted through an alleged "intermediary" but fail to provide any basis for making such an assumption. Plaintiffs submitted very little evidence to show that a class action is proper for the human trafficking allegations, and there is even less justification for tying the individual defendants to these trafficking claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion to dismiss under Rule 12(b)(6). Defendants ask that the Court dismiss Plaintiffs' claims with prejudice as they have failed to adequately plead factual allegations in this amended complaint and did not meet the standards for pleading fraud under Rule 9(b), and any attempted further amendment of the complaint to cure these deficiencies would be futile. Alternatively, Defendants ask the Court to strike the class allegations because Plaintiffs have not pled facts that plausibly establish numerosity, commonality, typicality, and predominance under Rule 23.

Respectfully Submitted,


*/s/ Robert Anthony Alvarez*
Avanti Law Group, PLLC
Robert Anthony Alvarez (P66954)