IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| **Luis Gomez-Echeverria and Hervil Gomez-Echeverria** on behalf of themselves and others similarly situated,<br><br>       **Plaintiffs;**<br>v.<br><br>**Purpose Point Harvesting LLC, Emilto Moreno Gomez,** and **Lucille Jean Moreno,**<br><br>       **Defendants.** | Case No. 1:22-cv-00314<br><br>Hon. Jane M. Beckering |

Teresa Hendricks (P46500)
Benjamin O'Hearn (P79252)
Molly Spaak (P84730)
Migrant Legal Aid
Attorneys for Plaintiffs
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
Phone: (616) 454-5055

Robert Anthony Alvarez (P66954)
Avanti Law Group
Attorney for Defendants
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807

**Plaintiffs' Brief in Support of Their Motion to Dismiss Defendants' Verified First Amended Counterclaims Against Plaintiffs With Jury Demand, or in the alternative, to Strike Improper Allegations**

1

# Table of Contents

Table of Contents ........................................................................................................... 2

Table of Authorities......................................................................................................... 3

Preliminary Statement .................................................................................................... 4

Procedural History .......................................................................................................... 4

Argument.......................................................................................................................... 6

I.       Defendants' Counterclaim should be dismissed because none of their claims are
         adequately pleaded. .............................................................................................. 6

    A.    Defendants' counterclaim for RICO is a wild conspiracy that claims government
          agencies are conspiring against them and the U.S. government (and was not
          properly pleaded). ............................................................................................ 6

    B.    Defendants' counterclaim for breach of contract because the Contract doesn't say
          what the Defendants think it does...................................................................... 9

    C.    Defendants' counterclaim for fraudulent misrepresentation does not meet the
          heightened pleading standard of Rule 9(b). ......................................................13

    D.    Defendants cannot establish a claim for silent fraud because they have not alleged
          (and cannot allege) that Plaintiffs had a legal or equitable duty to disclose.........15

    E.    Defendants' counterclaim for intentional infliction of emotional distress fails
          because the conduct was not extreme and outrageous, and the conduct is legally
          protected. ........................................................................................................17

    F.    Defendants' counterclaim for civil conspiracy fails because a civil conspiracy
          claim requires a separate and actionable tort to survive. .................................. 19

II.      In the alternative, Defendants' Counterclaim should be struck in part because it
         includes immaterial and scandalous allegations...................................................20

Conclusion....................................................................................................................... 22

# Table of Authorities

## Cases

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)....................................................6

*Berent v. Kemper Corp.*,780 F. Supp. 431, 448 (E.D.Mich. 1991) ..........................................8

*California Transport v. Trucking Unlimited*, 404 U.S. 508 (1972) ................................18, 19

*Cousineau v. Ford Motor Co.*, 140 Mich. App. 19 (Mich. Ct. App. 1985)..............................20

*DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994)............................................. 18

*Doe v Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ................................................................6

*Early Detection v. N.Y. Life*, 157 Mich. App. 618(Mich. Ct. App. 1986) ........................ 18, 20

*Eastern R. Conf. v. Noerr Motors,* 365 U.S. 127 (1961) ...................................................... 18

*Eby v. Producers Co-Op, Inc.*, 959 F. Supp. 428, 432 (W.D. Mich. 1997) .........................7, 8

*Ex parte Hull*, 312 U.S. 546.............................................................................................. 19

*Fenestra v. Gulf Amer. Land Corp.*, 377 Mich. 565 (Mich. 1966)........................................ 19

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009) ..........................................6

*Johnson* v. *Avery*, 393 U.S. 483........................................................................................ 19

*Kenty v. Bank One*, 92 F.3d 384, 390 (6th Cir. 1996) ..........................................................8

*M D, Inc v. McConkey*, 231 Mich. App. 22 (Mich. Ct. App. 1998) ........................................15

*Miller–Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56 (Mich. Ct. App. 2012) ........... 10

*Mine Workers v. Pennington*, 381 U.S. 657 (1965) ............................................................. 18

*Polk v. Yellow Freight System, Inc., 801 F.2d 190*............................................................... 18

