UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUIS GOMEZ-ECHEVERRIA, et al.,

      Plaintiffs,

                                     Case No. 1:22-cv-314

v.

                                     HON. JANE M. BECKERING

PURPOSE POINT HARVESTING, LLC, et al.,

      Defendants.

_____/

## OPINION AND ORDER

Pending before the Court in this putative class action are four motions:  Defendants' motion to dismiss under the doctrine of forum non conveniens (ECF No. 116); Defendants' motion to dismiss Plaintiffs' state-law claims for lack of supplemental jurisdiction (ECF No. 115); Plaintiffs' motion for class certification (ECF No. 92); and Defendants' motion for leave to file a supplemental brief in opposition to Plaintiffs' motion for class certification (ECF No. 150).  For the following reasons, the Court denies the motions.

### I.      BACKGROUND

#### A.    Factual Background

Plaintiffs Luis Gomez-Echeverria ("Luis"), Hervil Gomez-Echeverria ("Hervil"), Julio Caesar Gomez Moreno ("Julio"), Darwin Joel Fuentes Perez ("Darwin"), Artemio Coronado Esteban ("Artemio"), and Leonel Lopez Y Lopez ("Leonel") brought the instant action against Defendants Purpose Point Harvesting, LLC ("Purpose Point"), Emilto Moreno Gomez ("Emilto"), and Lucille Jean Moreno ("Lucille") for legal violations related to their employment with Purpose

Point (JSF[1] ¶¶ 1–3, 54).  Plaintiffs are citizens of Guatemala who were recruited to work at Purpose Point through the H-2A temporary agricultural worker visa program (*id.* ¶¶ 55, 67).  Plaintiffs allege that Purpose Point, a farm labor contracting company that provides seasonal farm workers to a number of farms throughout Michigan, required Plaintiffs to pay an illegal $2,500 recruitment fee to work with Defendants and that their passports and Social Security cards were forcibly taken from them upon arrival in the United States (*id.* ¶¶ 3, 5, 12).  Plaintiffs also allege that they were not paid for all the hours they worked during their employment with Purpose Point (*id.* ¶ 6, 14).

### B.    Procedural Posture

Plaintiffs initiated this action over two years ago on March 31, 2022 with the filing of a Complaint (ECF No. 1).  Defendants filed a motion to dismiss (ECF No. 8), which was renewed (ECF No. 15) after the Court gave Plaintiffs an opportunity to amend the Complaint.  The Court granted in part and denied in part Defendants' motion to dismiss (ECF No. 21).  Defendants then filed an Answer (ECF No. 24).  Defendants also filed a Counterclaim (ECF No. 25).  Plaintiffs filed a motion to dismiss the Counterclaim (ECF No. 32), which was renewed (ECF No. 64) after the Court gave Defendants an opportunity to amend.  The Court granted in part and denied in part Plaintiffs' motion to dismiss the Second Amended Counterclaim (ECF No. 96).  Currently pending is Plaintiffs' Second Amended Complaint (ECF No. 56) and Defendants' Second Amended Counterclaim (ECF No. 61).

On May 4, 2023, a Case Management Order (ECF No. 44) was issued in this case, and the parties were given until December 29, 2023 to complete discovery.  On October 23, 2023, the parties filed a joint motion to stay discovery until January 1, 2024 and to delay all deadlines in this

---

[1] Where noted, the Court has derived the factual background from the parties' Joint Statement of Facts (ECF No. 171), which was filed in support of their cross-motions for summary judgment.

case by 77 days (ECF No. 88).  The parties' motion indicated that they had engaged in "extensive written discovery, including Defendants' production of over 6,000 pages of time, pay, employee, and other business records," and that after this exchange of documents, counsel for the parties believed settlement was possible (*id.*).  The Court granted the motion (ECF No. 89) but warned that additional requests to extend the deadlines would not be favored (*id.* at PageID.1150). Pursuant to the parties' request, the Court added 77 days to the remaining deadlines, making a Rule 23 certification motion due by January 11, 2024; discovery complete on March 15, 2024; and dispositive and decertification motions due by May 3, 2024.  As set forth in the Minutes of a settlement conference with the Magistrate Judge, the parties knew on December 11, 2023 that they were not able to reach a settlement (ECF No. 91).

On January 11, 2024, Plaintiffs filed their motion for class certification (ECF No. 92) to which Defendants filed a response in opposition (ECF No. 97) and Plaintiffs filed a reply (ECF No. 103).  On February 5, 2024, Defendants filed a motion for leave to file a sur-reply in further opposition to Plaintiffs' motion for class certification (ECF No. 105), to which Plaintiffs filed a response in opposition (ECF No. 111).  The Court denied Defendants' motion for leave to file a sur-reply in a February 21, 2024 Memorandum Opinion and Order (ECF No. 112).  In the same Memorandum Opinion and Order, the Court also denied Defendants' motion to extend discovery based on the challenges in obtaining depositions of Guatemala citizens (*id.*).

