UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| Luis Gomez-Echeverria et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> Purpose Point Harvesting LLC et al., <br><br> *Defendants*. | Case No. 1:22-cv-00314 <br><br> Hon. Jane M. Beckering |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs intend to prove at trial that Defendants Purpose Point Harvesting ("Purpose Point" or "PPH"), Emilto Moreno, and Lucille Moreno engaged in forced labor and human trafficking of Plaintiffs while employed at PPH. The evidence will show that Defendants trafficked Plaintiffs for labor including by charging them recruitment fees to come from Guatemala to the States, withholding their passports, and controlling their bank accounts. The evidence will further show that Defendants maintained their trafficking scheme by asserting various forms of control and manipulation over Plaintiffs. Finally, the evidence will show that PPH failed to pay plaintiffs for all of the hours that they worked, violating their contract with Plaintiffs and their obligations under state and federal law.

The following claims remain in this case to be tried before a jury:

*Plaintiffs' Claims (Against All Defendants)*

- Violation of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a) (all Plaintiffs);

- Violation of the Michigan Human Trafficking Victims Compensation Act MHTVCA), Mich. Comp. Laws § 752.981 *et seq*. (all Plaintiffs);

1

- Violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* (Plaintiff Luis);

- Violation of the Michigan Workforce Opportunity Wage Act (WOWA), Mich. Comp. Laws § 408.411 *et seq.* (Plaintiffs Luis and Darwin); and

- Breach of Contract (all Plaintiffs).

*Defendant's Counterclaim:*

- Breach of Contract (alleged by Purpose Point against Luis and Hervil)

## BACKGROUND

The Court is familiar with the background of this case. *See* ECF No. 193 at 2-8. Plaintiffs bring claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Michigan Human Trafficking Victims Compensation Act ("MHTVCA"), Fair Labor Standards Act ("FLSA"), and Michigan Workforce Opportunity Wage Act ("WOWA"), and claims for breach of contract.

Defendant Purpose Point Harvesting LLC is a Michigan LLC headquartered in Hart, MI. When Michigan farms need help finding seasonal workers, they turn to farm labor contractors such as Purpose Point to find employees. Since 2017, Purpose Point provides seasonal agricultural workers to farms in West Michigan. From 2017-2019, Defendant Emilto Moreno Gomez was the president of Purpose Point. During the same period, Defendant Lucille Jean Moreno was the secretary of Purpose Point. Emilto has since stepped down from ownership of Purpose Point, and it is now owned by Lucille alone.

To recruit workers, Purpose Point relies heavily on the H-2A visa program. The H-2A visa program is a program regulated through the Department of Labor and it allows agricultural employers and farm labor contractors to hire foreign workers. Through this program, these workers receive temporary, seasonal authorization to legally enter and work in the United States. In applying to the H-2A program, the employer must submit a Form 790 (the "job order") to the

Department of Labor's Employment and Training Administration ("ETA"). The job order, as submitted and approved by the ETA, constitutes a legal contract between the employer and the worker. The job order must include all the material terms and conditions of employment. For the relevant period in this case, Purpose Point submitted three job orders. The first was in 2017, and it promised a wage of at least $12.75 per hour. The second was in 2018, promising a wage of at least $13.06 per hour. The third was in 2019, promising a wage of at least $13.54 per hour.

Plaintiffs are H-2A workers that come from an impoverished community of Guatemala. There are no opportunities in or around Plaintiffs' home community to earn wages comparable to those promised by Purpose Point to work in the United States. In 2017, 2018, and 2019, Purpose Point recruited Luis and Darwin to work as a seasonal agricultural worker in Michigan. In 2018, Purpose Point recruited Hervil and Artemio to work as well. And in 2017 and 2018, Purpose Point recruited Leonel. In each year they were employed, Plaintiffs were forced to pay an illegal $2,500 recruitment fee, had their passports and social security cards confiscated by Emilto, and were not paid for all hours worked.

