UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**LUIS GOMEZ-ECHEVERRIA**, et al.,

    Plaintiffs,

v.

**PURPOSE POINT HARVESTING LLC**, et al.,

    Defendants.

Case No. 1:22-CV-00314

Hon. Jane M. Beckering

---

Teresa Hendricks (P46500)
Benjamin O'Hearn (P79252)
Molly Spaak (P84730)
**Migrant Legal Aid**
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
(616) 454-5055
*Attorneys for Plaintiffs*

Robert Anthony Alvarez (P66954)
**AVANTI LAW GROUP, PLLC**
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com
*Attorneys for Defendants*

---

## DEFENDANTS' TRIAL BRIEF

Now comes Defendants, by and through the undersigned, and submits this trial brief in accordance with this Court's guidelines for the submission of pretrial conference matters. *See* "Information and Guidelines for Civil Practice before The Honorable Jane M. Beckering United States District Judge," at VIII(B).

### I. BACKGROUND

The instant case was brought by Plaintiffs Luis Gomez-Echeverria ("Luis"), Hervil Gomez-Echeverria ("Hervil"), Julio Caesar Gomez Moreno ("Julio"), Darwin Joel Fuentes Perez ("Darwin"), Artemio Coronado Esteban ("Artemio"), and Leonel Lopez Y Lopez ("Leonel")

(collectively, "Plaintiffs") based on Plaintiffs' allegations that Defendants Purpose Point Harvesting LLC ("Purpose Point"), Emilto Moreno Gomez ("Emilto"), and Lucille Jean Moreno ("Lucille") (collectively, "Defendants") violated a number of federal and state laws, including the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 et seq., the Fair Labors Standard Act ("FLSA"), 29 U.S.C. 8 § 201 et seq., the Michigan Workforce Opportunity Wage Act ("MWOWA"), M.C.L. § 408.411 et seq., the Michigan Human Trafficking Victims Compensation Act ("MHTVCA"), M.C.L. § 752.981 et seq. (ECF No. 56).

Essentially, Plaintiffs allege that: Defendants charged them an illegal $2,500 recruitment fee and did not properly reimburse them; Defendants confiscated Plaintiff's passports and social security cards; Defendants made Plaintiffs work long continuous hours without breaks; Defendants failed to compensate for hours worked; Defendants fails to properly document the Plaintiffs' hours; Defendants breached the clearance order by failing to pay agreed-upon wages, which represents the material terms and conditions of their employment; Plaintiffs allege that Defendants threated to blacklist Plaintiffs, preventing them from any further H-2A employment; Plaintiffs allege that Defendants threatened that if anybody complained, a contact with the Department of Labor would warn Defendants; Defendants required Lucille to be added to Plaintiffs' bank accounts and have access to those accounts; Defendants limited Plaintiffs' ability to travel and seek medical or financial services as part of an effort to coerce them to work.

Most of Plaintiffs' factual allegations pertain to their breach of contract claim. For example, although Plaintiffs provide information regarding 2017 and 2018 wages, that information does not form the basis of its FLSA claim, which is limited to the year 2019. (ECF No. 56 at PageID.825-26). By federal statute, the clearance order represents the material terms and conditions of the job, and is the basis of Plaintiffs' breach of contract claim. *See, e.g., Garcia-Celestino v. Ruiz*

*Harvesting, Inc.*, 843 F.3d 1276, 1285–86 (11th Cir. 2016) ("It is on the basis of the clearance order, which served as the workers' contracts, that the plaintiffs in this suit brought their breach of contract claims."). For the year 2017, the clearance order was signed by Emilto and covered the period from May 16, 2017 through November 30, 2017. (ECF No. 13-6 at PageID.364). This order lists a $12.75 hourly wage under the entry for "asparagus, zucchini, squash" (ECF No. 13-6 at PageID.367), and provides the following piece-rate schedule: asparagus - $0.18 per lb; apples - $16.00 per 18-bushel box; broccoli - $15.00 per 18-bushel box; and zucchini - $18.00 per 18-bushel box. (ECF No. 13-6 at PageID.375). The work order imposes positive obligations on employers to notify the Department of Labor "[i]f the worker voluntarily abandons employment before the end of the job order period or is terminated for job related reasons or misconduct," and provides that "[t]he employer will not be responsible for providing or paying return transportation and subsistent expenses of the work and the worker is not entitled to the three-quarter" rule, which is not at issue in this case. (ECF No. 13-6 at PageID.376). Further, it states that "[t]he employer will advise H-2A visa beneficiaries of their responsibility to return to their country of origin, or to subsequent employment-authorized work, at the end of the term of employment." *Id.* The word order further provides that

