# EXHIBIT A

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


LUIS GOMEZ-ECHEVERRIA, ET AL.,

        Plaintiffs/Counter-Defendants,

vs.                    File No. 22-CV-314
                          Hon. Jane M. Beckering
PURPOSE POINT HARVESTING LLC, ET AL.,

        Defendants/Counter-Plaintiffs.

_____/

DEPOSITION OF LUIS GOMEZ-ECHEVERRIA

    Taken by the Defendant on March 7, 2024 at the offices of Avanti Law Group, 600 28th Street, SW, Grand Rapids, Michigan, at 9:30 a.m.



| | | |
|---|---|---|
| 1 | Q | Okay.  Have you ever worked with your brother in North |
| 2 | | Carolina? |
| 3 | A | No. |
| 4 | Q | Do you live alone in North Carolina? |
| 5 | A | Yes. |
| 6 | Q | Do you have a girlfriend? |
| 7 | A | Friends.  Just friends. |
| 8 | Q | Friends that are women? |
| 9 | A | Yes.  Just to say hi, Luis, hi/bye. |
| 10 | Q | Are you in a relationship with any woman? |
| 11 | A | We just talk.  Simply talk. |
| 12 | Q | Okay.  Who is the most recent romantic relationship you had? |
| 13 | A | I have an ex. |
| 14 | Q | What is your ex's name? |
| 15 | A | Do I need to tell you her name? |
| 16 | Q | Yes. |
| 17 | A | You are going to get upset at me.  Can I ask you why? |
| 18 | Q | I am the one asking you the questions. |
| 19 | | MR. O'HEARN:  I think I am going to object in terms |
| 20 | | of relevance. |
| 21 | | MR. ALVAREZ:  Unless you are going to file a |
| 22 | | protective order he has to answer the question. |
| 23 | | MR. O'HEARN:  We are getting pretty far away. |
| 24 | | MR. ALVAREZ:  I don't think so. |
| 25 | | MR. O'HEARN:  Can you give me some reason? |

|    |   |   |
|----|---|---|
| 1  |   | BY MR. ALVAREZ: |
| 2  | Q | I don't have to. |
| 3  |   | So what was your ex-girlfriend's name? |
| 4  | A | Ex-girlfriend? |
| 5  | Q | That is what you said. |
| 6  | A | Ex-partner. |
| 7  | Q | Okay.  So ex-partner.  What do you mean by partner? |
| 8  | A | Ex-wife. |
| 9  | Q | Okay.  So your ex-wife.  What is your ex-wife's name? |
| 10 | A | Cathalyn. |
| 11 | Q | Kathleen? |
| 12 | A | Cathalyn. |
| 13 | Q | Cathalyn.  Okay.  Cathalyn is your ex-wife? |
| 14 | A | Yes. |
| 15 | Q | So that means you married her? |
| 16 | A | Just together. |
| 17 | Q | Okay.  So you didn't get married civilly, you were just |
| 18 |   | together? |
| 19 | A | We were.  We were.  Yes. |
| 20 | Q | When did you meet Cathalyn? |
| 21 | A | When I was single. |
| 22 | Q | In Guatemala? |
| 23 | A | Yes. |
| 24 | Q | How old was she? |
| 25 | A | I don't remember exactly. |

```
 1   Q    How old were you?
 2   A    I don't remember exactly.
 3   Q    Would it surprise you that we know that she was 15 when you
 4        met her?
 5             MR. O'HEARN:  Object.  I think at this point in time
 6        we are going to -- it is an attempt to harass and intimidate.
 7             MR. ALVAREZ:  How?
 8             MR. O'HEARN:  The age is completely irrelevant in
 9        this case.
10             MR. ALVAREZ:  We are establishing the relationship.
11        I asked him about relationships.
12             MR. O'HEARN:  I am going to instruct him not to
13        answer.
14             MR. ALVAREZ:  So you want to stop the deposition and
15        file for protective order?
16             MR. O'HEARN:  I would prefer we keep the deposition
17        going on relevance grounds.  He has made a big trip to get
18        here today.  If we have to stop the deposition, it would be a
19        hardship to restart it.  I think it makes a lot more sense to
20        keep going on relevant grounds and then if you still want to
21        pursue this at the end we can pursue a protective order.  Then
22        and at least you will have everything you need for your case.
23             MR. ALVAREZ:  The problem here, Ben, is that I am
24        allowed to ask questions unless there is a specific reason why
25        I can not ask that question or ask the questions about his
```

