UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOMEZ-ECHEVERRIA, et al.,

Plaintiffs,

v.

PURPOSE POINT HARVESTING, LLC, et al.,

Defendants.
______________________________/

Case No. 1:22-cv-314

HON. JANE M. BECKERING

**OPINION AND ORDER**

Now pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 314). For the following reasons, the Court grants the motion in part and denies it in part, awarding what the Court deems to be reasonable attorneys' fees and costs, but not in the full amount requested.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Luis Gomez-Echeverria, Hervil Gomez-Echeverria, Julio Caesar Gomez Moreno, Darwin Joel Fuentes Perez, Artemio Coronado Esteban, and Leonel Lopez Y Lopez brought this action against Defendants Purpose Point Harvesting, LLC ("Purpose Point"), Emilto Moreno Gomez, and Lucille Jean Moreno for legal violations related to their employment with Purpose Point. Purpose Point is a farm labor contracting company that provides seasonal farm workers to a number of farms throughout Michigan. Plaintiffs are citizens of Guatemala who were recruited to work at Purpose Point through the H-2A temporary agricultural worker visa program.

Plaintiffs alleged that Purpose Point required Plaintiffs to pay an illegal recruitment fee to work with Defendants and that their passports and Social Security cards were forcibly taken from them upon arrival in the United States. Plaintiffs also alleged that they were not paid for all the hours they worked during their employment with Purpose Point.

**B. Procedural Posture**

Plaintiffs argued that Purpose Point's actions violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Michigan Workforce Opportunity Wage Act ("MWOWA"), M.C.L. § 408.411 et seq., the Michigan Human Trafficking Victims Compensation Act ("MHTVCA"), M.C.L. § 752.981, and constituted a breach of contract. After an eight-day trial, a jury found for Plaintiffs and awarded a total verdict of $555,000 plus prejudgment interest. The Court entered a judgment in favor of Plaintiffs on June 12, 2025 (ECF No. 309).[1]

Plaintiffs then filed this Motion (ECF No. 314) pursuant to the attorneys' fees and costs provisions of the TVPRA, 18 U.S.C. § 1595(a) (providing that a victim of a TVPRA violation "may recover . . . reasonable attorneys fees"), 29 U.S.C. § 216(b) (providing that a prevailing employee in an FLSA action is entitled to "a reasonable attorney's fee . . . and costs of the action"), and M.C.L. § 408.419(1)(a) (entitling a prevailing employee to "costs and reasonable attorney

---

[1] Judgment was entered for the Plaintiffs against the Defendants jointly and severally in the following amounts:

1) Luis Gomez-Echeverria: $127,500.00, plus $3,995.71 in prejudgment interest;
2) Hervil Gomez Echeverria: $110,500.00, plus $1,525.63 in prejudgment interest;
3) Darwin Joel Fuentes Perez: $156,500.00, plus $4,576.90 in prejudgment interest;
4) Artemio Coronado Esteban: $62,500.00, plus $1,816.23 in prejudgment interest;
5) Leonel Lopez Y Lopez: $98,000.00, plus $3,341.87 in prejudgment interest.

(ECF No. 309 at PageID.8524).

fees" in a successful MWOWA action). Defendants filed a response in opposition on July 17, 2025 (ECF No. 325). The parties did not request oral argument. Having considered the parties' submissions, the Court agrees that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.3(d).

## II. ATTORNEYS' FEES

Defendants concede that Plaintiffs qualify as prevailing parties under the applicable fee-shifting statutes (*see* ECF No. 32 at PageID.8876). The Court turns to the calculation of an appropriate award of costs and fees. Plaintiffs request over **five million dollars** comprised of the following:

**Attorneys' Fees**

- Migrant Legal Aid ("MLA"): $2,261,785.00
- Boies Schiller Flexner LLP ("BSF"): $2,689,146.00

**Total Fees: $4,950,931.00**

**Costs**

- MLA: $58,563.48
- BSF: $47,856.51 to 76,482.31[2]

**Total Costs: $106,419.99 to $135,045.79**

[2] Plaintiffs state throughout the Motion (ECF No. 314-1 at PageID.8567, 8568) and in a supporting declaration that BSF "seeks an award of $47,856.51 in expenses in connection with the prosecution of the Litigation" (ECF No. 314-3 at PageID.8579), but the line items "for which [BSF] seeks compensation" add up to "$76,482.31," as noted by BSF's own calculations (ECF No. 314-3 at PageID.8579–8581; ECF No. 314-3 at PageID.8645–8656). BSF does not explain this apparent contradiction between its sworn statements and evidence. Defendants do not note or challenge the inconsistency (*see generally* ECF No. 325). They respond line by line to a BSF cost ledger that totals "$76,482.31," (ECF No. 325-2 at PageID.9021–9046), and thus the Court will construe the Motion to request "$76,482.31" in costs for BSF.

(ECF No. 314-1 at PageID.8556, 8568; ECF No. 314-3 at PageID.8575; ECF No. 314-4 at PageID.8670). Defendants challenge the requested amounts, contending they are "excessive, unreasonable, and unsupported by the record" (ECF No. 325 at PageID.8875).