*Residential Ratepayer Consortium v. Pub. Serv. Comm.,* 198 Mich.App. 144 (1993) ........... 10

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (Mich. 1985) ............................................17

*Shuttlesworth v. Housing Opportunities Made Equal*, 873 F. Supp. 1069, 1074 (S.D.Ohio
    1994)...........................................................................................................................7

*Stevenson v. Brotherhoods Mut. Benefit,* 312 Mich. 81 (1945) .......................................... 10

*Tellabs, Inc. v Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007)...................................6

*U.S. v. Ford Motor*, 532 F.3d 496 (6th Cir. 2008) ....................................................... 8, 13

*U.S. v. Ford Motor*, at 496 ...............................................................................................13

*United States Fidelity Guaranty Co. v. Black*, 412 Mich. 99 ..............................................15

*United States v. Turkette*, 452 U.S. 576, 583 (1981) ...........................................................7

## Rules

Federal Rule of Civil Procedure 12(b)(6)...............................................................................6

Federal Rule of Civil Procedure 12(f)(2) ............................................................................ 20

Federal Rule of Civil Procedure 9(b) ..................................................................... 8, 13, 16

## Preliminary Statement

Defendants' Verified First Amended Counterclaims Against Plaintiffs ("Amended Counterclaim") is retaliation, pure and simple. Having been caught red-handed putting Defendant Lucille's name on Plaintiffs' bank accounts and writing checks to "cash" that she signed herself, Defendants are now trying to redirect attention from the evidence to a wild conspiracy and series of legally deficient claims that seek to intimidate Plaintiffs.

In response, Plaintiffs Luis and Hervil Gomez-Echeverria are asking this Court to dismiss the claims brought by Defendants in their pleading Defendants' Amended Counterclaim. Plaintiffs make this motion under Federal Rules of Civil Procedure 12(b)(6). In the alternative, Plaintiffs ask this court to strike certain allegations that are irrelevant to this case and should never have been included in Defendants' Counterclaim under Federal Rule of Civil Procedure 12(f).

## Procedural History

Plaintiffs filed their original complaint March 31, 2022. Plaintiffs sought relief under state and federal anti-human trafficking statutes, state and federal minimum wage statutes, the Racketeer Influenced and Corrupt Organizations Act (RICO), and under a claim for breach of contract. ECF No. 1. In support of their claims, Plaintiffs included copies of the work contracts as attachments to their original complaint. ECF No 1-4 and 1-5, PageID.31-126. Plaintiffs also included

proof that Defendant Lucille Jean Moreno was added as an authorized user to Plaintiff Luis's bank account (ECF No. 1-1, PageID.24), and proof that Defendant Lucille had written checks to "Cash" from Plaintiff Luis's account. ECF No 1-2, PageID.26. Defendants responded with a motion to dismiss. ECF No. 8. In response to Defendants' motion to dismiss, Plaintiffs amended their complaint and removed the RICO claim. ECF No. 13. Defendants made another motion to dismiss, arguing that this Court should either dismiss all claims, or, at least, strike the class action allegations. ECF No. 15. In their response, Plaintiffs argued that this was an "unnecessary make-work exercise" that was substantively meritless. ECF No. 17, PageID.494. After reviewing the arguments, this Court did not dismiss a single claim or strike a single allegation. ECF No. 21.

Defendants filed their first counterclaim on February 16, 2023, alleging breach of contract, fraudulent misrepresentation, silent fraud, intentional infliction of emotional distress and civil conspiracy. ECF No. 25. Plaintiffs moved to dismiss the counterclaim under Rule 12(b)(6), and Defendants amended to this current Amended Counterclaim.

## Argument

**I.    Defendants' Counterclaim should be dismissed because none of their claims are adequately pleaded.**

In making this motion under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs argue that Defendants have failed to adequately plead a claim upon which this court can grant relief. In evaluating a claim under this rule, the Court must presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleadings in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Tellabs, Inc. v Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, as shown below Defendants' Amended Counterclaim fails to meet this lenient standard.