Also on February 21, 2024, Defendants filed their motion to dismiss Plaintiffs' state-law claims for lack of supplemental jurisdiction (ECF No. 115) to which Plaintiffs filed a response in opposition (ECF No. 141), and Defendants filed a reply to the response (ECF No. 148).  The next day, on February 22, 2024, Defendants filed their motion to dismiss under the doctrine of forum

non conveniens (ECF No. 116), to which Plaintiffs filed a response in opposition (ECF No. 142), and Defendants filed a reply to the response (ECF No. 149).

On March 25, 2024, Defendants filed their motion for leave to file a supplemental brief in opposition to Plaintiffs' motion for class certification (ECF No. 150), to which Plaintiffs filed a response in opposition (ECF No. 160).  Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II.  ANALYSIS

The Court will first address Defendants' motion to dismiss under the doctrine of forum non conveniens (ECF No. 116).  Next, the Court will address Defendants' motion to dismiss Plaintiffs' state-law claims for lack of supplemental jurisdiction (ECF No. 115).   Last, the Court will address Plaintiffs' motion for class certification (ECF No. 92) and Defendants' motion for leave to file a supplemental brief in opposition to Plaintiffs' motion for class certification (ECF No. 150).

### A.  Defendants' Motion to Dismiss for Forum Non Conveniens (ECF No. 116)

In their motion to dismiss on the grounds of forum non conveniens, Defendants argue that "[w]hile Luis, Hervil, and Julio (collectively, the 'US Plaintiffs') are residing outside the State of Michigan within the United States, Darwin, Artemio, and Leonel (the 'Guatemala Plaintiffs')—who were added to the action via the SAC[2]—are residing in Guatemala and have no plans to be physically present in the United States.  Given that half of the Plaintiffs are residing in Guatemala, and as the proposed class members are all Guatemalan citizens residing in Guatemala," the Court should dismiss on the grounds of forum non conveniens, or in the alternative, dismiss the

---

[2] The "SAC" refers to Plaintiffs' Second Amended Complaint (ECF No. 56).

Guatemala Plaintiffs' claims based on forum non conveniens (ECF No. 116-1 at PageID.1695–96).

Plaintiffs argue in response that Defendants' motion would be a "colossal waste of resources if granted" and "continues their trend of making unnecessary work with little (if any) good faith basis in law" (ECF No. 142 at PageID.2548–49).  Plaintiffs note that it is only after two years of litigation "and on the very edge of discovery closing" that Defendants are making the argument for dismissal under the doctrine of forum non conveniens (*id.* at PageID.2549).  Plaintiffs argue that (1) Defendants' motion is untimely, and the interests of judicial economy support a rejection of their arguments based on forum non conveniens; and (2) Defendants have not evidentiarily established that an alternative forum is available (*id.* at PageID.2550, 2552).

Defendants' argument lacks merit.

Under the common law doctrine of forum non conveniens, "a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Associação Brasileria de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018) (citation omitted).  Given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), forum non conveniens should be invoked only in "rather rare cases," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). *Stryker, supra.*  A district court's dismissal for forum non conveniens is reviewed for abuse of discretion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016).

In the Sixth Circuit, courts apply the following three-step test to determine whether dismissal is appropriate: "After [1] the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of [2] establishing an adequate alternative forum and [3] showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Stryker*, 891 F.3d at 618–19. For the reasons explained below, the Court concludes that the three considerations warrant denying Defendants' motion to dismiss.

1. Degree of Deference Owed to Plaintiffs' Forum Choice

In *Stryker*, 891 F.3d at 619, the Sixth Circuit set forth in detail the manner in which courts should analyze the first step in the forum non conveniens analysis. Specifically, "[w]hen a defendant moves to dismiss on the basis of forum non conveniens, the court must first determine the amount of deference owed to the plaintiff's forum choice based on a 'sliding convenience scale.'" *Id.* (citation omitted). "As the amount of deference owed increases, the strength of the showing necessary to overcome that deference necessarily increases as well." *Id.* A forum in the United States is generally presumed to be convenient if a plaintiff is "closely connected to the United States," and that presumption applies with diminishing force as the plaintiff's connections to the United States weaken or as evidence of forum shopping mounts. *Id.* When the plaintiff is a foreign entity, "the presumption of convenience applies with less force." *Id. See, e.g.*, *Solari v. Goodyear Tire & Rubber Co.*, 654 F. App'x 763, 766 (6th Cir. 2016).