Plaintiffs expect the evidence at trial to show that Defendants trafficked them for labor at PPH, including by charging them recruitment fees to come from Guatemala to the States, withholding their passports, and controlling their bank accounts. Plaintiffs further expect the evidence to show that Defendants maintained their trafficking scheme by asserting various forms of control and manipulation over Plaintiffs, including through: (i) forcing Plaintiffs to work long hours with little sleep and to report decreased hours on their timesheets; (ii) preventing Plaintiffs from freely attending social activities in their free time; (iii) forcing Plaintiffs to buy groceries only from Defendant-approved Makkedah Meat Processing, in which Defendants have a financial interest and which was more expensive for Plaintiffs than other retailers; (iv) forcing

3

Plaintiffs to cash their checks only at Defendant-approved places where the cashiers communicated with Defendants; (v) forcing Plaintiffs to rely on Defendants for transportation, including to get groceries or cash their checks; (vi) forcing Plaintiffs to attend church services at the Dunkard Brethren Church; (vii) forcing Plaintiffs to see only a Defendant-approved doctor and dictating when Plaintiffs could see the doctor, even going so far as to prevent one Plaintiff from getting care when he desperately needed it; (viii) paying other workers to look through Plaintiffs' phones; and (ix) preventing Plaintiffs from speaking with investigators from the Department of Labor when they came to PPH.

## ARGUMENT

As summary judgment and other motions have been fully briefed and decided by the Court, Plaintiffs assume familiarity with all claims in the case—including Plaintiffs' contract claims and Plaintiff's underpayment of wages claims under the FLSA and MWOWA—and will focus on the trafficking claims for the purpose of this brief.

**I.     PLAINTIFFS WILL PROVE HUMAN TRAFFICKING OFFENSES AT TRIAL.**

To establish a claim for human trafficking, Plaintiffs must establish that Defendants (1) knowingly recruited, harbored, transported, provided, or obtained by any means (2) Plaintiffs for labor or services in violation of the forced labor statute. 18 USC § 1590(a). Forced labor is knowingly providing labor or services (3) by any one of, or combination of, the following means:

a) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

b) by means of serious harm or threats of serious harm to that person or another person;

c) by means of the abuse or threatened abuse of law or legal process; or

d) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). Serious harm includes nonphysical harm, "including psychological, financial, or reputational harm" serious enough to "compel a reasonable person" to perform labor or services. 18 U.S.C. §1589(c)(2). Further, as recognized by the Court in its summary judgment opinion (at 28), under the TVPRA, a defendant who "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person" in the course of another violation of the TVPRA is liable for document servitude. 18 U.S.C. § 1592.

At trial, Plaintiffs will testify that Emilto confiscated their passports, which is illegal; Lucille had access to and control over Luis, Darwin, and Leonel's bank accounts; and Emilto knew that Plaintiffs had no comparable financial options in Guatemala and that Plaintiffs would have no choice but to pay his recruitment fees and accept less pay than they were contractually promised. The evidence will show that Plaintiffs were compelled to work despite the financial damages inflicted upon them given the control that Defendants had over Plaintiffs, and their limited economic opportunities without their employment at Purpose Point. Under Michigan law, the analysis is even simpler. If the jury finds that Emilto confiscated a Plaintiff's passport, then it must find that, at a minimum, the work performed while Emilto had that passport was forced labor.

## II. PLAINTIFFS WILL PROVE DAMAGES.

"The TVPRA, FLSA, and Michigan law allow for compensatory damages." *Machhal v. Machhal*, 2023 WL 2661107, at *4 (W.D. Mich. Mar. 28, 2023) (citing 18 U.S.C. § 1595(a); 29 U.S.C. § 216). "As compensatory damages, courts have awarded both lost wages, whether statutory minimum wages under the FLSA or higher wages based on prevailing wages for the work performed or an agreed contract rate, and noneconomic damages, such as emotional distress and pain and suffering, resulting from forced labor and similar working conditions." *Cruz-Cruz v.*

5

*Conley-Morgan L. Grp., PLLC*, 2017 WL 2112637, at *4 (E.D. Ky. May 15, 2017). Interest is recouped on such damages. The TVPRA also allows for punitive damages and attorneys' fees and costs. *See Machhal*, 2023 WL 2661107, at *4; *Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013); 18 U.S.C. § 1595(a).