> To be hired for employment under this job order, the worker must be able, willing, and qualified and be available at time and place needed to perform the work described in this job order.
> The worker understands that if he quits or is terminated for cause prior to the end of the period of employment he will not receive certain transportation reimbursement discussed under Item 17 and may not be eligible for rehire in future years.
> Employer may terminate the worker for lawful job-related reasons and so notify the Job Service local office if the worker (a) abandons the employment . . . (b) malingers or otherwise refuses without justified cause to perform as directed the work for which the worker was recruited and hired; (c) [or ]commits serious act(s) of misconduct or serious or repeated violation(s) of the employer's work rules . . . .

The Purpose Point work rules provided that: "Workers who perform sloppy work may be suspended without pay for the remainder of the workday or for up to three days in the sole judgment of their supervisor"; "No use or possession of beer, liquor or illegal drugs is permitted during work time or during any workday before work is completed for the day"; "Excessive absences and/or tardiness will not be permitted"; "Workers may not take unauthorized breaks form work"; "Workers may not deliberately restrict production, damage plants or bruise fruit"; "Workers must follow supervisor's instructions. Insubordination is cause for dismissal." (ECF No. 13-6 at PageID.389-90). The rules provide that for a first violation, the worker would receive an oral warning. (*Id.* at PageID.390).

Emilto also signed the 2018 clearance order, which covered the period from April 16, 2018, through November 20, 2018. (ECF No. 13-6 at PageID.397). The hourly rate listed under "fruits, vegetables, Christmas," was set at $13.06. (*Id.* at PageID.400). A separate piece rate was attached. (ECF No. 13-6 at PageID.427). The 2019 clearance order was signed by Lucille, and covered the period April 16, 2019 through November 16, 2019. (ECF No. 13-6 at PageID.428). The hourly wage under "fruits, vegetables, Christmas" as set at $13.54. (ECF No. 13-6 at PageID.431). All clearance orders contained the same language regarding the rights and responsibilities of employers and H-2A visa beneficiaries.

## II.   PROCEDURAL HISTORY

Plaintiffs Luis Gomez-Echeverria and Hervil Gomez-Echeverria filed their original complaint on March 31, 2022, ostensibly seeking class certification. (ECF No. 1). At this time, Plaintiffs were represented only by Migrant Legal Aid, which has always been a firm of record on this case. On May 23, 2022, Defendants filed a motion to dismiss the complaint or, in the alternative, to strike the defective attempt at class certification. (ECF. No. 8). After being ordered

to file an amended complaint (ECF No. 10), Plaintiffs filed their "amended complaint – class action," which was accepted on June 14, 2022. (ECF No. 13). Plaintiffs' amended complaint added plaintiff Julio Ceasar Gomez Moreno. Defendants filed a motion to dismiss the amended complaint or, in the alternative to strike the class allegations (ECF No. 15), which was granted only as to Plaintiff Julio, whose claim was dismissed for lack of standing. (ECF No. 15 at PageID.536). After noting that "Plaintiffs d[id] not respond to Defendants' argument" that Julio should be dismissed for lack of standing because "there is virtually no information about his claims this Court dismissed Julio from this case, noting that Plaintiffs had waived opposition to dismissal of Julio from the case. ," (ECF No. 15 at PageID.554-555).