1   wife, his spouse who is going to be a witness in this case.
2   You have no grounds to ask for protective order.  She is going
3   to be a witness and we have already listed her in our initial
4   disclosures.  It is not like it is a surprise.  So unless you
5   have a specific reason why it's prejudicial, I am allowed to
6   ask these questions about his wife.  His partner he testified.
7           MR. O'HEARN:  Discovery is limited to what is
8   relevant.  This is not relevant.
9           MR. ALVAREZ:  In a deposition, that is not an
10  allowable objection.  Relevance is not, okay.  So either he
11  can answer the question or you might as well file your motion
12  for protective order.  I am going to go down the road.  I have
13  to ask about his wife.  It is not like it is some random
14  person.  It is not like it was some random girlfriend.  It is
15  his wife, the person whom he has spoken to the last several
16  years.  We know because we have talked to her.  The person who
17  knows what his thoughts were back in the day during 2018,
18  during 2019, during 2017 and she is an identified witness.  So
19  again, he answers the question or you go and file your motion.
20  What would you like to do?
21          MR. O'HEARN:  Can we break for a bit?
22          MR. ALVAREZ:  Sure.
23          (At 11:37 a.m. off the record)
24          (At 11:42 a.m. on the record)
25          MR. ALVAREZ:  Back on the record.  So what are we

1        doing?
2                    MR. O'HEARN:  He can answer your questions.  I would
3        ask the professional courtesy when you objected at Emil's
4        deposition, I would ask about his criminal history, you felt
5        it was intended to harass and I backed off.
6   BY MR. ALVAREZ:
7   Q    I also remember that we did allow questioning regarding the
8        fraud and all of that, right.  This is specifically for a
9        witness.  Just for the record, this is specifically for a
10       witness that we are going to be calling to testify and it is
11       his wife whom he has identified as his wife.  So it is a
12       completely different matter.  If it was just some random
13       woman, I thought that is where he was going.  He is the one
14       who brought up his wife.
15                   So Luis, your common law wife we will call her,
16       because you are not really married, correct?  Is that true?
17  A    What do you mean with that?
18  Q    Well, in Spanish we would say pareja de hecho, but I don't
19       know how to say it in English.  It translates to common law
20       wife.  So you are in a, you call her your wife, you treated
21       her as your wife, you have children with her, correct?
22  A    Yes.
23  Q    Okay.  How old were you when you met your wife?
24  A    I don't remember exactly.
25  Q    And would it surprise you to know that she was 15 when you met

```
 1       her?
 2  A    I don't know.
 3  Q    How long after you met her did she become pregnant?
 4  A    Maybe like a year and a half possibly.
 5  Q    Is that what you think she is going to say?
 6            MR. O'HEARN:  Objection.  Form.
 7  A    I don't know exactly.
 8  BY MR. ALVAREZ:
 9  Q    When was your first child's born?
10  A    I don't remember exactly.  I don't remember exactly.
11  Q    So you don't know your first borne child's date of birth?
12  A    Yes.
13  Q    So when was it?
14  A    It is on the 30th of April.
15  Q    What year?
16  A    I don't remember exactly.  It was around --
17  Q    What year did you meet your wife?
18  A    I don't remember exactly the year.
19  Q    Okay.  After you met, how long after you met did you two live
20       together?
21  A    So I met her, we played basketball -- basketball and then we
22       play, and we met like that.
23  Q    But my question was, how long after you met did you and her
24       start living together?
25  A    I couldn't tell you exactly how long, months, days or weeks.
```