The calculation of a reasonable fee begins with the "lodestar," determined by multiplying the hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *accord United Slate, Tile, & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) (applying *Hensley v. Eckerhart* formulation to attorneys' fees under § 216 of the FLSA). The party seeking an award of fees must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. When calculating attorneys' fees, there is no "precise rule or formula." *Id.* at 436. Courts exercise "sound discretion" in determining reasonable attorneys' fees. *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 558 (2010). The fee applicant bears the burden of establishing entitlement to an award. *Hensley*, 461 U.S. at 437.

There is a strong presumption that the lodestar represents the reasonable fee. *B & G Min., Inc. v. Dir., Off. of Workers' Comp Programs*, 522 F.3d 657, 662 (6th Cir. 2008) (cleaned up). However, courts may reduce attorneys' fees awards "[w]here the documentation of hours is inadequate." *Ohio Right to Life Soc., Inc v. Ohio Election Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (quoting *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)). In determining hours, a court must "exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434. When a reduction in the attorneys' fees is appropriate, courts, in their discretion, may apply an "across-the-board"' reduction in the amount sought. *See e.g., Sykes v. Anderson*, 419 F. App'x 615, 618–19 (6th Cir. 2011) (affirming an across-the-board fee reduction of twenty-five percent to address duplicative billing).

Additionally, paralegal fees may be compensable as attorneys' fees. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). But non-legal clerical work should not be included. *Tikan v. Asset Acceptance, LLC*, No. 13-12173, 2016 WL 1212641, at *4 (E.D. Mich. Feb. 12, 2016), *report and recommendation adopted sub nom. Inna Tikan & Nina Bodnar v. Asset Acceptance, LLC, et al.*, No. 13-12173, 2016 WL 1182771 (E.D. Mich. Mar. 28, 2016) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)).

**A. Hours Reasonably Expended**

Attorneys seeking fees have a duty "to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended." *Imwalle,* 515 F.3d at 552. The Court must therefore be satisfied that the party requesting fees has adequately documented its claim. Excessive or redundant hours are properly excluded from the calculation. *Hensley*, 461 U.S. at 434. "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Id*. As the United States Supreme Court noted in *Hensley*:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority.

*Id.* (cleaned up).

In support of their claimed hours, Plaintiffs submitted the declaration of Teresa Hendricks, Executive Director of MLA (ECF No. 314-4) and the declaration of Kenya K. Davis, a partner at BSF (ECF No. 314-3). Each declaration includes time records for all individuals who performed work on this case, which both Hendricks and Davis represent were prepared and maintained in the ordinary course of business. Based on those submissions, Plaintiffs seek compensation for the following hours:

**Migrant Legal Aid**

| **Individual** | **Role** | **Hours** |
|---|---|---|
| Teresa Hendricks | Attorney | 1,976.7 |
| Benjamin O'Hearn | Attorney | 1,796.1 |
| Molly Spaak | Attorney | 2,353.1 |
| Clara Manuzza | Bilingual Paralegal | 99.5 |
| Jennifer Gomez-Pedraza | Bilingual Paralegal | 21.3–27.3[3] |
| Lina Herrera | Bilingual Paralegal | 111.0 |
| **Subtotal – Migrant Legal Aid** | | **6,361.0** |

**Boies Schiller Flexner LLP**

| **Individual** | **Role** | **Hours** |
|---|---|---|
| Kenya Davis | Attorney | 650.1 |
| Benjamin Solomon-Schwartz | Attorney | 289.8 |
| Jessica Mugler | Attorney | 560.5 |
| Sulemon Masood | Staff Attorney | 1,208.1 |
| Ruth Zheng | Summer Associate | 177.4 |
| Shari Ginsberg | Managing Clerk | 0.8 |
| Dale Pedrick | Paralegal | 16.0 |
| Luis Lopez | Legal Assistant | 260.1 |
| Victoria Moran | Legal Assistant | 262.1 |
| **Subtotal – BSF** | | **3,424.9** |
| **Total Hours Requested** | | **9,785.9** |

[3] Small discrepancies exist between the hours claimed for paralegal Jennifer Gomez-Pedraza across Plaintiffs' submissions (*compare* ECF No. 314-4 at PageID.8672, 8800, 8802 *with* ECF No. 325-4 at PageID.9177). The court will rely on Plaintiffs' calculation of total paralegal hours as stated in Exhibit 1 to the Declaration of Teresa Hendricks (ECF No. 314-4 at PageID.8672).

Plaintiffs contend that counsel's work in this matter began in 2019 and involved extensive pre-litigation investigation, including client interviews and outreach to migrant workers who were initially reluctant to speak (ECF No. 314-1 at PageID.8556). Counsel then initiated litigation and conducted discovery, which encompassed seven depositions—five of which required interpreters (*id.* at PageID.8557). They also report spending substantial time organizing and digitizing Defendants' paper document productions, opposing dispositive motions, defeating several counterclaims, and preparing for and trying an eight-day jury trial (*id.* at PageID.8558). Plaintiffs further argue that Defendants compounded the burden of trial preparation by refusing to narrow their list of approximately 80 potential lay witnesses until trial was underway and by engaging in trial tactics that required additional legal research, briefing, and oral argument (*id.*).