**A.    Defendants' counterclaim for RICO is a wild conspiracy that claims government agencies are conspiring against them and the U.S. government (and was not properly pleaded).**

Defendants' first counterclaim against Plaintiffs is for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). To establish a RICO violation, the Defendants must prove "'(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity.'" *Eby v. Producers Co-Op, Inc.*, 959 F. Supp.

428, 432 (W.D. Mich. 1997), *citing Shuttlesworth v. Housing Opportunities Made*

*Equal*, 873 F. Supp. 1069, 1074 (S.D.Ohio 1994).

 In this case, Defendants are arguing that there was an association in fact

enterprise comprised of "Luis and Hervil together with Darwin Fuentes, Luis

Gomez-Castro, Rubicela Buremen, Ramon Burimen, The MDOLEO-WD, the USDOL

and it's agents, U.S. Embassy in Guatemala, the U.S. Citizenship & Immigration

Services, along with Migrant Legal Aid and its staff". Amended Counterclaim at

¶135, PageID.653. However, the Supreme Court has held that an enterprise is "a

group of persons associated together for a common purpose of engaging in a

course of conduct[... and] is proved by evidence of an ongoing organization, formal

or informal, and by evidence that the various associates function as a continuing

unit" *United States v. Turkette*, 452 U.S. 576, 583 (1981). Defendants are either

mistaken about what constitutes an enterprise under RICO, or they are arguing

(without a shred of evidence) that half a dozen people and multiple government

agencies are conspiring to commit immigration fraud (including USCIS itself) and

put Defendants out of business. Unfortunately, the second option appears to be the

case, as Defendants claim that "the common purpose of the enterprise" (which

includes United States government agencies) "was and continues to be to defraud

the United States Government and extort money from the Counter-Plaintiffs".

7

Amended Complaint ¶136, PageID.653. Defendants did not include any details about how this six-person and five-agencies enterprise functioned as a continuing unit.

But even if this were somehow a functional enterprise, Defendants failed to adequately plead the predicate acts. Defendants allege mail fraud, wire fraud, and racketeering. *Id* at ¶139. However, the allegations of mail and wire fraud must meet the rules of Rule 9(b) as "Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the `predicate acts', the underlying fraudulent activities must be pled with particularity." *Eby* at 431, *citing Berent v. Kemper Corp.*,780 F. Supp. 431, 448 (E.D.Mich. 1991); aff'd 973 F.2d 1291 (6th Cir. 1992); *Kenty v. Bank One*, 92 F.3d 384, 390 (6th Cir. 1996). "Specifically, the party must plead with "sufficient detail — in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud — to allow the defendant to prepare a responsive pleading the requirements of Rule 9(b) will generally be met." *U.S. v. Ford Motor*, 532 F.3d 496, 504 (6th Cir. 2008). In the present case, Defendants have summarily alleged that Luis and Hervil committed wire and mail fraud, but have not alleged the time, place, or recipient of this alleged fraud. A recurring theme of Defendants' Amended Counterclaim is information from unnamed workers or unnamed former workers – the very

information that would be helpful in allowing Plaintiffs to prepare a responsive pleading.

Defendants also allege "racketeering", but the section they cited (18 USC §1952, Amended Complaint ¶139(c)) refers to very specific activities that do not appear to relate to this case (such as proceeds from gambling, sale of controlled substances, or prostitution). As "racketeering activity" is defined by 18 U.S.C 1961 (1), it is a term that encompasses dozens of potential crimes, such as wire fraud or mail fraud. In short, if there is another potential predicate act, it has not specifically been pleaded.

In short, Defendants have alleged that there was a conspiracy involving the Department of Labor and a U.S. Embassy to defraud the United States Government and put Defendants out of business, but the alleged predicate acts are unspecific assertions that Plaintiffs used the phone or internet to commit fraud at some point. Count I should be dismissed.

> **B.** Defendants' counterclaim for breach of contract because the Contract doesn't say what the Defendants think it does.