Consistent with Sixth Circuit law, the Court concludes that on the "sliding convenience scale," Plaintiffs' choice of forum is entitled to at least some deference even though Plaintiffs are citizens of Guatemala rather than the United States. First, there is at least some connection between Plaintiffs, Defendants, and the United States. Defendants admit that Plaintiffs Luis, Hervil, and

Julio currently reside in the United States (ECF No. 116-1 at PageID.1695), and Purpose Point employed Plaintiffs in Michigan. Second, Plaintiffs chose a convenient forum. Purpose Point is a Michigan company (Second Amended Complaint ("SAC") [ECF No. 56] ¶ 5) and both Plaintiffs and Defendants are represented by Michigan counsel. Much of the evidence related to Plaintiffs' allegations regarding their temporary employment with Defendants is likely located in Michigan. Thus, the Court will afford some deference to Plaintiffs' choice of forum.

    2.   Alternative Forum

    "The second step in the forum non conveniens analysis is to determine whether 'the claim can be heard in an available and adequate alternative forum.'" *Stryker*, 891 F.3d at 619 (quoting *DRFP, L.L.C. v. Republica Bolivariana de Venez.*, 622 F.3d 513, 518 (6th Cir. 2010)). Identifying an alternate forum is a prerequisite for dismissal, not a factor to be balanced. *Stryker*, 891 F.3d at 619–20. If there is no suitable alternative forum where the case can proceed, then the entire inquiry ends. *Id.* at 620 (citation omitted).

    An alternative forum is typically "available" if "the defendant is amenable to process there" and is generally "adequate" if "it can remedy the alleged harm." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090–91 (6th Cir. 2019) (citation omitted). "The defendant bears the burden of identifying an alternative forum that meets these criteria." *Stryker*, 891 F.3d at 620. The foreign forum is not adequate if the remedy it offers "is so clearly inadequate or unsatisfactory that it is no remedy at all," as, for example, if the other forum "does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 254, n.22. However, an alternative forum is not inadequate merely because its substantive law is different or less favorable to the plaintiff than that of the United States forum. *Id.* at 247.

Defendants have not met their burden of demonstrating that Guatemala is an alternative forum that is available and adequate.  Defendants contend that Guatemala is an available and adequate forum because, in part, "Emilto is a Guatemalan citizen and therefore amenable to process in Guatemala" and "Lucille and Purpose Point will also consent to the process in Guatemala" (ECF No. 116-1 at PageID.1711).  However, Defendants have "provided no evidence that [their] consent to jurisdiction in [Guatemala] would be legally meaningful." *Stryker*, 891 F.3d at 621.  The Sixth Circuit explained in *Stryker* that a defendant's assertion that it is amenable to process in a foreign forum—without guidance from legal experts or citations to the forum's law or to relevant treaties—may fail to demonstrate that the foreign forum is truly available.  *Id.* at 621–22.  Without any supporting evidence or analysis, the Court lacks a sufficient basis to conclude that Defendants' consent to jurisdiction in a Guatemalan court alone would be sufficient to permit that court to adjudicate this action.

Defendants also indicate that Guatemalan courts will "allow Plaintiffs to bring their breach of contract, human trafficking, and wage violation claims against Defendants" (ECF No. 116-1 at PageID.1711).  However, as Plaintiffs note, Defendants have not established any evidence or provided any reasoning from which the Court could conclude that Guatemalan courts would indeed allow Plaintiffs' claims (ECF No. 142 at PageID.2552).  Defendants reference in their reply brief the "opinion letter by a Guatemalan attorney, Mr. Mario René Rosales Levia, stating that the letters rogatory process would be required to legally serve any Guatemalan citizen currently residing in Guatemala, and that remote depositions are only permitted for family law cases and criminal cases" (ECF No. 149 at PageID.2786).  Mr. Levia's letter, though, does not reference Guatemalan courts' jurisdiction over Plaintiffs' claims, nor does the letter in any way serve as evidence that Guatemalan courts would have jurisdiction over this matter.  Accordingly, Defendants have not

met their burden to establish that Guatemala is an available and adequate alternative forum for this case, and Defendants' motion to dismiss fails at the second step of the forum non conveniens inquiry.

    3.  <u>Private- and Public-Interest Factors</u>

Even assuming Defendants had met their burden of demonstrating that Guatemala is an alternative forum that is available and adequate, private- and public-interest factors weigh against dismissing this action for forum non conveniens.  The final step of the forum non conveniens analysis is the balance of the private- and public-interest factors set forth by the Supreme Court in *Gulf Oil*, 330 U.S. 509.  *Hefferan*, 828 F.3d at 498.  "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant."  *Id.*  Defendants have not carried that burden.