In this case, Plaintiffs will establish compensatory damages including lost wages and recruitment fees. Defendants kept inaccurate and incomplete and failed to keep any records at all for some of the work at issue. Plaintiffs will testify that they were instructed by Defendant Emilto not to keep track of their own dates, times, or hours worked, and that they were underpaid at least 10-15 hours each week, sometimes much more. Further, it is undisputed that Defendants destroyed any records showing the daily piece-rate production for two of the three years at issue. ECF No. 171 at 11 ("Defendants destroyed the records showing daily piece-rate production for the 2018 and 2019 seasons."). The evidence will further show that Defendants did not retain piece-rate production records for 2017, nor did they retain daily timesheets for 2017 and 2018. Plaintiffs will testify as to their hours while working at Purpose Point, which were long and often started in the middle of the night. Their testimony will establish the approximate hours Plaintiffs actually worked for Purpose Point, while the pay stubs will show how much they were paid each week. Accordingly, Plaintiffs will establish that they were improperly compensated and will produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The jury will then be able to determine how much Plaintiffs were underpaid each week.

In addition to their economic losses, Plaintiffs suffered serious emotional distress as a result of their trafficking. Plaintiffs will present evidence at trial of emotional pain and suffering due to Defendants' illegal actions.

Finally, Plaintiffs will seek punitive damages and an award of attorney fees and costs as the prevailing party. Punitive damages are within the province of the jury and have ranged up to $10,000 a day for the duration of the violation. *See Francisco v. Susano*, 2013 WL 4849109, at *3 (D. Colo. Sept. 10, 2013).

### III.    PURPOSE POINT LACKS EVIDENCE TO PROVE ITS COUNTERCLAIM.

To establish a breach of contract claim, a party must establish "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). "Damages recoverable are those which are a 'direct and proximate result' of a party's breach and were 'within the contemplation of the parties' when the contract was made." *Home Ins. Co. v. Com. & Indus. Sec. Servs., Inc.*, 57 Mich. App. 143, 146 (1974) (*citing Huler v. Nasser*, 322 Mich. 1, 8 (1948); *Sattler v. Fisher Contracting Co.*, 30 Mich. App. 617, 622 (1971)).

Purpose Point has alleged that Plaintiffs breached their contracts by leaving before the end of the employment season, and that Plaintiff Luis broke workplace rules and engaged in a work slowdown in July 2019. When asked about how it was damaged by these alleged breaches, Defendant claimed that it was damaged by the costs of defending this lawsuit, and that those costs prohibited them from bringing more workers. Purpose Point has no evidence that the cost of defending a lawsuit was a direct and proximate result of the alleged breach.

The evidence will show that there was no slowdown in Luis's production. According to Lucille, July was the worst month for Luis. But the pay records show that in July 2019, Luis was one of the top producers; in two weeks he made approximately $500 a week more than the average employee. Indeed, in July of 2019, based on his paycheck, Luis consistently exceeded the average production of workers, and at no point in July was he in the lowest performing group:

7

| Workweek | Average Paycheck | Luis's Paycheck | Lowest Performing Group |
|---|---|---|---|
| 6/30 – 7/6 | $292.30 | $152.33 | $121.86 |
| 7/7 – 7/13 | $594.58 | **$819.17** | $467.13 |
| 7/14 – 7/20 | $664.25 | **$1,137.36** | $588.99 |
| 7/21 – 7/27 | $744.96 | **$1,245.68** | $663.03 |
| 7/28 – 8/3 | $705.59 | $671.97 | $545.51 |

JTX 1.

Defendants further admit that they never gave a written warning to either Plaintiff, and that no documentation of any alleged problems with Plaintiffs was ever made. Thus, the evidence will not show that Defendants experienced any damages from a slowdown in Luis's production.

## CONCLUSION

For the reasons outlined above, Defendants are liable to all Plaintiffs for violations of the TVPRA and MHTVCA and for breach of contract for each year at issue (2017, 2018, and 2019). For 2019, Defendants are also liable to Luis for violations of the FLSA, and to Luis and Darwin for violations of the WOWA.

Dated: April 15, 2025                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**
*/s/ Kenya K. Davis*
Kenya K. Davis (D.C. Bar No: 502305)
Admitted to Practice in the Western District of Michigan
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-9608
Email: kdavis@bsfllp.com

**MIGRANT LEGAL AID**
Teresa Hendricks (P46500)
1140 Fuller Ave., NE
Grand Rapids MI 49503

8

Telephone: (616) 454-5055
Email: thendricks@migrantlegalaid.org