After the Court's dismissal of Julio, Defendants filed an answer and a counterclaim against Luis and Hervil for breach of contract, fraudulent misrepresentation, silent fraud, intentional infliction emotional distress, and civil conspiracy. (ECF No. 25). After receiving permission from this Court, Plaintiffs amended their complaint to add new plaintiffs, filing the operative complaint in the case, "Second Amended Complaint – Class Action," on June 20, 2023. (ECF No. 56). In the second amended complaint, Plaintiffs add Darwin Joel Fuentes Perez, Artemio Coronado Esteban, and Leonel Lopez y Lopez. (ECF No. 56 at PageID.807). After Defendants filed a new answer and counterclaims against Plaintiffs responsive to their operative pleading, adding a counterclaim under the Racketeer Influenced and Corrupt Organizations Act (RICO) (ECF No. 61), Plaintiffs filed a motion to dismiss the counterclaims, or, in the alternative, to strike. (ECF No. 64). This court granted Plaintiffs' motion to dismiss Defendants' RICO counterclaim, its breach of contract counterclaim as alleged by Emilto and Lucille, and Defendants' fraudulent representation, intentional infliction of emotional distress, and civil conspiracy counterclaims. (ECF No. 96 at PageID.1230-31).

On May 4, 2023, a Case Management Order (ECF No. 44) was issued in this case, and the parties were given until December 29, 2023, to complete discovery. On October 23, 2023, the parties filed a joint motion to stay discovery until January 1, 2023, and to delay all deadlines in this case by 77 days (ECF No. 88). The Court granted the motion (ECF No. 89) but warned that additional requests to extend the deadlines would not be favored (id. at PageID.1150). Pursuant to the parties' request, the Court added 77 days to the remaining deadlines, making a Rule 23 certification motion due by January 11, 2024; discovery complete on March 15, 2024; and dispositive and decertification motions due by May 3, 2024. As set forth in the Minutes of a settlement conference with the Magistrate Judge, on December 11, 2023, the parties were unable to reach a settlement (ECF No. 91). Plaintiffs filed a motion for class certification on January 11, 2024 (ECF No. 92). On May 3, 2024, the plaintiffs filed a joint statement of material facts. (ECF No. 171).

After Defendants moved to dismiss the case under forum non conveniens (ECF No. 116) and to dismiss Plaintiffs' state-law claims for lack of supplemental jurisdiction (ECF No. 115), the Court considered those motions together with Plaintiffs' motion for class certification in an order dated May 28, 2024. (ECF No. 178). The Court denied relief to all parties and noted that Plaintiffs' class certification motion failed for lack of commonality between the members of the proposed class.

> Having reviewed the evidence the parties have presented concerning the maintainability of a class action, the Court determines that Plaintiffs have not demonstrated that the same purported breaches of contract touched every member of the proposed class. For example, although Plaintiff assert that common questions exist as to whether Defendants failed to pay both Plaintiffs an putative class members for hours worked and whether Defendant Emilto charged an illegal recruiting fee to Plaintiffs and putative class members, Plaintiffs do not provide any evidence or argument as to why the issue of breach of contract as to each Plaintiff and putative class member would not be subject to individualized proof.

> Commonality is lacking because proof of the failure to abide by the contract as to one worker would not necessarily be proof of such a failure as to another worker.

(ECF No. 178 at PageID.4219-4220).

On February 21, 2024, this Court denied Defendants' unopposed motion to extent discovery, finding no good cause. (ECF No. 112). On April 26, 2024, the Court also denied parties' joint motion to extend discovery deadlines, finding no good cause. (ECF No. 167). After various more filings by the parties, on August 2, 2024, the Court issued an "Opinion and Order" regarding various summary judgment motions filed by Plaintiffs and Defendants. (ECF No. 193). The Court denied relief to all parties. (ECF No. 193 at PageID.5254). This order thoroughly reviews the factual background of the case based on the previously filed agreed statement of material facts. (ECF No. 193 at PageID.5220-23). On December 4, 2024, this Court issued an order on the parties' competing motions in limine. (ECF No. 219); *See Gomez-Echeverria v. Purpose Point Harvesting, LLC*, No. 1:22-CV-314, 2024 WL 5284048, at *1 (W.D. Mich. Dec. 4, 2024). This Court granted Plaintiffs' motion in limine as it pertains to the testimony of non-plaintiff Purpose Point employees, specifically concluding as follows:

> The Court has denied Plaintiffs' motion for class certification in this case (ECF No. 178). Thus, only Plaintiffs' rights and alleged mistreatment are at issue. Accordingly, to the extent that Defendants seek to introduce testimony from non-Plaintiff Purpose Point workers that goes beyond their personal knowledge of Plaintiffs' experiences with Defendants, that testimony is properly excluded as irrelevant under Rule 401 of the Federal Rules of Evidence. FED. R. EVID. 401 & 602. Moreover, even to the extent that such testimony is minimally probative, testimony from non-Plaintiff Purpose Point workers about their experiences with Positive Point is likely to mislead the jury to conflate those witnesses' experiences—which are not at issue—with Plaintiffs' experiences. As Plaintiffs aptly note, "litigating what did or did not happen to other employees will create peripheral trials and distract the jury from the real issues, which are what happened to the Plaintiffs" (ECF No. 210-1 at PageID.5493). Accordingly, the testimony is also properly excluded under Rule 403 of the Federal Rules of Evidence. FED. R. EVID. 403.