| | | |
|---|---|---|
| 1 | Q | Okay. But you did live together at some point? |
| 2 | A | Yes. |
| 3 | Q | Did you live together at your parent's home? |
| 4 | A | Yes. |
| 5 | Q | How long did you live together? |
| 6 | A | Till 2019 I would say. |
| 7 | Q | Okay. So 2017 you were living together in Guatemala? |
| 8 | A | Yes. |
| 9 | Q | In 2018 you two were still living together in Guatemala? |
| 10 | A | Yes. |
| 11 | Q | And in 2019 at least until you left Michigan for North |
| 12 | | Carolina you two were living together in Guatemala? |
| 13 | A | Could I say something? |
| 14 | Q | Sure. |
| 15 | A | How to explain this. You know how difficult it is to talk |
| 16 | | about her. Don't laugh. You know why I am telling you this |
| 17 | | because when I used to travel working for the company, Purpose |
| 18 | | Point, she betray me. How you been betrayed by your wife or |
| 19 | | your partner. |
| 20 | Q | How did she betray you? |
| 21 | A | She cheated me with somebody else. When I was here in |
| 22 | | Michigan getting up at 10:00 a.m. working until 10:00 p.m. it |
| 23 | | was daily. I was every month, I was every week. |
| 24 | Q | She cheated on you is what you are saying? |
| 25 | A | Yes. And you are asking me questions about her. |

1   Q   I understand it must be difficult.
2   A   But for him not to laugh at me, because he was laughing at me.
3   Q   I didn't see him laughing at you.
4   A   Because you were looking at me, not to him.
5   Q   Well, so I have to ask you these questions, sir.  I am not
6       trying to make this personal.  I have to ask you these
7       questions.
8   A   But for him not to laugh because he is making fun of me.
9   Q   I will instruct him to keep his emotions in check.  But I have
10      to ask you these questions.  This isn't personal, just like
11      it's not personal for Mr. O'Hearn with my client.  Okay.  We
12      are just doing a job.  I can see the pain on your face.  I
13      don't know where it's coming from, but I can see it.
14  A   I am telling you where it's coming from, that is why I am
15      explaining that to you.
16  Q   And that is your story.  You, I'm sure, know that your wife
17      has a completely different story.  But we can deal with that
18      later.  For right now in 2019 you were still living or she was
19      still living in your parent's home with you, correct?
20  A   She went to her parent's house.
21  Q   When was that?
22  A   I would say it was around June or something like that.  I
23      don't know exactly.
24  Q   Could it have been July 2019?
25  A   I don't remember exactly.

| | | |
|---|---|---|
| 1 | Q | Okay.  So it could have been later.  It could have been |
| 2 | | earlier is what you are saying? |
| 3 | A | Yeah.  Because she used to go and visit her parents.  She used |
| 4 | | to go visit them. |
| 5 | Q | What you can be sure of though is that she moved out of your |
| 6 | | parent's house while you were still in Michigan? |
| 7 | A | Yes. |
| 8 | Q | Okay.  When was the last time you spoke with her? |
| 9 | A | I don't remember exactly. |
| 10 | Q | Did you try calling her recently? |
| 11 | A | I don't remember.  She has another partner.  She has another |
| 12 | | family. |
| 13 | Q | So you haven't tried to reach out to her about this lawsuit in |
| 14 | | the last 30 days? |
| 15 | A | No. |
| 16 | Q | Okay.  What are the last four digits of your cell phone |
| 17 | | number? |
| 18 | A | 1300. |
| 19 | Q | That is your cell phone? |
| 20 | A | Mine? |
| 21 | Q | Yes. |
| 22 | A | Yes. |
| 23 | Q | Remember you have to -- you have to verbalize. |
| 24 | A | Thank you. |
| 25 | Q | In 2017 -- well, before we go down that road.  Do you know |