Defendants contend that "Plaintiffs' counsel has approached this litigation with the billing subtlety of hiring ten electricians to fix one light bulb" (ECF No. 325 at PageID.8875). They challenge Plaintiffs' billing records as "replete with vague, duplicative, and non-compensable entries—from partner-level billing for administrative tasks to unexplained 'strategy sessions' and clerical work passed off as legal services" (*id*. at PageID.8876). In their challenge to the number of hours claimed, Defendants identify five categories of concern: "overbilling, inconsistencies, vagueness, non-litigation tasks, and clerical or duplicative entries" (*id*. at PageID.8885). They cite examples including multiple attorneys billing for the same tasks, associates logging over 500 hours each on tasks that do not appear materially distinct, work performed by legal staff that could have been handled by clerical personnel, and overstaffing motions—for instance, BSF lawyers traveling in for motions that could have been handled by MLA Attorneys (*id*. at PageID.8877).

According to Defendants, this case was primarily centered around the wage and hour claim and involved limited discovery (ECF No. 325 at PageID.8877). Plaintiffs unnecessarily drove up

fees by filing untimely motions to compel discovery and to designate an expert witness (*id.*). Although the trial lasted eight days, Defendants maintain that it was neither legally complex nor factually novel, and that Plaintiffs' excessive billing reflects a litigation strategy that was "overstaffed, aggressively billed, and out of step with the relatively limited nature of the relief secured" (*id*. at PageID.8878). Defendants argue many billing entries show "little to no billing judgment," (*id*. at PageID.8882), including reviewing trade publications, developing budget formulations, and attending webinars that were not directly tied to this case (*id*. at PageID.8886).

The Court has considered counsel's declarations, reviewed 185 pages of billing entries, and overseen this litigation from its inception. The Court concludes that the hours submitted by seven attorneys, four paralegals, and a summer associate reflect excessive time spent on the case and significant duplication of effort. *See Hensley*, 461 U.S. at 434. While "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer," *James v. Frank*, 772 F. Supp. 984, 1002 (S.D. Ohio 1991) (quotation omitted), Plaintiffs' billing records reveal excessive time spent on the same tasks by multiple attorneys, leading to an investment of hours that would not be properly billed to one's own client, and correlatively, to one's adversary pursuant to statutory authority. *See Hensley*, 461 U.S. at 434.

The Court finds numerous categories of Plaintiffs' billing records to be unreasonable or impermissibly vague. For example, counsel submitted extensive one-hour entries for "PPH Staff Meeting" (ECF No. 314-4 at PageID.8675– 8807). Without any indication that these regularly scheduled meetings were tied to case-specific and necessary work, the Court cannot conclude that such time was reasonably expended and therefore disallows these entries. Similarly, billing

records described only as "text messages" or "phone call," without identifying the recipient or purpose of the communication, are too vague to justify compensation. *See Ohio Right to Life Soc.*, 590 F. App'x at 603. The Court likewise rejects entries reflecting time spent on training webinars, general research into labor trafficking, or reading trade publications, as such activities are not reasonably attributable to this litigation (*e.g.,* ECF No. 313-4 at PageID.8681, 8790; ECF No. 313-3 at PageID.8585).

The Court also identifies multiple billing entries by individual attorneys that are grossly unreasonable and physically impossible. These include reported billing days of 48.4 hours on January 11, 2024 (ECF No. 314-4 at PageID.8737); 45 hours on January 26, 2024 (*id*. at PageID.8738); 40 hours on January 29, 2024 (*id*. at PageID.8739); 49.1 hours on March 18, 2024 (*id*. at PageID.8743); 33.1 hours on March 25, 2024 (*id*. at PageID.8744–8745); 60 hours on April 8, 2024 (*id.* at PageID.8746); 82 hours on May 3, 2024 (*id*. at PageID.8747); 38.7 hours on May 31, 2024 (*id*. at PageID.8748–49); 36.1 hours on April 15, 2025 (*id*. at PageID.8714); 78 hours on May 21, 2025 (*id*. at PageID.8717); 22.3 hours on May 28, 2025 (*id*. at PageID.8718); and 57.6 hours on June 5, 2025 (*id*. at PageID.8720–8721). Equally unreasonable is a single entry billing 60 hours for "600 text messages with clients" (*id*. at PageID.8683), especially in light of extensive billings for regular phone calls with clients that appear to have been reasonable.

In addition, the Court excludes hours billed for purely clerical or administrative tasks, such as handling proofs of service, preparing word-count certificates, calendaring, formulating a budget, drafting a co-counsel agreement, and assisting with catering or meals for the trial team and clients. Where entries commingle qualifying legal work with clearly non-compensable administrative tasks, the Court disallows the entire entry. *See Ohio Right to Life Soc.*, 590 F. App'x at 603. Finally, given the factual circumstances and posture of the litigation at the time it

took place, the Court concludes that conducting a mock trial was not reasonably necessary; all hours associated with the mock trial are therefore excluded.