Defendants' second count against Plaintiffs is for breach of contract. To establish a breach of contract, Defendants must establish that there was a contract between Defendants and Plaintiffs, that Plaintiffs breached the contract, and that Defendants suffered damages as a result of the breach. *Miller–Davis Co. v. Ahrens*

9

*Constr., Inc.*, 296 Mich. App. 56, 71 (Mich. Ct. App. 2012)(citing *Stevenson v. Brotherhoods Mut. Benefit,* 312 Mich. 81, 90–91 (1945); *Residential Ratepayer Consortium v. Pub. Serv. Comm.,* 198 Mich.App. 144, 149 (1993)). To establish damages, Defendants "must establish a causal link between the alleged improper conduct" of Plaintiffs and the damages that Defendants suffered. *Id* at 72.

It seems that Plaintiffs and Defendants agree that there was a contract between parties – at the very least, there was a contract between Plaintiffs and Defendant Purpose Point. However, Defendants' allegations regarding the breached contract provisions are problematic. Defendants' allegations can be broken down into two general categories. First, that Plaintiffs did not work the entire season (¶20(a)-(c), (e)), and secondly, that Plaintiffs broke some of the workplace rules (¶20(f)-(p)).

Regarding the allegations that Plaintiffs did not work the entire season, there is nothing in the written contract that says that they would. Defendants are trying to argue that the words "to be available" is a promise to complete the contract period. However, this should be seen legally as a prerequisite for employment, and not a promise to work the entire season irrespective of what happens next. Such an interpretation, if intended, could have been unambiguously included (e.g. "the worker agrees to work for the entire season if hired"). It was not. If an potential employer asks an employee if she's available on weekends, and

she says yes, does that mean the employer can sue the employee if it hires her and the employee quits or calls in sick and doesn't work a weekend? That would be absurd.

Regarding the allegations that Plaintiffs broke some of the work rules, even if true, the contract itself addresses that contingency in the supplemental documentation "Purpose Point Harvesting, LLC Work Rules," or "Work Rules" found at ECF No. 13-6, PageID.389, PageID.419, and PageID.451. Taking the first of these documents as an example, the text of the document reads: "Although not intended to be a complete list, these work rules are intended to provide guidance to workers of standards of conduct expected of them." PageID.389. It also applies a rubric of appropriate responses to workplace infractions by detailing a series of escalating discipline, such as an oral warning for a first offense, written warning with unpaid leave for a second offense, and immediate discharge for a third offense. PageID.390. There is nowhere in the contract that makes clear that Defendants have a claim against Plaintiffs for breaching the contract – the document itself says that the response to any worker breaking these rules is potential termination. Defendant did not give itself a right to seek a monetary penalty. But even assuming those were terms of the contract, and that a breach of contract action was an appropriate remedy, Defendants have not shown a causal

link between those breaches and the damages that they estimate to be greater than $75,000.

There was one claim that didn't neatly fit the two categories above. Defendants are arguing that "the payment of recruitment fees by workers was strictly prohibited and that if a worker was asked to pay such a fee or had actually paid such a fee, he or she agreed to inform Purpose Point immediately so that appropriate action could be taken." (Amended Counterclaim ¶20(d)). This claim makes no sense in this pleading. Either Defendant Emilto did demand a fee to hire Plaintiffs, or he didn't. If he did, then Defendant Purpose Point was informed about the fee immediately, as Defendant Emilto was there. If he didn't, then Plaintiffs could not have possibly breached this contract provision.

Finally, Defendants claims are contradictory on their face. Defendants claim on one hand that Plaintiffs were "subpar" workers who were drinking on the job, stealing from other workers, fighting on the employers' premises, and deliberately slowing down production – and then go on to say that their abandoning employment left "Purpose Point without the benefit of their availability for work and depriving labor to its clients."

Contradictions and legal arguments aside, Defendants' approach is a terrifying attack on worker agency. Defendants are arguing that an agricultural employer can sue their H-2a employees any time they quit, because the

12

"anticipated" hours and season are a contractually obliging promise to work for the whole season (while not holding the employer to the same promise of employing the workers for the whole season). H-2a workers are already tied to a single employer with little recourse for when things go wrong. If for no other reason than good public policy, Defendants' arguments should be rejected, and Defendants' second counterclaim should be dismissed.