***Private Interest.***  Private-interest factors weigh against dismissing this action under the doctrine of forum non conveniens.  Private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Gulf Oil*, 330 U.S. at 508.  To examine the private-interest factors, "the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

Defendants have not demonstrated that access to sources of proof renders litigating in Michigan more burdensome than litigating in Guatemala.  It is likely that key evidence regarding

Plaintiffs' employment with Defendants in Michigan is located in Michigan, rather than Guatemala, and Defendants admit that "documentary evidence regarding hours worked . . . were kept in Michigan" (ECF No. 116-1 at PageID.1712).  Defendants' main argument regarding the private-interest factors is that there is no guarantee that many of the proposed class members will return to the United States, and the cost of deposing those class members if they can be deposed would be significant (*id.*).  Defendants further argue that "there are Guatemalan witnesses who will no doubt be unwilling to appear for depositions or testify in this proceeding, such as Luis Senior," who has a criminal complaint filed by many of the proposed class members pending against him (*id.* at PageID.1713).  However, these conclusory assertions about the availability of compulsory process ring hollow given that Defendants have been on notice for over a year as to the Guatemalan citizenship of Plaintiffs and in light of the fact that the premises of this action is located in Michigan.  In sum, Defendants have not established that the cost of obtaining testimony makes litigating in Michigan unduly burdensome.

*Public Interest.*  "Public-interest factors include administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Hefferan*, 828 F.3d at 500 (internal quotation marks omitted) (quoting *Piper Aircraft*, 454 U.S. at 241, n.6).

Defendants have not established that the public-interest factors weigh in favor of dismissal. Defendants argue that there is local interest in deciding a local controversy in Guatemala, as Plaintiffs are all Guatemalan citizens who are domiciled in Guatemala, as well as are the proposed class members (ECF No. 116-1 at PageID.1714).  In contrast, Defendants argue, Michigan citizens

would not have a significant interest in or connection with this controversy (*id.*).  Defendants suggest that Guatemala law might apply to a verbal contract to pay an illegal recruitment fee, that the letters rogatory process will increase administrative difficulties of the Court, and proceedings will be timelier in Guatemala (*id.* at PageID.1714–15).  Again, Defendants arguments are unpersuasive, as, far from being a "local controversy" to Guatemala, the case concerns seasonal employment in Michigan with a Michigan company.  There is no reason why a Michigan jury would not have interest in the labor issues arising in their home state.  Further, there is no indication that any laws other than those of Michigan and the United States would apply in this case; Defendants' argument that Guatemala law may apply to a purported verbal contract does not alter the fact that until Defendants filed the instant motion and for over two years of litigation in this matter, the parties have not once invoked Guatemala law.

Finally, Defendants' assertions that litigation would be timelier in Guatemala are wholly conclusory, especially based on the two-year duration of the pendency of this matter in this Court. It is more likely that dismissal of this case for forum non conveniens would cause greater delay in resolving the dispute between the parties by disrupting the litigation that has taken place—which has been prolonged by multiple requests for extensions of time by the parties—in this Court to date.

In sum, the balance of private and public interests does not weigh in favor of dismissal, and Plaintiffs' choice of this forum is entitled to at least some deference.  Under these circumstances, even assuming Defendants had established that a Guatemalan court would be an adequate and available forum, the Court would exercise its discretion to retain this action and decline to dismiss based upon the doctrine of forum non conveniens.  *See Jones*, 920 F.3d at 1090 ("*Forum non conveniens* decisions 'are committed to the sound discretion of the trial court.'"

(quoting *Piper Aircraft*, 454 U.S. at 257)).  The inconveniences Defendants may suffer from litigating in the United States when Plaintiffs are citizens of Guatemala do not merit dismissal. Accordingly, Defendants' motion to dismiss for forum non conveniens is properly denied.

## B.  Defendants' Motion to Dismiss State-Law Claims (ECF No. 115)

In support of their motion to dismiss Plaintiffs' state-law claims, Defendants argue that the state-law claims "do not support supplemental jurisdiction in federal court because the state law claims substantially predominate over the federal claims, the only remaining federal claim applicable to all Plaintiffs is the TVPRA [Trafficking Victims Protection Reauthorization Act] claim, the federal and state law claims would require a jury to apply different standards to each claim, and because Plaintiffs' human trafficking claims do not arise out of a common nucleus of operative fact as their other claims" (ECF No. 115-1 at PageID.1670–71).

Plaintiffs argue in response that the interests of judicial economy, convenience, fairness, and comity weigh in favor of maintaining supplemental jurisdiction (ECF No. 141 at PageID.2543).  Plaintiffs further argue that the case is not at the early stage, and the argument for dismissal of state-law claims is one that Defendants could have made at the outset of the litigation but did not (*id.* at PageID.2546).

Defendants' argument lacks merit.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), the United States Supreme Court "established the doctrine of supplemental jurisdiction as a matter of federal common law," holding "that a federal court can decide a state law claim that forms part of the same 'case or controversy' as a claim over which the court has jurisdiction."  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  The doctrine of supplemental jurisdiction is now codified in 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental

12

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. §1367(a).