*Gomez-Echeverria*, No. 1:22-CV-314, 2024 WL 5284048, at *8 (emphasis added). Accordingly, the court's order limited the testimony of non-plaintiff Purpose Point workers "to the extent that these individuals lack personal knowledge of any events at issue in this case." *Id.* at *9.

The Court also "grant[ed] the motion in limine as to testimony about Plaintiff Luis drinking alcohol at work to the extent that such testimony would be inadmissible hearsay." *Id.* As to Defendant's counterclaims for breach of contract based on Luis and Hervil adversely affecting productivity, the Court concluded that Defendants could present evidence "connected with loss of labor during the growing seasons in which Plaintiffs Hervil and Luis allegedly breached their employment contracts by abandoning their employment and/or slowing down production," but could not present evidence as to "damages connected with Defendants' inability to hire additional workers in subsequent growing seasons due to the decisions of individuals working at the U.S. Embassy in Guatemala City not to approve visas sought by prospective Purpose Point workers." *Id.* at *4.

### III.  LEGAL FRAMEWORK OF CLAIMS

The TVPRA makes it a criminal offense to "knowingly provide[] or obtain[] the labor or services of a person by any one" of a number of prohibited means. 18 U.S.C. § 1589(a). Further, under the "financial beneficiary prong," an individual who is a victim of a violation of § 1589 may bring a civil action against a perpetrator of the violation or a beneficiary of the violation who (1) knowingly benefited or received anything of value, (2) through participation in a venture, (3) "which [the beneficiary] knew or should have known has engaged in an act in violation of [§ 1589]." 18 U.S.C. § 1595(b). "A plaintiff may satisfy these elements in one of two ways. She may show that the defendant's own acts, omissions, and state of mind establish each element. Alternatively, she may impute to the defendant the acts, omissions, and state of mind of an agent

of the defendant. The former is referred to as 'direct liability' and the latter as 'indirect liability.'" *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020). Plaintiffs alleged that Defendants committed this offense "by means of the abuse or threatened abuse of law or legal process," or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]" *Id.* at § 1589(a)(3)-(4).

"The term 'abuse or threatened abuse of law or legal process' means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* at § 1589(c)(1). Further, "serious harm" can include non-physical psychological harm. *Id.* at § 1589(c)(2). Notably, Plaintiffs did not allege that Defendants were engaged in a "venture" under § 1589, as it only appears in paragraph 130 of their second amended complaint in reference to § 1595(a). Rightly, Plaintiffs have not sought an instruction for the court using the language of § 1589 which allows for jurors to find "reckless disregard." § 1589(b).

Plaintiffs will be unable to marshal evidence to meet its burden in this case. Defendants anticipate that this case will come down to credibility, and whether the jury believes Plaintiffs' version of events or the Defendants' version. As has been clear from Defendants' countercomplaint, Defendants take the position that Plaintiffs' story has been fabricated out of whole cloth, and that the documentary evidence will not support the testimonial allegations. This fabrication has, in part, been fueled by the seriousness of the allegations, and the "trafficking" label, which prosecutors and victim-rights attorneys have used more and more in an effort to apply the anti-trafficking laws to situations never intended by the Legislature:

> Lawyers have also played a significant role, if less well examined, in the evolving legal definition of trafficking. Lawyers have pushed for expanded definitions of trafficking in instrumental, case-specific, and ends-driven ways. Both prosecutors and victim-rights attorneys have sought to expand the contours of trafficking to overcome failures of victim protection and persistent problems of under-prosecution. This has resulted in an alliance between victim-rights attorneys and prosecutors that continues to push the trafficking definition outwards. . . . The TVPA, thus, has incentivized victim-rights attorneys to make creative arguments aimed at obtaining civil damages and victim benefits. Broad interpretation of trafficking allows victims to obtain civil damages, immigration relief, criminal record relief, and criminal restitution. This trend has intensified thanks to unprecedented civil litigation under the TVPA with more skilled, well-resourced litigators at the helm.