Upon careful review of the billing records submitted, the Court concludes that the following hours were adequately documented for activities pursued in furtherance of the litigation:

**Migrant Legal Aid**

| **Individual** | **Role** | **Hours** |
|---|---|---|
| Teresa Hendricks | Attorney | 928.1 |
| Benjamin O'Hearn | Attorney | 564.1 |
| Molly Spaak | Attorney | 1,382.2 |
| Clara Manuzza | Bilingual Paralegal | 49.8 |
| Jennifer Gomez-Pedraza | Bilingual Paralegal | 24.3 |
| Lina Herrera | Bilingual Paralegal | 104.3 |
| **Subtotal – Migrant Legal Aid** | | **3,052.8** |

**Boies Schiller Flexner LLP**

| **Individual** | **Role** | **Hours** |
|---|---|---|
| Kenya Davis | Attorney | 535.4 |
| Benjamin Solomon-Schwartz | Attorney | 253.2 |
| Jessica Mugler | Attorney | 535.9 |
| Sulemon Masood | Staff Attorney | 47.8 |
| Ruth Zheng | Summer Associate | 80.0 |
| Shari Ginsberg | Managing Clerk | 0 |
| Dale Pedrick | Paralegal | 6.6 |
| Luis Lopez | Legal Assistant | 0 |
| Victoria Moran | Legal Assistant | 0 |
| **Subtotal – BSF** | | **1,458.90** |
| **Total Hours** | | **4,511.70** |

Although many entries reflect multiple attorneys contributing to discrete aspects of this heavily litigated case, the Court also observes substantial redundancies. Several attorneys expended considerable time on overlapping tasks, including preparing for the Rule 16 conference, drafting motion briefs, attending depositions, and developing voir dire questions. *See James v. Frank*, 772 F. Supp. at 1002. Rather than attempting to determine which attorneys' efforts were most efficient, the Court exercises its discretion to apply an across-the-board reduction in the amount sought after calculating the lodestar. *See Sykes v. Anderson*, 419 F. App'x at 618–19.

**B. Reasonable Hourly Rate**

A reasonable hourly rate is determined by the "prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *B & G Min.,* 522 F.3d at 663. It may not be the exact value sought by a particular firm; rather, it is the market rate in the venue sufficient to encourage competent representation. *Id*. "The primary concern in an attorney fee case is that the fee awarded be reasonable." *Hadix v Johnson*, 65 F.3d 532, 535 (6th Circ. 1995).

When fees are sought for an "out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535. A corollary of this principle is that a court may closely scrutinize the requested rate when competent local counsel was reasonably available at a lower cost. *Id*.

Plaintiffs have submitted the following proposed hourly rates for members of their trial team, along with each lawyer's years of experience (*see* ECF No. 314-3 at PageID.8575; ECF No. 314-4 at PageID.8669):

**Migrant Legal Aid**

| Individual | Role | Years Experience | Proposed Hourly Rate |
|---|---|---|---|
| Teresa Hendricks | Attorney | 30 | $450 |
| Benjamin O'Hearn | Attorney | 10 | $325 |
| Molly Spaak | Attorney | 4 | $325 |
| Clara Manuzza | Bilingual Paralegal | – | $100 |
| Jennifer Gomez-Pedraza | Bilingual Paralegal | – | $100 |
| Lina Herrera | Bilingual Paralegal | – | $100 |

**Boies Schiller Flexner LLP**

| Individual | Role | Years Experience | Proposed Hourly Rate |
|---|---|---|---|
| Kenya Davis | Attorney | 20 | $1,060–$1,290[4] |
| Benjamin Solomon-Schwartz | Attorney | 12 | $1,160 |
| Jessica Mugler | Attorney | 4 | $790–$890 |
| Sulemon Masood | Staff Attorney | 1 | $550–$600 |
| Ruth Zheng | Summer Associate | – | $535 |
| Shari Ginsberg | Managing Clerk | – | $460 |
| Dale Pedrick | Paralegal | – | $390–$430 |
| Luis Lopez | Legal Assistant | – | $430 |
| Victoria Moran | Legal Assistant | – | $430 |

[4] Attorney Davis attests in her declaration that the hourly rates for legal professionals rose during the pendency of this case (ECF No. 314-3 at PageID.8575).

Plaintiffs assert that the proposed hourly rates for MLA's legal team are consistent with prevailing market rates as reflected in the State Bar of Michigan's 2023 *Economics of Law Report* (ECF No. 314-1 at PageID.8559; *see also* State Bar of Michigan, 2023 Economic of Law Report (2023) https://perma.cc/9799-PFQQ). They further contend that these rates are reasonable in light of counsel's qualifications and experience, particularly in civil litigation and in handling specialized farmworker cases (ECF No. 314-1 at PageID.8559).

Plaintiffs request approval of higher hourly rates for BSF's legal team, asserting that they qualify as "out-of-town" specialists under *Hadix*. *See* 65 F.3d at 535. They argue that retaining BSF was reasonable due to the firm's expertise in human trafficking cases, its connections within the trafficking prosecution community, its strong litigation and trial skills, and its willingness to handle the case pro bono—unlike many local firms (ECF No. 314-1 at PageID.8560). Plaintiffs further represent that no local firm possesses the cultural competency or legal expertise to represent trafficking victims, and that many BSF attorneys are bilingual, enabling direct billing engagement and reducing costs for additional translations (*id.*).

Defendants oppose the proposed hourly rates for out-of-district counsel BSF, arguing that they are inflated and "wholly unmoored" from the prevailing rates in the Western District of Michigan (ECF No. 325 at PageID.8883). Although Defendants acknowledge that courts may permit higher rates for out-of-district counsel, they contend this is appropriate only when local counsel is unavailable. Moreover, unlike the cases cited by Plaintiffs, which involve particularly complex matters—such as an international fraud case—this case was akin to a wage theft case (*id.* at PageID.8883).