      C.    Defendants' counterclaim for fraudulent misrepresentation does not meet the heightened pleading standard of Rule 9(b).

Defendants' third counterclaim is for fraudulent misrepresentation. Claims for fraud have a heightened pleading standard under Federal Rule of Civil Procedure 9(b). The 6th Circuit has interpreted this to require sufficient detail in pleading the allegation. Specifically, the party must plead with "sufficient detail — in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud — to allow the defendant to prepare a responsive pleading the requirements of Rule 9(b) will generally be met." *U.S. v. Ford Motor* 504 (6th Cir. 2008). This is not only to give the defendant "sufficient information "to respond", but also to avoid "unwarranted damage to its reputation caused by "spurious charges of immoral and fraudulent behavior."" *Id.*

In this case, Defendants' Counterclaim falls short of the standard set by *U.S. v. Ford Motor*. Defendants do not plead when or where these alleged statements

took place. Defendants also do not plead how some of these alleged statements – such as the promise to return to Guatemala – damaged them. *See* Amended Counterclaim ¶169. The only specific damages alleged are for the "loss of the labor to be provided" by Plaintiffs. *Id* ¶101. But Michigan is an at-will employment state, and absent a valid contract with specific language otherwise, either party is free to end the employment relationship at any time.

Which brings the focus back to the representations Plaintiffs allegedly made. Defendants claim that Plaintiffs, "made several representations to [Defendants] based on their acceptance of employment and their agreement to comply with the terms, conditions and work rules of the employment offered." *Id* ¶96. In short, the representations that Plaintiffs allegedly made were the acceptance of the terms of the work contracts. These contracts did not contain any promise to work for the entire season.

Defendants claim for misrepresentation fails procedurally by falling short of exacting standards of Rule 9(b). However, even if Defendants repleaded the claim with additional information, it would still fail as there were no representations made to work for an entire season. Finally, this is essentially re-alleging the breach of contract claim, and Defendants' third counterclaim should be dismissed.

D.  Defendants cannot establish a claim for silent fraud because they have not alleged (and cannot allege) that Plaintiffs had a legal or equitable duty to disclose.

Defendants' fourth counterclaim is for silent fraud. Defendants claim that Plaintiffs "had an obligation to disclose facts that were material to their qualifications, ability, and willingness to fully perform their obligations under the agreement." Amended Counterclaim at ¶180, PageID.614. However, this is an insufficient allegation as Defendants have only pleaded a general duty to disclose. They have not identified any legal or equitable duty of disclosure.

Silent fraud is "a commonly asserted, but frequently misunderstood, doctrine. […] Michigan courts have recognized that silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M D, Inc v. McConkey*, 231 Mich. App. 22, 28-29 (Mich. Ct. App. 1998). In fact, it's not enough just to show that there was a legal duty to disclose – for Defendants to prevail, they must show both that (1) Plaintiffs had a legal or equitable duty to disclose, and that (2) Plaintiffs made some type or representation that was false or misleading. *Id* at 31, citing *United States Fidelity Guaranty Co. v. Black*, 412 Mich. 99 at 125, 127 (1981).

In this case, Defendants have not alleged that Plaintiffs had a legal or equitable duty to disclose. The closest that they come is that there was a "duty of candor" because bringing H-2a workers is a "complicated, lengthy, exclusive, and

15

expensive" process. Amended Counterclaim ¶179. However, counsel for Plaintiffs have been unable to identify any legal authority or support for this claim.

Nor have they alleged the specific representations that were false or misleading, as required by *M D, Inc v. McConkey*. All that they have alleged is a failure to disclose, which is insufficient. Finally, Defendants arguably would also have to meet the strict requirements of Federal Rule of Civil Procedure 9(b), and claim with specificity the circumstances surrounding the alleged fraud. They have not.