Section 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1–4).

Supplemental jurisdiction "'is a doctrine of discretion, not of plaintiff's right.'"  *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (quoting *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986)).   A district court's discretion in deciding whether to exercise supplemental jurisdiction, however, "is bounded by constitutional and prudential limits on the use of federal judicial power."  *Musson*, 89 F.3d at 1254.   "[A] federal court should consider . . . the values of judicial economy, convenience, fairness, and comity" when deciding whether to exercise supplemental jurisdiction.   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, the court may evaluate "the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial[.]"  *Gibbs*, 383 U.S. at 726.

Plaintiffs assert the following five claims against Defendants in their Second Amended Complaint:

     I.          TVPRA, 18 U.S.C. § 1595(a);

     II.        Michigan Human Trafficking Victims Compensation Act (MIHTVC), MICH. COMP. LAWS. § 752.981 *et seq*.;

     III.      FLSA, 29 U.S.C. § 216(b);

     IV.     Michigan Workforce Opportunity Wage Act (WOWA), MICH. COMP. LAWS. § 408.411 *et seq*.; and

     V.      Breach of Contract

(ECF No. 56 at PageID.821–829).

The Court observes that Defendants' alleged conduct that forms the basis of the state-law claims forms part of the same case or controversy as the federal claims against them, as the claims arise from the same common nucleus of operative fact.  Specifically, all claims emanate from Defendants' employment of Plaintiffs to perform agricultural labor at farms in Michigan through the H-2A (temporary agricultural worker) visa program.  Although Defendants argue that the claims do not arise out of a common nucleus of operative fact (ECF No. 115-1 at PageID.1671), they do so in a conclusory manner without any explanation or suggestion as to what factually separates the state-law claims from Plaintiffs' claims under federal law.  Despite distinctions between the different legal claims, all claims will likely involve common issues of fact for the jury to resolve.  Thus, the factor of judicial economy favors the resolution of Plaintiffs' state-law claims by this Court as long as it is presiding over the federal claims.

At this stage in the litigation, two years after the filing of the case, after multiple dispositive motions and numerous non-dispositive motions, Defendants have not made it clear to the Court that any of the reasons set forth in 28 U.S.C. § 1367(c) for declining the exercise of supplemental jurisdiction, including the novel or complex nature of the state-law claims, the predominance of state-law claims, or other "compelling reasons," exist.  In particular, the Court has no factual basis

from which to conclude that Plaintiffs' breach-of-contract claim in Count V predominates over the federal claims solely because Plaintiffs have moved to certify a class based on that claim.  Thus, the Court determines that the relationship between Plaintiffs' state-law claims and federal claims is sufficient for the exercise of supplemental jurisdiction at this juncture.  Accordingly, Defendants' motion to dismiss the state-law claims is properly denied.

### C.  Plaintiffs' Motion for Class Certification (ECF No. 92)

Plaintiffs' individual claims allege violations of federal and state human trafficking laws, state minimum wage laws and the FLSA, and breach of contract against Defendants.  In their Second Amended Complaint, Plaintiffs indicate that they propose a class of "all H-2A workers who worked for Defendant Purpose Point in 2017, 2018, and 2019" and a "minimum wage subclass" for "all H-2A workers who worked for Defendant Purpose Point in 2019" (SAC ¶¶ 217–19).  Although the Second Amended Complaint suggests that the proposed class claims include the minimum wage and human trafficking violations, Plaintiffs' motion for class certification indicates that they seek Rule 23 certification only as to the breach-of-contract claim in Count V of the Second Amended Complaint (ECF No. 92 at PageID.1164).  Accordingly, the Court will address the motion for class certification as to the breach-of-contract claim only.

1.  <u>Motion Standard</u>

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

*See also In re. Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("The party seeking the class certification bears the burden of proof.").

Rule 23 mandates a two-step process to determine whether an action may be maintained as a class action. *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019). First, the Court must determine whether the proposed class meets the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a). Second, if the four prerequisites are satisfied, then the Court must determine whether the proposed class falls within one of the categories of Rule 23(b). FED. R. CIV. P. 23(b). A district court has "broad discretion in deciding whether to certify a class," *Am. Med. Sys.*, 75 F.3d at 1079, but the Court "may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

The Supreme Court has repeatedly emphasized that it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast*, 569 U.S. at 33 (quoting *Falcon*, 457 U.S. at 160–61). Such an analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim." *Comcast*, 569 U.S. at 33–34 (quoting *Dukes*, 564 U.S. at 351). That is so because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33 (quoting *Dukes*, 564 U.S. at 351) (quoting *Falcon, supra*, at 160). *See also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) ("Ordinarily, this means the class determination

should be predicated on evidence the parties present concerning the maintainability of the class action.").  The same analytical principles govern Rule 23(b).  *Comcast*, 569 U.S. at 34.