Julie Dahlstrom, *The Elastic Meaning(s) of Human Trafficking*, 108 Cal. L. Rev. 379, 422–24 (2020) (concluding that "future legislation should ensure that defendants have clear notice of the prohibited conduct. Legislation should not be so overbroad as to create civil or criminal penalties for innocuous behavior").

Defendants deny that they knowingly provided or obtained labor by force, fraud, or coercion. To the extent that Plaintiffs' evidence establishes that Defendants committed a technical violation of law, their evidence will fail to show the requisite mens rea or scienter, as there was no underlying venture engaged in the trafficking of persons. Further, even under the financial beneficiary prong, the Defendants must have known or have reason to know that the venture was engaged in a violation of Chapter 77. *See* 18 U.S.C. § 1595(a). Defendants will be unable to show that a reasonable person would know that Purpose Point was involved in forced labor, because Purpose Point was not, in fact, engaged in forced labor. Rather, this case is really a contract case or a family dispute dressed in the shiny gloss of the TVPRA. Thus, the instant facts are inapposite to the typical trafficking situation. *See* VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000, PL 106–386, October 28, 2000, 114 Stat 1464. On the contrary, the congressional findings make clear that the

Legislature was trying to address a different problem all together, mainly affecting women and children, or involving illegal immigration:

> The purposes of this division are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.
>
> As the 21st century begins, the degrading institution of slavery continues throughout the world. Trafficking in persons is a modern form of slavery, and it is the largest manifestation of slavery today. At least 700,000 persons annually, primarily women and children, are trafficked within or across international borders. Approximately 50,000 women and children are trafficked into the United States each year.
>
> . . .
>
> Traffickers primarily target women and girls, who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin. Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.
>
> . . .
>
> Existing laws often fail to protect victims of trafficking, and because victims are often illegal immigrants in the destination country, they are repeatedly punished more harshly than the traffickers themselves.

*Id.* §§ 1.02(a), (b)(1), (b)(4), (17); *see also United States v. Barai*, 55 F.4th 1245, 1251 (9th Cir. 2022) )("[T]he sex trafficking statute is part of the broader context for the forced labor statute. Indeed, both statutes were added to Title 18 at the same time through the Trafficking Victims Protection Act of 2000, and for the same general purpose—to combat the modern-day strategies by which traffickers exercise power over their victims.").

For substantially the same reasons, Plaintiffs' claim under the MHTVCA will likewise fail, as Defendants did not commit the underlying substantive act, nor did they have the requisite mens rea to do so. *See* Michigan Non-Standard Jury Instr. Civil § 73:1. Accordingly, Plaintiffs will be

unable to show each element of their claim, as Defendants could not have possibly acted for the purpose of a non-existent forced labor scheme, nor could they have done so knowingly. *See id.*

Likewise, Plaintiffs' FLSA and WOWA claims will fail, because even if Plaintiffs' proof establishes a technical violation of the statute, Plaintiffs will be unable to establish that such violations were willful, or otherwise taken with the requisite scienter. In order to establish a willful violation of the FMLA, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). As the Supreme Court explained in *McLaughlin:* "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful. . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful]." *Id.* at 135 n.13. Thus, even if Plaintiffs can establish that Defendants acted unreasonably in understanding and satisfying their obligations under the FLSA, that is not sufficient. Defendants will show that did not knowingly or recklessly violate the FLSA.

As to all of Plaintiffs' breach of contract claims, Defendants claim that Plaintiffs will be unable to establish the breach and damages elements of its claims. *See Miller-Davis Co. v. Ahrens Const., Inc.,* 848 N.W.2d 95, 104 (Mich. 2014).