Having reviewed the prevailing market rate for lawyers of comparable skill and experience, the Court concludes that the proposed hourly rates for MLA's attorneys are reasonable. These

rates appear to be adequate to attract competent counsel but not produce windfalls to attorneys. *See B & G Min.,* 522 F.3d at 663; *Reed*, 179 F.3d at 471. The Court also approves the proposed hourly rates for MLA's paralegals.

With respect to Plaintiffs seeking fees higher than the prevailing market for BSF's attorneys, it is worth reiterating that this case was not so complex as to require the assistance of seven attorneys (more than one per client), a summer associate, and four paralegals, among other staff. At the time MLA partnered with BSF, the case was already being handled by three culturally competent lawyers of varying ranges of experience—from 4 years to 30 years—making up a capable trial team. It is not clear from Plaintiffs' motion why MLA needed outside assistance. And while it may be true that MLA conducted a wide search for local or regional counsel and found no equivalent expertise in another firm (*see* ECF No. 314-4 at PageID.8668), the guidepost is not entitlement to a "silk-stocking" law firm and its commensurate rates. *Cf. In re The Vogue*, 92 B.R. 717, 718 (Bankr. E.D. Mich. 1988).

Given the number of attorneys already engaged in this case by the time BSF was retained, Plaintiffs have not demonstrated that hiring an out-of-town specialist was reasonable in the first instance. *See Hadix*, 65 F.3d at 535. While Plaintiffs undoubtedly benefitted from BSF's skills and expertise, the Court is not persuaded that the rates sought are reasonable under the particular circumstances of this litigation. The case was neither so complex nor so resource-intensive as to require additional counsel. For example, only seven depositions were taken, consisting solely of the individual parties. Although BSF highlights its experience with human trafficking matters—an uncommon practice area in West Michigan outside of MLA and similar advocacy organizations' caseloads—the present case was relatively straightforward. Aside from addressing an isolated courtroom incident apparently instigated by Defendants, the direct examinations of

each of the five Plaintiffs at trial followed essentially the same script, and neither the legal issues nor the evidentiary questions presented unusual difficulty. Plaintiffs thus have not satisfied their burden under *Hadix* to demonstrate both the necessity of out-of-town counsel and the reasonableness of the higher rates sought. *See* 65 F.3d at 535.

The Court finds the following hourly rates to be reasonable for BSF attorneys and staff: Kenya Davis, $425/hour; Benjamin Solomon-Schwartz, $395/hour; Jessica Mugler, $340/hour; and Sulemon Masood, $300/hour. Each of these rates corresponds to the 75th percentile for 2023 attorney billing rates in Michigan based on years of experience. (*Cf.* ECF No. 314-1 at PageID.8559; State Bar of Michigan, 2023 Economics of Law Report (2023) https://perma.cc/9799-PFQQ; State Bar of Michigan, 2023 Economics of Law Survey Results (2023) https://perma.cc/SLV2-UV8M). The Court also finds $100/hour to be a reasonable rate for summer associate Ruth Zheng and paralegal Dale Pedrick. The Court has not assigned a rate for BSF's two legal assistants and its managing clerk, as the billing records indicate that their work was either not substantive legal work or was inextricably commingled with non-compensable tasks. *See Tikan*, 2016 WL 1212641 at *4.

**C. Lodestar Calculation**

Using the lodestar method, the Court multiplies the number of hours reasonably expended in this litigation by the corresponding reasonable hourly rate. The resulting calculation follows:

**Lodestar Calculation – Reasonable Fees**

**Migrant Legal Aid**

| Individual | Role | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Teresa Hendricks | Attorney | 928.1 | $450 | $417,645 |
| Benjamin O'Hearn | Attorney | 564.1 | $325 | $183,300 |
| Molly Spaak | Attorney | 1,382.2 | $325 | $449,215 |
| Clara Manuzza | Bilingual Paralegal | 49.8 | $100 | $4,980 |
| Jennifer Gomez-Pedraza | Bilingual Paralegal | 24.3 | $100 | $2,430 |
| Lina Herrera | Bilingual Paralegal | 104.3 | $100 | $10,430 |
| | | | Subtotal: | $1,068,000 |

**Boies Schiller Flexner LLP**

| Individual | Role | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Kenya Davis | Attorney | 535.4 | $425 | $227,545 |
| B. Solomon-Schwartz | Attorney | 253.2 | $395 | $100,014 |
| Jessica Mugler | Attorney | 535.9 | $340 | $182,206 |
| Sulemon Masood | Staff Attorney | 47.8 | $300 | $14,340 |
| Ruth Zheng | Summer Associate | 80.0 | $100 | $8,000 |
| Dale Pedrick | Paralegal | 6.6 | $100 | $6,600 |
| | | | Subtotal: | $538,705 |

**Total Lodestar: $1,606,705**

### D. *Johnson* Factors

After calculating the applicant's lodestar, the Court may then adjust the fee upward or downward through application of the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989), and adopted by the Supreme Court in *Hensley*:

> (1) the time and labor required by a given case;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;[5]
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3. "The *Johnson* court expressly noted that courts must remember that they do not have a mandate . . . to make the prevailing counsel rich." *Id.*

The Court has reviewed each of the *Johnson* factors and finds the first and eighth factors to be the most relevant. None of the others counsel a change in the lodestar calculation.

#### 1. Factor One: Time and Labor Required

For clarity, the Court divides its analysis of the time and labor required into two categories: first, the extent of overlapping or redundant billing; and second, the reasonableness of the labor expended in light of the circumstances prevailing when the work was performed.