As a result, Defendants allegations are legally deficient to support a claim for silent fraud. But from a public policy perspective, Plaintiffs argue that even if Defendants had sufficiently pleaded that Plaintiffs had made the requisite representations, their claim should still fail. This is an employment issue. Plaintiffs were employed by Defendants. The employers, in this case, are arguing that their employees represented to them that they would work for a certain period of time. Defendants are arguing that an employee can be sued for not fulfilling oral representations that are not contained in a written employment contract, even though Michigan is an at-will employment state and the contract between the parties did not require either party to continue the employment for the entire contract period. Such an argument opens the door for any employer to

16

sue an employee for leaving, arguing that the employee had a duty to disclose if they saw themselves leaving a job when they were hired.

> E.    Defendants' counterclaim for intentional infliction of emotional distress fails because the conduct was not extreme and outrageous, and the conduct is legally protected.

Defendants' fifth claim is for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, the Defendants must prove "(1) "extreme and outrageous" conduct, (2) intent or recklessness, (3) causation, and (4) "severe emotional distress."" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (Mich. 1985). In evaluating the level of conduct required, *Roberts* continues, "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id* at 603.

Defendants allege that Plaintiffs' "false statements to current and former workers, government agencies and their representatives, and in pursuing litigation" rises to the requisite level. However, Defendants do not identify what these statements are, nor do Defendants identify the person or agencies to whom they were made. Even assuming the plaintiffs had made some false representations (which Plaintiffs vigorously deny), there is no evidence on the

face of the pleadings that this rises to the level of conduct that is "atrocious and utterly intolerable in a civilized community."

Additionally, Plaintiffs' conduct is legally protected. Both the Sixth Circuit and the Michigan Court of Appeals are clear that a plaintiff is allowed to sue a defendant. "...[A] party has not acted outrageously "where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress."" *DeCoe v. General Motors Corp.*, 32 F.3d 212, 219 (6th Cir. 1994), *citing Polk v. Yellow Freight System, Inc., 801 F.2d at 196* (quoting Restatement (2d) of Torts § 46, comment g (1965)). The Michigan Court of Appeals has gone so far to state that "There is nothing illegal, unethical or fraudulent in filing a lawsuit, whether groundless or not." *Early Detection v. N.Y. Life*, 157 Mich. App. 618, 631 (Mich. Ct. App. 1986).

Similarly, Plaintiffs had a right to seek relief from government agencies under the Noerr-Pennington doctrine. *See Eastern R. Conf. v. Noerr Motors,* 365 U.S. 127 (1961) and *Mine Workers v. Pennington*, 381 U.S. 657 (1965). These cases, brought originally under the Sherman Act, were based on the First Amendment right to petition the government for the redress of grievances. *California Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The Supreme Court ruled that, "Certainly the right to petition extends to all departments of the Government. The

18

right of access to the courts is indeed but one aspect of the right of petition." *Id*, citing *Johnson* v. *Avery*, 393 U.S. 483, 485; *Ex parte Hull*, 312 U.S. 546, 549.

In this case, assuming Plaintiffs have made a complaint to a state or federal agency, they had a legal right to petition those (as of yet unidentified) government agencies for a redress of grievances. Assuming Plaintiffs have spoken to other workers about this case, Plaintiffs had a legal right to find witnesses to support their claims. And Plaintiffs absolutely had a legal right to file their lawsuit.

In short, Defendants allegations fail both because they have not shown extreme and outrageous conduct and because Plaintiffs have insisted on their legal rights in a permissible way. As a result, Defendants have not sufficiently pleaded intentional infliction of emotional distress, and this count should be dismissed.

F.     Defendants' counterclaim for civil conspiracy fails because a civil conspiracy claim requires a separate and actionable tort to survive.

Defendants' final claim is for civil conspiracy. To adequately plead a civil conspiracy claim, the Defendants must allege (1) a concerted action (2) made by two or more people (3) "to accomplish a criminal or unlawful purpose" (4) causing damages to Defendants. *Fenestra v. Gulf Amer. Land Corp.*, 377 Mich. 565, 593-94 (Mich. 1966).