However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  *See also In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) ("[P]ermissible inquiry into the merits of the plaintiffs' claims at the class certification stage is limited…").

2.  Discussion

a.  *Proposed Class Definition*

Before a court may certify a class pursuant to Rule 23, the threshold question is whether the proposed class definition is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (citing 5 James W. Moore et al., MOORE'S FED. PRACTICE § 23.21[1] (3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'")).

Plaintiffs seek certification of a class of "All H-2A workers who worked for Defendant Purpose Point Harvesting LLC in 2018 and 2019" (ECF No. 92 at PageID.1164).  This request is different from Plaintiffs' indication in their Second Amended Complaint that they propose a class of "all H-2A workers who worked for Defendant Purpose Point in 2017, 2018, and 2019" and a "minimum wage subclass" for "all H-2A workers who worked for Defendant Purpose Point in

2019" (SAC ¶¶ 217–19).  The Court considers Plaintiffs' request for certification of the class as defined in their motion for class certification rather than as defined in their pleadings.

Defendants argue that Plaintiffs' proposed class is overbroad because numerous potential members of the class disagree with Plaintiffs' allegations (ECF No. 97 at PageID.1243).  For the reasons stated more fully *infra*, the Court agrees with Defendants that Plaintiffs' request for class certification suffers from many shortcomings; however, for purposes of this threshold question, which is a narrow administrative question, the Court finds that the proposed class definition is neither amorphous nor imprecise.  The Court therefore turns to the four requirements of Rule 23(a).

### b.  Rule 23(a) Requirements

***Numerosity***.  The first prerequisite of Rule 23(a) is numerosity.  Numerosity exists where "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  A plaintiff need not prove the number of class members to a certainty.  *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003).  Courts have generally presumed that the numerosity requirement is met when the class has more than forty members.  *Id.*

Plaintiffs assert that they have identified 57 potential class members, and "[p]revious cases have already held that smaller H-2A classes meet the [numerosity] requirement" (ECF No. 93 at PageID.1172).  Plaintiffs further argue that class members are migrant seasonal workers, most of whom are either citizens of Guatemala or Mexico, and it is "impracticable to try to join 66 foreign farmworkers to a case here in Western Michigan" (*id.* at PageID.1173).

In response, Defendants do not dispute that Plaintiffs' class definition—as it stands— consists of at least 57 putative class members; however, Defendants argue that the proposed class members who support Plaintiffs' claims are limited to Plaintiffs themselves, and no other former

workers of Purpose Point have supported Plaintiffs' claims against Defendants (ECF No. 97 at PageID.1248).

The numerosity prerequisite is intertwined with the class definition.  As such, the Court determines that Plaintiffs have demonstrated the existence of a class so numerous that joinder of all class members would not be practicable.

***Commonality.***  The second prerequisite of Rule 23(a) is that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  For purposes of the commonality requirement, a court must look for "a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.  Although Rule 23(a)(2) speaks of "questions" in the plural, the Sixth Circuit has instructed that there need be only one question common to the class.  *Id.*; *Am. Med. Sys.*, 75 F.3d at 1080.  "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs argue that commonality is met here where common questions of fact include "[w]hether Defendant Purpose Point failed to pay Plaintiffs and other class members for all hours worked" and "[w]hether Defendant Emilto charged an illegal recruiting fee to Plaintiffs and class members in violation of the contract" (ECF No. 93 at PageID.1173).  Plaintiffs also argue that there is "no legitimate dispute that each Plaintiff and Class Member had the same contract with Defendant Purpose Point" (*id.* at PageID.1174).

Defendants argue that commonality is not present here because "the claims of Plaintiffs differ significantly from the experience of the proposed class members" (ECF No. 97 at PageID.1249).  Defendants indicate that "approximately 64 potential class members have

submitted sworn declarations stating that [Plaintiffs'] allegations are patently false," and according to those potential class members, "they were treated well by Defendants, were not underpaid and overworked, and were not forced by Defendants to pay any fee in exchange for working for Defendants" (*id.*).  Defendants further argue that Plaintiffs provide no evidence that the class members suffered the same harm as Plaintiffs, and instead, "Plaintiffs make a conclusory statement that underpayment of workers and payment of a $2,500 fee was a common practice at Purpose Point" (*id.*).

The Court determines that the pivot point to analyzing Plaintiffs' motion for class certification is commonality, or, more specifically, the lack thereof.  Contrary to Plaintiffs' emphasis on the same contract between Defendants and Plaintiffs and putative class members, the Supreme Court in *Dukes*, 564 U.S. at 350, instructed that the determinative question is not whether each class member shares the same legal claim but whether, through a classwide proceeding, the claim can be resolved "in one stroke."  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not that they have merely "all suffered a violation of the same provision of law."  *Id.* at 349–50 (quoting *Falcon, supra*, at 157).