### IV.   OBJECTIONS

Defendants object to JTX 0086 (police report regarding Emilto Moreno), JTX 0087 (MIOSHA citation), and the email-correspondence exhibits JTX 0109 and JTX 0110 as irrelevant and unduly prejudicial character evidence. Under Rule 402, "[e]vidence which is not relevant is not admissible" (Fed. R. Evid. 402), and here neither the police report nor the MIOSHA citation bears on any element of Plaintiffs' claims. Rule 404(b) prohibits admission of "other-act"

evidence offered solely to prove a party's propensity; such evidence is admissible only if it is probative of a material fact—such as intent, knowledge, or absence of mistake—and its probative value is not substantially outweighed by unfair prejudice. Even if minimally probative, these exhibits should be excluded under Rule 403 because their unfairly prejudicial impact—inviting the jury to decide the case on an improper propensity basis—"substantially outweighs" any marginal relevance. Unfair prejudice exists when evidence creates "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.*, 2023 WL 3244830, at *2 (E.D. Mich. May 4, 2023) (Ludington, J.,) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)). Admission of these exhibits would risk confusing the issues and misleading the jury.

To the extent that Plaintiffs seek to submit social media posts, Defendants object and would require a person with knowledge to testify as to the content of the email, the identity of the sender, and the identity of the receiver. To the extent that the exhibit is authenticated, Defendant objects to any hearsay contained therein, and would require redaction unless evidence is presented that a certain speaker in fact provided a specific response. *See* Paul W. Grimm, Daniel Capra, and Gregory P. Joseph, Authenticating Digital Evidence, 69 Baylor L. Rev. 1, at p. 31-32 (2017) Available at: https://ir.lawnet.fordham.edu/faculty_scholarship/856 ("If the goal is to prove that the page or a post is that of a particular person, authenticity standards are not automatically satisfied by the fact that the post or the page is in that person's name, or that the person is pictured on the post. That is because someone can create a Facebook or other social media page in someone else's name. Moreover, one person may also gain access to another's account.").

To the extent that Plaintiffs seek to submit emails, Defendants object and would require that a person with knowledge authenticate the emails and the identity of the speaker. *See id.* Further, to

the extent such exhibits are authenticated, they must be redacted so as not to present any hearsay statements, unless those statements are already in evidence. Additionally, if any of Plaintiffs' exhibits rely on Spanish-language documents with legal effect, Defendants object that such exhibits need to be authenticated by a person with knowledge, and that they are not self-authenticating certified foreign public document. FRE 902(3), 902(12).

Defendants object to admission of JTX 0004, JTX 0021-A/B, JTX 0024-A/B, JTX 0025-A/B, JTX 0027, JTX 0041, JTX 0054, JTX 0059–0064, JTX 0083 and JTX 0114 on the ground that none was produced during fact discovery or in response to Defendants' Rule 26(a) disclosures, interrogatories, document requests, or subpoenas. These exhibits were first identified in Plaintiffs' Pretrial Exhibit List—served long after the close of discovery—and Plaintiffs have offered no substantial justification for their belated disclosure. Under Rule 37(c), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiffs cannot demonstrate harmlessness: Defendants have been denied any opportunity to inspect, authenticate, or depose witnesses concerning these materials. Admission would unfairly surprise Defendants and disrupt trial preparation.

Defendants likewise object to JTX 0093, JTX 0094, and JTX 0095–0104 on both the late-disclosure ground under Rule 37(c)(1) and the relevance/propensity grounds under Rules 402, 403, and 404(b). These documents—apparently relating to Emilto Moreno's unrelated criminal conviction—were never produced during discovery, were first disclosed only in Plaintiffs' Pretrial Exhibit List, and have no bearing on any disputed fact in this case. They are offered solely to cast Defendants in a negative light and must be excluded for the same reasons articulated above.

## CONCLUSION

Defendants respectfully submit that Plaintiffs cannot carry their burdens under the TVPRA, FLSA, MWOWA, MHTVCA, or breach-of-contract theories, and that there are numerous exhibits identified in Plaintiffs' Pretrial Exhibit List must be excluded as irrelevant, unduly prejudicial, improperly authenticated, and belatedly disclosed under FRE 402, 403, 404(b), and Fed. R. Civ. P. 37(c)(1). Defendants further request that the Court enforce its prior Limine Order by limiting testimony to witnesses with personal knowledge and precluding any propensity-based or hearsay evidence.

Respectfully submitted,

/s/ Robert Anthony Alvarez
Robert Anthony Alvarez (P66954)
Avanti Law Group, PLLC