---

[5] The Supreme Court in *Hensley* emphasized that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees; however, "the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 439–40.

**a. Redundancies**

As the Court has already noted, Plaintiffs' billing records reflect substantial redundancy in time expended—a predictable consequence of staffing the case with seven attorneys, four paralegals, and a summer associate. *See Coulter v. State of Tenn.,* 805 F.2d 146, 152 (6th Cir. 1986)*, abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted,* 831 F.3d 686 (6th Cir. 2016) (remarking that "multiple representation can be productive," but "there is also the danger of duplication, a waste of resources which is difficult to measure"). *Hensley* made clear that in assessing the hours "reasonably expended," the district court should evaluate whether the case was "overstaffed." *Hensley*, 461 U.S. at 434. If duplication is evident, an across-the-board percentage reduction is appropriate.[6] *Coulter*, 805 F.2d at 152; *accord Sykes*, 419 F. App'x at 618–19. Here, twelve individuals billed time, with multiple attorneys performing overlapping tasks. Rather than attempting to parse which attorney's efforts were most efficient, the Court exercises its discretion to impose an across-the-board reduction of 50%. *See id.*

**b. Labor Required**

On the whole, counsel devoted an extraordinary amount of time to a case in which the damages awarded to each individual Plaintiff were not higher than $157,000 and which were as low as $62,500 (*see* ECF No. 309 at PageID.8524). But Plaintiffs' counsel prevailed in establishing both wage-and-hour liability and violations of federal and state human trafficking statutes. With respect to the time expended before the filing of this lawsuit, the Court is satisfied that substantial effort was reasonably required to ascertain the number of migrant workers with potential claims against Defendants. In light of their testimony at trial, the Court also concludes

[6] The Court's earlier reductions in the calculation of reasonable hours stemmed from either insufficient documentation or the inclusion of tasks not properly billable. *See Hensley*, 461 U.S. at 434; *Tikan*, 2016 WL 1212641 at *4.

that the considerable time spent counseling Plaintiffs was reasonably incurred throughout the course of the proceedings to reassure the Guatemalan Plaintiffs regarding the safety of pursuing litigation in the United States, as well as to translate all legal documents into English and address them substantively. Although the discovery conducted was surprisingly limited, motion practice was extensive in this case, mostly precipitated by Defendants' actions and necessary to the pursuit of Plaintiffs' claims. The Court discerned no added complexity at trial warranting extraordinary preparations. No experts were called, and the case ultimately turned on a credibility contest between Plaintiffs and Defendants. Although several Plaintiffs testified that they refrained from quitting or reporting their circumstances out of fear of being blacklisted from future H2-A employment, from economic desperation, or from general fears for their safety in Guatemala, the more telling evidence of the coercive nature of the trafficking scheme came from Defendants' own conduct at trial rather than from counsel's elicitation of testimony. The Court concludes that no additional upward or downward adjustment of the attorneys' fee is warranted based on the labor required in this case. *See Reed*, 179 F.3d at 471 n.3.

**2. Factor 8: The Amount Involved and the Results Obtained**

The most striking indication of the unreasonableness of the requested attorneys' fee is that Plaintiffs' counsel seeks to recover nine times the amount actually awarded to Plaintiffs at trial for their damages. Plaintiffs obtained $550,000 but now request $4,950,931 in fees (*compare* ECF No. 314-1 at PageID.8556 *with* ECF No. 309 at PageID.8524). As noted in *Hensley*, "billing judgment is an important component in fee setting. It is no less important here." 461 U.S. at 434. "Hours that are not properly billed to one's *client* are also not properly billed to one's adversary pursuant to statutory authority." *Id*. Were Plaintiffs' counsel to have created a billing budget for

their clients on an hourly basis, the Court is not convinced that counsel could have blackboarded damages sufficient to warrant the investment of litigation firepower.

Plaintiffs applied a sledgehammer of a legal team to extract an award from Defendants that was a fraction of what they spent in legal fees—and that award included punitive damages. The Court finds that this case—which, as became clear by the summer before trial, only involved individual claims by five people—was excessively litigated at the end. The Court concludes, however, that based on the Court's prior adjustments to accomplish a "reasonable fee," no additional upward or downward adjustment of the attorneys' fee is warranted. To be clear, the Court recognizes and respects counsel's zealous advocacy on behalf of their clients; the issue before the Court, however, is the determination of a reasonable fee under the fee-shifting statute. *See Hensley*, 461 U.S. at 434.

As the Fifth Circuit in *Johnson* observed, the district court "is necessarily called upon to question the time, expertise, and professional work of a lawyer, which is always difficult and sometimes distasteful. But that is that task," and "in all probability the [district court's] decision will be totally satisfactory to no one." *Johnson*, 488 F.2d at 720. Given the great divide between Plaintiffs' and Defendants' respective positions on a reasonable attorney fee, the Court is confident that *Johnson's* assessment rings true in this matter.

Incorporating the Court's 50% reduction of the lodestar, the Court awards as a reasonable attorneys' fee $803,352.50.

## III. COSTS

### A. Legal Standard

Plaintiffs request reimbursement of litigation costs "under 18 U.S.C. § 1595(a), 29 U.S.C. § 216(b), and M.C.L. § 408.419(1)(a), and as 'the prevailing party' under Fed. R. Civ. Proc.