However, civil conspiracy is not a claim that can stand on its own. "An allegation of civil conspiracy, standing alone, is not actionable" *Cousineau v. Ford*

*Motor Co.*, 140 Mich. App. 19, 37 (Mich. Ct. App. 1985). In *Early Detection v. N.Y. Life,* the plaintiffs brought several tort claims against the defendants, including defamation and intentional infliction of emotional distress. *Early Detection v. N.Y. Life*, 157 Mich. App. 618, 622-623 (Mich. Ct. App. 1986). The court granted the defendants' motion for summary judgment and the plaintiffs tried to amend their complaint. *Id* at 623. The case went before the court of appeals which explained that the complaint would still fail even if the plaintiffs were allowed to amend it. The last issue the court of appeals looked at was the issue of civil conspiracy, where it ruled: "However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort. Therefore, since plaintiffs have failed to state any actionable tort theories in their proposed amended complaint, the conspiracy theory must also fail." *Id* at 632 (in text citations omitted). In this case, Defendants have failed to properly plead a separate and actionable tort on which their civil conspiracy claim can succeed. Because Counts 1, 3, 4, and 5 of Defendants' Amended Counterclaim should be dismissed, their claim for civil conspiracy should be dismissed as well.

## II.    In the alternative, Defendants' Counterclaim should be struck in part because it includes immaterial and scandalous allegations

In the alternative, pursuant to Federal Rule of Civil Procedure 12(f)(2), Plaintiffs ask the Court to strike certain immaterial and scandalous allegations in

20

Defendants' Amended Counterclaim. Specifically, Plaintiffs move to strike ¶¶25-27. These claim that Hervil impregnated and abandoned a young woman, threatened her family, and was trying to avoid the financial obligations of having a child. This does not in any way relate to a RICO claim, a breach of contract, or any of the other claims brought by Defendants.

Ironically, Defendants complain of a press release that identifies a part of Defendant Emilto's criminal history. ¶109. Defendants claim that this was an "unnecessary highlighting of Emilto's criminal conviction which [was] irrelevant, immaterial, and wholly unrelated to the underlying claims." *Id.*  ¶110. Defendants want to include scandalous, irrelevant allegations in their amended counterclaim, and yet believe that an out of court statement is furthering a "campaign of lies to embarrass/humiliate" Defendants – even though the conviction is a matter of public record.

But putting the irony of Defendants' actions aside, the allegations against Hervil have no relevance to a breach of contract claim, or any of the other claims that Defendants have brought against Plaintiffs. Plaintiffs can see no good faith reason to have included them in the Amended Counterclaim, and they ask this Court to strike these pleadings because they are completely immaterial to this case.

**Conclusion**

Even evaluating the Defendants' Amended Counterclaim in the light most favorable to the non-moving party, this is a desperate attempt to re-spin a story, with counterclaims intended to intimidate and stifle workers who dared to expose their exploitation. Defendants have been caught red-handed putting their name on Plaintiffs' bank accounts, and writing checks "to cash" from Luis's account. With no other option, they have decided to try and frame this as a mischievous attempt by two brothers to acquire some sort of legal status.

But try as they may, Defendants have failed to sufficiently claim a breach of contract. Or fraudulent misrepresentation. Or silent fraud. Or intentional infliction of emotional distress. Or civil conspiracy. And the RICO claim is trying to argue that various U.S. agencies are intending to defraud the U.S. Government. Counsel for Plaintiffs are still trying to find a good faith reason for Defendants to include paragraphs alleging one of the plaintiffs threatened and abandoned a pregnant woman.

In short, even seen in the light most favorable to the non-moving party, Defendants Counterclaim does not state a claim upon which relief can be granted. Plaintiffs respectfully request that this Court dismiss Defendants' Amended Counterclaim under Rule 12(b)(6).

Respectfully submitted,

Date: April 13, 2023

/s/ Benjamin O'Hearn
Teresa Hendricks (P46500)
Benjamin O'Hearn (P79252)
Molly Spaak (P84730)
Migrant Legal Aid
Attorneys for Plaintiffs
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
Phone: (616) 454-5055
thendricks@migrantlegalaid.com
bohearn@migrantlegalaid.com
mspaak@migrantlegalaid.com