Having reviewed the evidence the parties have presented concerning the maintainability of a class action, the Court determines that Plaintiffs have not demonstrated that the same purported breaches of contract touched every member of the proposed class.  For example, although Plaintiffs assert that common questions exist as to whether Defendants failed to pay both Plaintiffs and putative class members for hours worked and whether Defendant Emilto charged an illegal recruiting fee to Plaintiffs and putative class members, Plaintiffs do not provide any evidence or argument as to why the issue of breach of contract as to each Plaintiff and putative class member would not be subject to individualized proof.  Commonality is lacking because proof of the failure

to abide by the contract as to one worker would not necessarily be proof of such a failure as to another worker.

Plaintiffs provide the declarations of counsel that reflect the identification and review of payroll records and pay stubs for H-2A workers employed by Purpose Point during 2018 and 2019 (ECF Nos. 93-1 & 93-3) and declarations of Plaintiffs that indicate their beliefs that no one with whom they worked at Purpose Point was paid for all hours worked (ECF No. 93-2).  However, those declarations, along with conclusory assertions of common claims in Plaintiffs' brief, do not establish that the breach of contract claim, which is but one of the claims that Plaintiffs assert in their litigation against Defendants, could be resolved in one stroke for Plaintiffs and putative class members.

In sum, Plaintiffs have provided no basis from which the Court can determine that a classwide proceeding in this case—which, at its core concerns Defendants' treatment of Plaintiffs—contains questions of law or fact common to the class has the capacity to generate common answers apt to drive the resolution of the litigation.   Rather, the potential for dissimilarities within the proposed class and between the proposed class and Plaintiffs with respect to a breach of contract claim against Defendants has the potential to "impede the generation of common answers."  *See Dukes*, 564 U.S. at 350.  Plaintiffs have not demonstrated the presence of commonality.

***Typicality.***  The third prerequisite of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  This test limits the class claims to those "fairly encompassed by the named plaintiffs' claims."  *Sprague*, 133 F.3d at 399 (quoting *Am. Med. Sys.*, 75 F.3d at 1082).  "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of

other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (internal quotation marks omitted).  Certification is improper if "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Sprague*, 133 F.3d at 399.

Plaintiffs assert that their claims are typical of the claims of putative class members inasmuch as they all "were charged an illegal recruitment fee each year they worked for Defendant Purpose Point," that "fee is the same across the class," and they all allege that "they were not paid for all hours worked" (ECF No. 93 at PageID.1175).

Like their argument against commonality, Defendants argue that Plaintiffs also cannot meet the typicality requirement because "no other former Purpose Point worker appears to have experienced the same treatment as Plaintiffs" (ECF No. 97 at PageID.1249–50).

The two concepts of commonality and typicality "tend to merge" in practice because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Whirlpool*, 722 F.3d at 853 (quoting *Dukes*, 564 U.S. at 349, n.5).  Here, where proof of Plaintiffs' claims would not necessarily prove anybody else's claim, the Court concludes that Plaintiffs have also not satisfied the typicality requirement.

***Adequacy of the Named Plaintiffs.***  The fourth and final prerequisite of Rule 23(a) is the requirement that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  The Rule 23(a)(4) requirement is evaluated using two criteria: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through

qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Plaintiffs opine that they possess the same common interest in obtaining redress as putative class members, as Plaintiffs worked for Defendants "during the class periods" and have "suffered the same injuries" as the proposed class members (ECF No. 93 at PageID.1175). Regarding the second criterion, Plaintiffs attach the declarations of counsel Benjamin O'Hearn (ECF No. 93-1) and Teresa Hendricks (ECF No. 93-3).

Defendants argue that Plaintiffs cannot adequately represent the proposed class because: (1) "there is no shared harm"; (2) Plaintiffs' "interests are in conflict with the interests of the proposed class"; and (3) Plaintiffs' counsel cannot adequately represent both the proposed class and Plaintiffs (ECF No. 97 at PageID.1251–1260).

"The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Am. Med. Sys.*, 75 F.3d at 1083. *See also Falcon*, 457 U.S. at 157, n.13 (noting that the adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a)). Given this Court's conclusion that neither commonality nor typicality are present in this case, the Court similarly concludes that Plaintiffs cannot adequately represent the interests of the proposed class.

In sum, Plaintiffs have not affirmatively demonstrated compliance with Rule 23(a). *See Falcon*, 457 U.S. at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable.").