54(d)(1)" (ECF No. 314-1 at PageID.8567).[7] As relevant here, the "prevailing party in an FLSA case is entitled to all reasonable costs of litigation" under § 216(b). *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389, at *9 (W.D. Tenn. Oct. 13, 2020), *aff'd*, 17 F.4th 664 (6th Cir. 2021) (cleaned up and collecting cases); *accord Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994). This entitlement encompasses costs "beyond those normally allowed under Fed. R. Civ. P. 54(d)," including "reasonable out-of-pocket expenses." *Monroe*, 2020 WL 13227389 at *9; *accord Toliver v. Jbs Plainwell, Inc.*, No. 1:11-CV-302, 2015 WL 11255451, at *10 (W.D. Mich. Aug. 20, 2015), *report and recommendation adopted as modified*, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016) ("Section 216(b) of the FLSA has been interpreted to include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'")

**B. Analysis**

"Plaintiffs here seek a combined amount of $106,419.99 [to $135,045.79] in costs, which includes $58,563.48 in costs for MLA and $47,856.51 [to $76,482.31] in costs for BSF" (ECF No. 314-1 at PageID.8567).[8] Plaintiffs have submitted sworn declarations with itemized billing

[7] Federal courts have noted that the TVPRA "makes no mention of litigation expenses. As the United States Supreme Court recently explained, that 'expenses' and 'attorneys' fees' appear in tandem across various statutes shifting litigation costs indicates that Congress understands the two terms to be distinct and not inclusive of each other." *Lesnik v. Eisenmann SE*, No. 16-CV-01120-BLF, 2023 WL 4477211, at *2 (N.D. Cal. July 11, 2023) (quoting *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 373 (2019)). Given that the TVPRA provision "authorizing an award of attorneys' fees does not also authorize an award of litigation expenses," the Court draws upon the other fee-shifting statutes noted above to determine costs, particularly 29 U.S.C. § 216(b). *See id.*

[8] As noted above, Plaintiffs seek inconsistent cost amounts in connection with BSF (*compare* ECF No. 314-1 at PageID.8567, 8568; ECF No. 314-3 at PageID.8579 *with* ECF No. 314-3 at PageID.8579–8581; ECF No. 314-3 at PageID.8645–8656). Defendants respond line by line to a BSF expense ledger that adds up to "$76,482.31," (ECF No. 325-2 at PageID.9021–9046), and thus the Court will construe BSF to have requested that amount.

records to support these requested costs (*id.*). Defendants do not challenge Plaintiffs' entitlement to costs under § 216(b)—they dispute the specific amounts requested (ECF No. 325 at PageID.8895–8896). Defendants lodge truncated, boilerplate objections to almost every entry in MLA's cost spreadsheet as "[n]ot allowable to recoverable cost" or "[v]ague," citing little legal authority (*see id.*; ECF No. 325-5 at PageID.9181–9187). Defendants similarly object to almost all BSF's cost entries as either "admin overhead," travel "expenses that should not be allowed," entries that are "vague" and "unclear," impermissible electronic "research" costs, or purchases unnecessary to "advance the litigation," again without citation to relevant authority (ECF No. 325-2 at PageID.9020–9045). The Court has reviewed the declarations and itemized records submitted by Plaintiffs, along with Defendants' objections, to determine which costs are "reasonable," *see Toliver,* 2015 WL 11255451 at *11, and the Court will grant in part and deny in part Plaintiffs' request for costs as set forth below.

**1. Meal and Travel Costs**

Defendants agree that food and travel costs may be properly awarded on the facts of this case if those costs are "reasonable, documented, and directly tied to the litigation" (ECF No. 325 at PageID.8896). *Accord Monroe v. FTS USA, LLC*, No. 2:08-CV-02100-JTF-CG, 2014 WL 4472706, at *2 (W.D. Tenn. Sept. 10, 2014) (collecting cases and noting that courts have reimbursed "costs of photocopies, delivery services, long distance telephone charges, telephone reimbursements, secretarial overtime wages, mileage" and "meals, parking, airfare, other travel-related expenses, service fees, filing fees, witness fees, transcript fees, and mediation fees").

**a. Objections to BSF Meal and Travel Expenses**

Defendants' wholesale objection that BSF's "travel expenses should not be allowed" lacks merit (ECF No. 325-2, PageID.9020–9045). BSF provides specific dates and itemization for each

expense, linking travel and meal costs to trial, the pretrial conference, or specific in-person hearing dates (*id.*). This evidence indicates that at least some of BSF's itemized travel and meal entries represent "reasonable out-of-pocket expenses." *See Monroe*, 2020 WL 13227389 at *9.