### c.  *Rule 23(b) Requirements*

Assuming, for the sake of argument, that Plaintiffs satisfied the four prerequisites of Rule 23(a), the remaining inquiry is whether the proposed class falls within one of the categories of Rule 23(b).  Plaintiffs contend that certification is appropriate under the third category, FED. R. CIV. P. 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The matters pertinent to these findings include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3).

The Supreme Court has observed that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 569 U.S. at 34.  "Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for."  *Id.* (internal citations and quotation marks omitted).  According to the Supreme Court, "that explains Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out), and the court's duty to take a 'close look' at whether common questions predominate over individual ones."  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

Plaintiffs argue that "[t]his case presents no individualized issues more prevalent or important than the common, aggregation-enabling issues created by Defendant's uniform practice of charging a recruitment fee and underpaying all class members.  The fact that some class

24

members worked slightly longer or shorter for the 2019 season does not create individual issues more prevalent than the common issues affecting the class as a whole" (ECF No. 93 at PageID.1176–77).   Furthermore, Plaintiffs argue that a class action is the superior means of resolving the issues as "[i]ndividual actions, individually controlled by individual Plaintiffs, would burden both the Court and the class" and "[t]he limited formal education, economic resources and English proficiency of most Plaintiffs, and their geographic dispersion make individual actions impractical" (*id.* at PageID.1177).

Defendants argue that even assuming Plaintiffs can satisfy Rule 23(a), which Defendants assert they cannot, Plaintiffs still fall short of the predominance standard in Rule 23(b)(3) because individual issues relevant to Plaintiffs' allegations predominate over classwide issues (ECF No. 97 at PageID.1261).   Defendants argue that contrary to Plaintiffs' assertions, "there are no legal or factual questions that would be applicable to this class as a whole" (*id.*).   Defendants assert that a "motion for class certification based on three (3) declarations from Plaintiffs with a personal interest in remaining in the country via a T or U visa is not sufficient" (*id.*).

Having taken a "close look" at whether common questions predominate over individual ones, the Court determines that the proposed class does not satisfy the predominance and superiority requirements of Rule 23(b)(3).   Class certification under Rule 23(b)(3) is not the method best suited to adjudicate this controversy "fairly and efficiently."  *See Amgen*, 568 U.S. at 460.   The likely difficulties of managing a class action with numerous proposed class members who are citizens of and reside in Guatemala or Mexico undergird this conclusion.  Therefore, the

Court, in its discretion, will deny Plaintiffs' motion for class certification, and Plaintiffs' claims will proceed solely on an individual basis, in accordance with FED. R. CIV. P. 23(d)(1)(D).[3]

### D.  Defendants' Motion for Leave to File a Supplemental Brief (ECF No. 150)

Defendants move for leave to file a supplemental brief in opposition to Plaintiffs' motion for class certification, proposing to argue that:  (1) "Plaintiffs agreed to dismiss Julio from the case as they had seemingly lost communications with him and he had therefore abandoned his claims" and (2) during the depositions of Luis and Hervil taken on March 7 and 8, 2024, "Defendants learned that neither Luis nor Hervil understood that they were bringing claims of breach of contract on behalf of a class, the responsibilities involved in acting as a class representative, nor whether many of the proposed class members they had worked with had similar claims" and thus Luis and Hervil cannot be adequate class representatives (ECF No. 151 at PageID.2793).

Plaintiffs oppose supplemental briefing, arguing that Defendants cannot show that the new evidence was not available with due diligence (ECF No. 160 at PageID.3170).

This Court may permit further briefing in support of a motion, *see* W.D. Mich. LCivR 7.2(c).   However, Defendants' proposed supplemental brief is unnecessary to the Court's resolution of Plaintiffs' motion for class certification.  Further, to the extent that Defendants motion can be construed as a motion for leave to file a sur-reply, the Court has already denied Defendants' previous motion for leave to file a sur-reply in opposition to Plaintiffs' motion for class certification (Memorandum Opinion and Order, ECF No. 112), and the reasoning for so

---

[3] In addition to the other filings addressed in this Opinion and Order, pending before the Court is Defendants' motion to strike Plaintiffs' class allegations (ECF No. 124).  Given the Court's resolution as to Plaintiffs' motion for class certification, the Court will dismiss Defendants' motion to strike as moot.

denying applies to the instant motion.  Thus, Defendants' motion for leave to file a supplemental brief is denied.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss under the doctrine of forum non conveniens (ECF No. 116) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiffs' state-law claims for lack of supplemental jurisdiction (ECF No. 115) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for class certification (ECF No. 92) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' motion for leave to file a supplemental brief in opposition to Plaintiffs' motion for class certification (ECF No. 150) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' motion to strike class allegations (ECF No. 124) is DISMISSED as moot.

Dated:  May 28, 2024                                  /s/ Jane M. Beckering
                                                     JANE M. BECKERING
                                                     United States District Judge

27