That said, as the Court explained at length above in connection with the fee award, staffing on this case was "redundant." *Cf. Coulter*, 805 F.2d at 152 (remarking that "multiple representation can be productive," but "there is also the danger of duplication"). The Sixth Circuit has approved "across-the-board" cost reductions under analogous circumstances where "costs appeared excessive" and "duplicative[.]" *See Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 558 (6th Cir. 2017). The Court will apply a 50% across-the-board reduction to this category of BSF's costs given redundant staffing, reducing the requested $38,571.07 to a reasonable award of $19,285.54 for BSF's travel expenses. *See id.*

**b. Objections to MLA's Meal and Travel Expenses**

The billing entries for several of MLA's requested meal and travel costs lack detail, including the expenses submitted that read simply "Client meal[s]," "Client dinner[s]," "cliente [sic] perdiem + Leonel supplemental," "lodging," or "AirBnB lodging" (ECF No. 325-5 at PageID.9181–9187). These "descriptions are simply too cryptic to allow for a reasonableness analysis," failing to identify the person or persons for whom the lodging or meal was purchased and any connection to a particular hearing or trial. *Toliver,* 2015 WL 11255451 at *11. The Court declines to award MLA's costs associated with these entries, which add up to $6,525.44. *See id.*

**2. Electronic Research Costs**

Defendants argue, without citation to authority, that Plaintiffs are not entitled to recover their electronic research costs, including Westlaw and Lexis fees, PACER fees, and an Adobe subscription (*see* ECF No. 325-5 at PageID.9181–9187; ECF No. 325-2 at PageID.9020–9045).

The Sixth Circuit has not adopted "an absolute rule that the cost of computer research is or is not recoverable. Any recovery should be for the actual cost of the online access or service." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 368 (6th Cir. 2014). If "the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices, which was treated as overhead," but if "distinct charges are incurred for specific research directly relating to the case . . . such properly documented charges [may] be included in the recoverable expenses." *Id.*

**a. Objections to BSF's Electronic Research Costs**

BSF has offered sworn testimony and itemized records here establishing that the amount the firm requests for "computer research" charges represent "the actual charges paid by BSF for use of these services in connection with this Litigation" (ECF No. 314-3 at PageID.8579). Defendants offer no contrary evidence or authority. The Court concludes that the amount claimed by BSF for computer research is reasonable given the record of "distinct charges incurred" here. *See Smith*, 592 F. App'x at 368.

**b. Objections to MLA's Electronic Research Costs**

MLA requests reimbursement for its monthly Westlaw subscription and for what appears to be an Adobe software license (*see* ECF No. 325-5 at PageID.9181, 9183, 9187). Defendants argues that this type of "overheard" cost should be disallowed. Unlike BSF, MLA fails to itemize the "distinct charges incurred" for electronic research connected to this litigation and the Court thus declines to award these $891.54 in costs to MLA. *See Smith*, 592 F. App'x at 368.

**3. Messenger, Courier, and Special Supply Fees**

BSF requests $4,289.30 in costs associated with "couriers and other messenger services" that transmitted "hard-copy versions of various documents to attorneys, the Court, and court staff"

(ECF No. 314-3 at PageID.8579). BSF further requests $2,772.77 in "special supplies" purchased to assemble binders for attorneys and to stock BSF's "war room" with "snacks" and "legal pads" (ECF No. 325-2 at PageID.9031–9032). BSF does not adequately identify which, if any, of these expenses were required to supply court copies of documents and which were "a convenience for counsel." *See Monroe*, 2020 WL 13227389 at *9; *cf. Cobb v. City of Roswell, Ga.*, 987 F. Supp. 2d 1319, 1326 (N.D. Ga. 2013) (striking costs in an analogous context because "[d]efendant made little effort to distinguish the necessary costs from those incurred for the convenience of counsel"). Instead, it appears that BSF attorneys and staff routinely shipped hard copies of documents to themselves, often overnight and by the most expensive means possible, that duplicated files already in their possession (*see* ECF No. 325-2 at PageID.9020–9045). BSF has not established that these messenger, courier, and special supply fees represented "reasonable out-of-pocket expenses," and this $7,062.07 in costs is denied. *See Monroe*, 2020 WL 13227389 at *9.

**4. Consultant Fees**

Defendants object to expenses claimed by Plaintiffs for expert consultants who worked to ensure that Plaintiffs could obtain non-immigrant visitor and humanitarian admission permits to attend trial (*see* ECF No. 325-2 at PageID.9021; ECF No. 314-3 at PageID.8580). Defendants cite no relevant authority to support their argument, relying instead on the bald assertion that "Plaintiffs could have testifed [sic] from Guatemala" (ECF No. 325-2 at PageID.9021). Based on the record here, Defendants' objection lacks merit, and the Court concludes that the consulting charges at issue qualify as "reasonable out-of-pocket expenses." *See Monroe*, 2020 WL 13227389 at *9.

**C. Reasonable Costs Awarded**

Based on the submissions of the parties and relevant legal authorities, the Court concludes that MLA's requested costs of $58,563.48 will be reduced to exclude meal and lodging costs of

$6,525.44 and electronic research costs of $891.54, for a total reduction of $7,416.98. BSF's requested costs of $76,482.31 will be reduced to exclude: (1) $19,285.54 in travel expenses; and (2) $7,062.07 in messenger, courier, and special supply fees. The Court concludes that the remaining costs requested—$51,146.50 for MLA and $50,134.70 for BSF—represent "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *See Toliver*, 2015 WL 11255451 at *10.[9]

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for attorneys' fees and costs (ECF No. 314) is granted in part and denied in part, with an award to Plaintiffs of $803,352.50 in fees and $101,281.20 in costs.

Dated: September 10, 2025

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge

---

[9] The Court has considered and overruled Defendants' remaining objections based on the record, the Court's exercise of its sound discretion, and the Sixth Circuit's guidance that district courts should seek "rough justice" rather than serving as "green-eyeshade accountants." *See Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).